IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| KELLI THOMAS, | ) | CV F 06-0215 AWI SMS |
| | ) | |
| **Plaintiff**, | ) | **MEMORANDUM OPINION AND** |
| v. | ) | **ORDER REGARDING** |
| | ) | **DEFENDANTS' MOTIONS TO** |
| RODERICK HICKMAN, et al., | ) | **DISMISS** |
| | ) | |
| **Defendants.** | ) | (Docs. #14, #15, #17, #18, #19, #20) |
| _____ | ) | |

Plaintiff Kelli Thomas, an inmate at the Central California Women's Facility ("CCWF"), has filed a civil rights action against prison officials, prison medical staff, a private doctor, and private hospital.   The court has jurisdiction over Plaintiff's civil rights causes of action pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.   Because the events underlying this action took place at CCWF and Madera Community Hospital in Madera County, California, venue in this court is appropriate.   Pending before the court are Defendants' motions to dismiss.

## PROCEDURAL BACKGROUND

On February 24, 2006, Plaintiff filed a complaint.   The first cause of action alleges a violation of the Eighth Amendment, pursuant to 42 U.S.C. § 1983, against all Defendants.   The second cause of action alleges a violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, against all Defendants.   The third cause of action alleges of violation of Article 1, Section 17 of the California Constitution against all Defendants.   The fourth cause of action alleges a violation of Article 1, Section 7 of the California Constitution against all Defendants.   The fifth

cause of action alleges professional negligence against all Defendants.   The sixth cause of action alleges failure to obtain informed consent against all Defendants.   The seventh cause of action alleges civil battery against all Defendants.   The eighth cause of action alleges gross negligence against all Defendants.   The ninth cause of action alleges intentional infliction of emotional distress against all Defendants.   The tenth cause of action alleges negligent infliction of emotional distress against all Defendants.   The eleventh cause of action alleges intentional deceit/fraud against all Defendants.   The twelfth cause of action alleges negligent misrepresentation against all Defendants.

On May 5, 2006, Defendants Rosanne Campbell, Loraine Goodwin, Roderick Hickman, Deborah Jacquez, Shelly Kruse, Gwendolyn Mitchell, Ernest Reeves, Richard Rimmer, Peter Szekrenyi, Sampath Suryadevara, and Jeanne Woodford ("CDC Defendants") filed a motion to dismiss the complaint and strike the complaint's request for punitive damages. On May 5, 2006, Defendant Charles Ugwu-Oju, M.D. ("Defendant Ugwu-Oju") filed a motion to dismiss and motion to strike. On May 5, 2006, Defendant Madera Community Hospital ("Defendant Madera") filed a motion to dismiss and a motion to strike.

On June 2, 2006, Plaintiff filed an opposition to Defendants' motions.

On June 9, 2006, CDC Defendants, Defendant Ugwu-Oju, and Defendant Madera filed reply briefs.

## ALLEGED FACTS

Plaintiff is an inmate of CCWF.   The complaint alleges that as a inmate, she is dependent on the California Department of Corrections ("CDC") for her medical care, and the CDC has a duty to provide adequate medical care and protect her from harm.

The complaint alleges that in 1999, Defendant Reeves told Plaintiff that she had an abnormal pap smear.

The complaint alleges that in 2000, Plaintiff began to experience severe abdominal pains and started menstruating on a biweekly cycle.   Following a pap smear, Defendant Reeves told

1  Plaintiff that her symptoms could be attributed to endometriosis.

2  The complaint alleges that in or about December 2000, Defendant Reeves ordered an

3  ultrasound and a biopsy of Plaintiff's cervix. The ultrasound revealed two cysts, one on each

4  ovary. The biopsy also revealed severe dysplasia and some cancerous cells.  Plaintiff was 24

5  years old at the time.

6  The complaint alleges that at or around this time, Defendant Reeves informed Plaintiff

7  that she would need to undergo a surgical procedure known as a cystectomy to remove the cysts

8  on her ovaries as well as a cone biopsy of her cervix to check for cervical cancer. Defendant

9  Reeves told Plaintiff that the cystectomy was a basic procedure. He explained that his concern

10  was not her ovarian cysts but the possibility of widespread cancer, which might require a

11  complete hysterectomy. Defendant Reeves referenced Plaintiff's young age and assured her that

12  she would still be able to have children after the cystectomy, and that a hysterectomy would only

13  be considered if the cancer was determined to be widespread.

14  The complaint alleges that  Defendant Reeves did not provide Thomas with non-surgical

15  alternatives, nor did he discuss those alternatives with Plaintiff or allow her to elect non-surgical

16  options for treatment.

17  The complaint alleges that, in 2001, Defendant Reeves, acting on behalf of CCWF and

18  the CDC, entrusted Plaintiff to Defendant Madera and Defendant Ugwu-Oju for medical care.

19  Defendant Reeves told Plaintiff that Defendant Ugwu-Oju would be performing her cystectomy.

20  Plaintiff did not have a choice or control over the decision to pursue surgical treatment in lieu of

21  other options, much less the selection of Defendant Madera and Defendant Ugwu-Oju to perform

22  her cystectomy. All of those decisions were made by CCWF and/or Defendant Reeves.

23  The complaint alleges that Defendant Ugwu-Oju met Plaintiff at CCWF and told her that

24  he would be performing both the cystectomy and cone biopsy. Defendant Ugwu-Oju assured

25  Plaintiff that the cystectomy was a simple, basic procedure that would not interfere with her

26  ability to reproduce. Defendant Ugwu-Oju did not inform Thomas that her ovaries could be

27

28                                              3

damaged or removed as a result of the cystectomy.

The complaint alleges that no one employed at CCWF or Defendant Madera, including Defendant Ugwu-Oju, informed Plaintiff of the possibility of any medical complications regarding the surgical removal of cysts or discussed alternative treatments with her. None of the CDC Defendants, Defendant Madera, or Defendant Ugwu-Oju attempted to pursue alternatives to surgery or discussed the potential non-surgical alternatives with Plaintiff.

The complaint alleges that on April 5, 2001, CCWF sent Plaintiff to Defendant Madera for the cystectomy. On that day, Defendant Ugwu-Oju removed both of Thomas's ovaries and part of her fallopian tube. This procedure, known as an oophorectomy, was not discussed with Thomas in any of the pre-surgical consultations.

The complaint alleges that upon commencing the surgery, Defendant Ugwu-Oju and/or other attending medical staff acting under Defendant Ugwu-Oju's supervision, clamped Plaintiff's infundibulopelvic ligaments, an action which cut off blood flow to the ovaries and in essence "killed" them.   In so acting, Defendant Ugwu-Oju made no attempt during the surgery to remove the cysts without harming Thomas's ovaries or without sterilizing her.

The complaint alleges that Plaintiff's medical reports fail to reflect that on April 5, 2001, Defendant Ugwu-Oju performed an oophorectomy rather than merely a cystectomy.

The complaint alleges that immediately following the surgery, Defendant Ugwu-Oju told Thomas that he found no sign of ovarian cancer, but in order to remove one ovarian cyst, he had to remove part of her fallopian tube and part of one ovary. In response, Plaintiff specifically asked Defendant Ugwu-Oju if she would still be able to have children. Defendant Ugwu-Oju told Plaintiff  that she could still have children and that no part of the procedure he performed would affect her ability to do so.

The complaint alleges that following the surgery, Plaintiff was returned to the general population at CCWF.   The complaint alleges Plaintiff did not receive appropriate post-operative care.

4

The complaint alleges that Plaintiff stopped menstruating altogether and lost over 100 pounds in the year following the surgery.   The complaint alleges that since the surgery, Thomas has experienced extreme fatigue, abdominal and lower back pain, hot flashes, and anxiety.

The complaint alleges that Plaintiff repeatedly sought medical attention and asked for information regarding her condition at CCWF.   She repeatedly asked for information regarding the surgery and its apparent effects.

In response to Plaintiff's post-surgical symptoms, Defendant Reeves prescribed Premarin and explained that this hormonal replacement would stimulate her reproductive system to begin releasing hormones.   The complaint alleges that although Plaintiff pointed out to CCWF medical staff that she had a history of deep vein thrombosis and blood clots (as her medical records also reflect), Defendant Reeves prescribed Premarin despite knowing that this was unnecessary and/or could pose a danger to Plaintiff.

Plaintiff has specifically asked Defendant Reeves and other CCWF medical staff if she still had her ovaries following the surgical procedure performed by Defendant Ugwu-Oju.   The complaint alleges that Defendant Reeves has repeatedly assured her that she still had her ovaries and that Plaintiff's medical chart specified that Defendant Ugwu-Oju had only performed a cystectomy.

The complaint alleges that in 2002, Defendant Reeves ordered an ultrasound and explained to Plaintiff that the ultrasound showed that both of her ovaries appeared normal. In response to Plaintiff's questions, Defendant Reeves made light of her medical concerns and condition, stating that there was nothing to worry about and that the reproductive organs of women are all different.

The complaint alleges that in response to Plaintiff's concerns about her medical condition, Defendant Goodwin told Thomas that there was nothing physically wrong with her and that Plaintiff was imagining her problems.   The complaint alleges that Defendant Goodwin told Plaintiff that Plaintiff should not worry about her rapid weight loss, particularly because

women usually want to become thinner.

The complaint alleges that as a result of her confusion regarding her medical treatment and the status of her reproductive capacity, Plaintiff became severely depressed and started to experience panic attacks.  The complaint alleges that Plaintiff's anxiety became so great that she would not leave her room to attend required programming at CCWF or to eat in the mess hall. The complaint alleges that Plaintiff was too scared and intimidated to pursue her concerns about her medical condition fearing that if she required medical attention, the prison staff would refuse to assist her in retaliation for her complaints. Plaintiff became suicidal and had to receive emergency psychiatric treatment.

The complaint alleges that in 2003, after Thomas continued to experience painful and abnormal physical symptoms and suffer severe emotional distress, she insisted to Defendants Goodwin and Reeves that something was not right.  Defendant Goodwin ordered another ultrasound and told Thomas that the lab report showed that both of Thomas's ovaries appeared normal.

The complaint alleges that Plaintiff's many medical symptoms persisted.   Plaintiff never resumed menstruation following the surgery. She expressed her continuing concerns to CCWF medical staff.

The complaint alleges that in 2004, Defendant Kruse ordered an ultrasound and told Plaintiff that the right ovary was normal, but there was no clear image of the left ovary.

The complaint alleges that Defendant Suryadevara called Plaintiff into a meeting with Defendant Reeves and CCWF's prison advisory committee to discuss Plaintiff's medical condition and her complaints. The complaint alleges that Defendant Suryadvara stated to Plaintiff that nobody would treat her if she threatened litigation.

The complaint alleges that Defendant Reeves has repeatedly refused to provide non-hormonal treatment for the post-surgical menopause that Plaintiff is experiencing.

The complaint alleges that Defendants Reeves, Goodwin, Kruse, and Suryadevara, and

6

1   other doctors at CCWF, continue to insist that Thomas still has her ovaries and that her physical

2   symptoms are unrelated to the surgery.

3       The complaint alleges that Plaintiff only discovered that her ovaries had in fact been

4   removed as a result of an independent review of her prison medical records by a medical

5   consultant engaged by her attorneys. In May of 2005, Thomas's counsel in this case informed her

6   that their investigation suggested her ovaries had in fact been removed during surgery, contrary

7   to the representations of Defendants Ugwu-Oju, Reeves, and Suryadevara.

8       The complaint alleges that as a result of the removal of her ovaries, Plaintiff has lost her

9   reproductive capacity.  Plaintiff is due to be released on February 21, 2009 and had desired to

10  have more children in the future. The removal of her ovaries has permanently altered her

11  hormone levels and caused the onset of premature menopause, inflicted severe emotional

12  distress, fear, and anxiety upon Plaintiff, and caused other serious medical complications.

13  Further, the failure of the CDC Defendants to give Thomas an accurate answer regarding her

14  medical condition and her reproductive capacity has caused Thomas to suffer severe emotional

15  distress, fear, and anxiety, and endure other serious medical complications.

16      The complaint alleges that Plaintiff believes her health continues to be in jeopardy.

17  Doctors and other CCWF personnel have harassed Plaintiff for seeking medical help and still

18  refuse to give her accurate information regarding her medical condition.

19                              **LEGAL STANDARD**

20  **A.  Rule 12(b)(6) Motion to Dismiss**

21      A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil

22  Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of the

23  claim that would entitle him to relief.  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984) (citing

24  Conley v. Gibson, 355 U.S. 41, 45-46 (1957)); Balistreri v. Pacifica Police Department, 901 F.2d

25  696, 699 (9th Cir. 1990).  A Rule 12(b)(6) dismissal can be based on the failure to allege a

26  cognizable legal theory or the failure to allege sufficient facts under a cognizable legal theory.

27

28                                    7

Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir.1984).  In considering a motion to dismiss, the court must accept as true the allegations of the complaint in question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the pleading in the light most favorable to the party opposing the motion, and resolve all doubts in the pleader's favor.  Jenkins v. McKeithen, 395 U.S. 411, 421, reh'g denied, 396 U.S. 869 (1969).

**B.  Rule 12(e) Motion for a More Definite Statement**

"If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading." Fed.R.Civ.P. 12(e).  A Rule 12(e) motion is proper only if the complaint is so indefinite that the defendant cannot ascertain the nature of the claim being asserted.  See Federal Sav. and Loan Ins. Corp. v. Musacchio, 695 F.Supp. 1053, 1060 (N.D.Cal.1988); Famolare, Inc. v. Edison Bros. Stores, Inc., 525 F.Supp. 940, 949 (E.D.Cal.1981).   The court must deny the motion if the complaint is specific enough to apprise defendant of the substance of the claim being asserted.  See Bureerong v. Uyawas, 922 F.Supp. 1450, 1461 (C.D.Cal.1996); FRA S.P.A. v. Surg- O-Flex of America, 415 F. Supp. 421, 427 (S.D.N.Y. 1976). The court should also deny the motion if the detail sought by a motion for more definite statement is obtainable through discovery. See Beery v. Hitachi Home Electronics (America), Inc., 157 F.R.D. 477, 480 (C.D.Cal.1993).

**DISCUSSION**

There are three motions to dismiss, and related motions, pending before the court.   The doctors, correctional officers, and staff employed by CDC ("CDC Defendants") have filed one motion to dismiss.   Defendant Ugwu-Oju has filed another motion to dismiss.   Defendant Madera has filed a third motion to dismiss.   Because each motion addresses whether there are sufficient facts to state a claim against the moving Defendants, the Defendants' motions are addressed separately below.    All Defendants' motions to strike the request for punitive damages are addressed together in Section IV.

# I.  CDC DEFENDANTS' MOTION

## A.  Exhaustion

CDC Defendants contend the action against them is subject to dismissal because Plaintiff failed to exhaust her administrative remedies prior to filing suit.

Pursuant to the Prison Litigation Reform Act of 1995, "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Section 1997e(a)'s exhaustion requirement applies to all prisoner suits relating to prison life.  Porter v. Nussle, 435 U.S. 516, 532 (2002).  Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated.  Booth v. Churner, 532 U.S. 731, 741 (2001).  "All 'available' remedies must be exhausted; those remedies need not meet federal standards, nor must they be 'plain, speedy, and effective.'"  Porter, 534 U.S. at 524 (citing to Booth, 532 U.S. at 739 n.5).  Exhaustion must occur prior to filing suit.  McKinney v. Carey, 311 F.3d 1198, 1199-1201 (9th Cir. 2002).  Plaintiff may not exhaust while the suit is pending.  Id.

The California Department of Corrections has an administrative grievance system for prisoner complaints.  Cal. Code Regs., tit. 15 § 3084, *et seq.*  "Any inmate or parolee under the department's jurisdiction may appeal any departmental decision, action, condition, or policy which they can reasonably demonstrate as having an adverse effect upon their welfare."  Id. at 3084.1(a).  Four levels of appeal are involved, including the informal level, first formal level, second formal level, and third formal level, also known as the "Director's Level."  Cal. Code Regs. tit 15, § 3084.5 (2005).

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which defendants have the burden of raising and proving the absence of exhaustion.  Wyatt v. Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The failure to exhaust

9

nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule

12(b) motion, rather than a summary judgment motion.  Wyatt, 315 F.3d at 1119 (citing Ritza v.

Int'l Longshoremen's & Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per

curium)).  In deciding a motion to dismiss for failure to exhaust administrative remedies, the

court may look beyond the pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at

1119-20.  If the court concludes that the prisoner has failed to exhaust administrative remedies,

the proper remedy is dismissal without prejudice.  Id.

***1. Plaintiff's Administrative Appeals***

The parties do not dispute the evidence relating to Plaintiff's administrative appeals.

On October 5, 2005, Plaintiff signed a CDC From 602 grievance, which was given

Appeal Log No. C-05-01221 ("October 5 Appeal").  In this appeal, Plaintiff states that she

recently learned both of her ovaries were removed during a surgery performed by Dr. Ugwu-Oju

at Dr. Reeve's direction.    Plaintiff states that she has repeatedly asked Dr. Reeves about the

procedure they performed, and he never admitted her ovaries were removed or provided

appropriate treatment.   In a letter dated October 20, 2005, Appeal C-05-01221, was screened at

the first level and returned to Plaintiff.   The letter states that there had been too great a time lapse

between when the action occurred and when Plaintiff filed the appeal with no explanation of why

Plaintiff did not or could not file in a timely fashion.

On October 28, 2005, Plaintiff signed a second Form 602 grievance, which was also

given Appeal Log No. C-05-01221 ("October 28 Appeal").   In this appeal Plaintiff asks that her

original appeal be processed along with this appeal.    Plaintiff states she "learned" of her

medical condition in May 2005, and has been meeting with Dr. Reeves and Dr. Suryadvara to

find out what procedures were performed.   In a letter dated November 7, 2005, this appeal was

screened out at the first level with language similar to the letter denying the original appeal.

The letter concludes:

> Ms. Thomas, appellant must submit an appeal within 15 working days of the
> event or decision being appealed.   This procedure you are appealing happen [sic.]

10

1   in 2002.  Time limits expired per CCR 3084.6(c).

2          In a letter dated November 22, 2005, Plaintiff's attorney wrote to Toni Brown, Appeals

3   Coordinator at Central California Women's Facility.   In the letter Plaintiff's attorney states that

4   Plaintiff's 602 was incorrectly denied due to a time lapse.    Plaintiff's attorneys states that

5   Plaintiff has yet to receive confirmation from either CCWF or Madera Community Hospital that

6   her ovaries were removed during surgery and her condition is on-going.

7          On January 20, 2006, Plaintiff signed a third Form 602 grievance, which was also given

8   Appeal Log No. C-05-01221 ("January 30, 2006 Appeal").   In a letter dated February 2, 2006,

9   the January 30, 2006 Appeal was returned because it was duplicate of another appeal.

10         In a letter dated February 22, 2006, Plaintiff's attorney again wrote to Toni Brown.

11         On February 26, 2006, Plaintiff signed a fourth Form 602 grievance, which was again

12  given Appeal Log No. C-05-01221 ("February 26, 2006 Appeal").    The appeal asked that the

13  untimeliness finding be made formal and appealed to the next level or be reviewed at the first

14  level.   In a letter dated March 1, 2006, this appeal was screened out at the first level with

15  language identical to letter returning the October 28, 2000 Appeal – Plaintiff had failed to submit

16  the appeal within 15 working days of the event being appealed.

17  **2.  *Timely Appeal***

18         CDC Defendants contend that Plaintiff's claims are barred because Plaintiff failed to

19  timely appeal her claims.   Plaintiff contends the denial of her appeals as untimely satisfied the

20  exhaustion requirement.   In a supplemental brief, CDC Defendants point to the recent Supreme

21  Court opinion in  Woodford v. Ngo, 126 S.Ct. 2378, 2380 (2006).  CDC Defendants contend that

22  under Ngo Plaintiff has not exhausted her administrative remedies because Plaintiff failed to file

23  a timely appeal.

24         When the parties' filed their motion and opposition briefs, Ngo had not yet be decided by

25  the Supreme Court.  Previously, the Ninth Circuit had found exhaustion occurred when all

26  avenues of administrative relief available are completed and the exhaustion requirement did not

27

28                                               11

1  bar subsequent judicial consideration of an exhausted administrative appeal that was denied on

2  state procedural grounds.   Ngo v. Woodford, 403 F.3d 620, 631 (9th Cir. 2005).   However, the

3  Supreme Court's Ngo opinion reversed that of the Ninth Circuit.

4        The Supreme Court in Woodford v. Ngo, 126 S.Ct. 2378 (2006) held that "[p]roper

5  exhaustion demands compliance with an agency's deadlines and other critical procedural rules

6  because no adjudicative system can function effectively without imposing some orderly structure

7  on the course of its proceedings."  Id. at 2386.   The Supreme Court found that "[proper

8  exhaustion] means . . .  a prisoner must complete the administrative review process in accordance

9  with the applicable procedural rules, **including deadlines,** as a precondition to bringing suit in

10 federal court."  Id.  (emphasis added).   The Supreme Court reasoned that the:

> benefits of exhaustion can be realized only if the prison grievance system is given
> a fair opportunity to consider the grievance. The prison grievance system will not
> have such an opportunity unless the grievant complies with the system's critical
> procedural rules. A prisoner who does not want to participate in the prison
> grievance system will have little incentive to comply with the system's procedural
> rules unless noncompliance carries a sanction, and under respondent's
> interpretation of the PLRA noncompliance carries no significant sanction.

15 Ngo, 126 S.Ct. at 2388.

16        The CDC's administrative grievance system for inmate appeals is found at California

17 Code of Regulations, title 15, article 8, § 3084 et seq.    Based on the evidence cited by

18 Defendants, Plaintiff's appeals were covered by California Code of Regulations § 3084.6(c).

19 California Code of Regulations § 3084.6(c) provides:

> (c) Inmate or parolee response. An appellant must submit the appeal within 15
> working days of the event or decision being appealed, or of receiving an
> unacceptable lower level appeal decision.

22 Cal. Code Regs. tit. 8, § 3084.6(c).   In the denial letters, Plaintiffs' appeals were denied because

23 the procedure had happened in 2002 and the time limits set out in California Code of Regulations

24 § 3084.6(c) had expired.

25        The date for the running of an appeal is 15 working days of the "event" being appealed.

26 In this case, the event being appealed is the surgery and failure to treat Plaintiff properly for

27

28                                                    12

menopause after surgery.   No regulation cited by Defendants in their briefs or in the denial

letters makes an exception if the "event" is not discovered within 15 working days; such as an

allowance for situations where the date of discovery is significantly after the event occurring.

Based on the complaint's allegations, the evidence provided, and the parties' arguments, the time

frame in which Plaintiff had to administratively appeal passed before Plaintiff knew of any event

that needed to be appealed.   Based on the current evidence and argument, this appears to be a

situation where Plaintiff had no available remedy that would have allowed her to actually

appeal.

The Supreme Court in <u>Ngo</u> briefly addressed the situation of prison administrators

potentially devising procedural requirements that are designed to trap unwary prisoners and thus

to defeat their claims.   Because no evidence was presented that anything like that occurred in

the case before the Court, the Supreme Court declined to address this situation, but implied such

an exception to exhaustion may exist.   <u>See</u> <u>Ngo</u>, 126 S.Ct. at 2392-93 ("with respect to the

possibility that prisons might create procedural requirements for the purpose of tripping up all

but the most skillful prisoners, while Congress repealed the "plain, speedy, and effective"

standard, see 42 U.S.C. § 1997e(a)(1) (1994 ed.) (repealed 1996),  we have no occasion here to

decide how such situations might be addressed.")   In his concurrence, Justice Breyer also

reasoned that the PLRA's proper exhaustion requirement is not absolute, and certain facts may

justify exceptions.   <u>Ngo</u>, 126 S.Ct. at 2393 (BRYER, concurring).   Here, the administrative

scheme provided to Plaintiff required her to appeal before she knew that Defendants may have

done anything wrong.   Such a system clearly renders Plaintiff's ability to administratively appeal

unavailable.

The Supreme Court in <u>Ngo</u> expressed concern that prisoner's would abuse a system that

allowed exhaustion to be satisfied by filing an untimely appeal.

> For example, a prisoner wishing to bypass available administrative remedies could
> simply file a late grievance without providing any reason for failing to file on
> time. If the prison then rejects the grievance as untimely, the prisoner could
> proceed directly to federal court. And acceptance of the late grievance would not

> thwart the prisoner's wish to bypass the administrative process; the prisoner could easily achieve this by violating other procedural rules until the prison administration has no alternative but to dismiss the grievance on procedural grounds. We are confident that the PLRA did not create such a toothless scheme.

Ngo, at 2388.   This concern is not evident in a situation where a prisoner's claims are denied as untimely but the prisoner had no ability to file the claim earlier.   While the PLRA did not create a scheme that prisoners could easily bypass, the PLRA also did not intend to allow states to avoid prisoner litigation by creating an appellate scheme that is impossible to comply with.

Although Ngo holds that a prisoner must "properly" exhaust administrative remedies before suing in federal court, see Ngo, 126 S.Ct., Ngo appears to leave open the question of whether exhaustion applies in situations where administrative remedies are not available. Section 1997e(a)'s exhaustion requirement is an affirmative defense that must be raised and proved by the defendant.   Brown v. Valoff, 422 F.3d 926, 936 (9th Cir. 2005);   Andrews v. King, 398 F.3d 1113, 1119 (9th Cir. 2005);   Wyatt v. Terhune, 315 F.3d 1108, 1117-18 (9th Cir. 2003). Here, CDC Defendants have set forth no argument, supported by evidence and citation to regulations, that Plaintiff had an available prison grievance process that she failed to follow. CDC Defendants' position is that Plaintiff failed to appeal within fifteen days of an event she did not know about for years, let alone know about within fifteen days.   It is possible that the administrative process did allow for Plaintiff to appeal after her discovery of the event which caused her harm.   It is also possible that Plaintiff did not appeal within the proper time frame from her discovery.   However, at this time CDC Defendants have failed in their burden to provide the regulations that would have allowed Plaintiff to appeal her claim after discovery.   In addition, CDC Defendants have failed to provide evidence on when Plaintiff discovered her claim.   Because the burden of proving a violation of Section 1997e(a) rests with CDC Defendants and CDC Defendants have failed to meet their burden, the court finds dismissal for Plaintiff's failure to exhaust administrative remedies pursuant to Section 1997e(a) is not warranted.

14

1    *3. Failure to Name Specific Defendants*

2        CDC Defendants contend that Plaintiff failed to exhaust her administrative remedies

3    because Plaintiff's administrative appeals did not contain the name of each CDC Defendant.

4        Under the PLRA, an inmate is required to use the administrative process that the state

5    provides in order to exhaust her administrative remedies.   Butler v. Adams, 397 F.3d 1181, 1183

6    (9th Cir. 2005).   In light of California law, a prison appeal in California need not name each

7    defendant named in a subsequent federal action as a matter of law.   Id.   In Butler, a blind inmate

8    filed suit in federal court under the Americans with Disabilities Act, naming several members of

9    the prison staff as defendants.   See id. at 1182-83.   Because the defendants were not named in

10   any of his prison appeals, the district court dismissed the claims on grounds of failure to exhaust,

11   finding that the named defendants did not have prior notice of the claims against them in the

12   appeals.   Id. at 1183.   The Ninth Circuit reversed, holding that the form used by the inmate to

13   request an accommodation did not require him to identify any specific persons, and that by filling

14   out and submitting the form he had done everything required of him by the PLRA.   Id.

15       In preparing an administrative appeal, California regulations provide that "[t]he appellant

16   shall use a CDC Form 602 (rev. 12-87), Inmate/Parolee Appeal Form, to describe the problem

17   and action requested."   Cal.Code Regs. tit. 15, § 3084.2(a).   The applicable CDC form does

18   not require identification of any specific persons.   Plaintiff completed the form and described the

19   problem and the action requested.   "Doing so, [s]he availed [her]self of the administrative

20   process the state gave [her].   The PLRA does not require more."  Butler, 397 F.3d at 1183.

21   Thus, the court cannot find Plaintiff failed to exhaust her administrative remedies by failing to

22   specifically name each CDC Defendant in her appeals.

23       Accordingly, CDC Defendants' motion to dismiss for Plaintiff's failure to exhaust

24   administrative remedies is denied without prejudice.

25   **B. First Cause of Action –  Violation of Eighth Amendment**

26       The first cause of action is brought under 42 U.S.C. § 1983 and alleges a violation of the

27

28                                          15

Eighth Amendment.   CDC Defendants contend that the complaint fails to state a claim for a

violation of the Eighth Amendment against them.

***1. Linkage***

The Civil Rights Act provides that:

> Every person who, under color of [state law] . . . subjects, or causes
> to be subjected, any citizen of the United States . . . to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution . . . shall be liable to the party injured in an action at
> law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between

the actions of the defendants and the deprivation alleged to have been suffered by plaintiff.  See

Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

(1976).   "A person 'subjects' another to the deprivation of a constitutional right, within the

meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts

or omits to perform an act which he is legally required to do that causes the deprivation of which

complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).  In order to state a

claim for relief under section 1983, a plaintiff must link each named defendant with some

affirmative act or omission that demonstrates a violation of plaintiff's federal rights.

The complaint omits any specific factual allegations against CDC Defendants Szekrenyi,

Hickman, Woodford, Rimmer, Campbell, Jacquez or Mitchell.   To state a claim, the complaint

must allege in specific terms how each named defendant is involved.  There can be no liability

under 42 U.S.C. § 1983 unless there is some affirmative link or connection between a defendant's

actions and the claimed deprivation.  Rizzo v. Goode, 423 U.S. 362 (1976); May v. Enomoto,

633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978).

Because Plaintiff has failed to link these named defendants with some affirmative act or

omission, Plaintiff's Eighth Amendment claim must be dismissed as to CDC Defendants

Szekrenyi, Hickman, Woodford, Rimmer, Campbell, Jacquez or Mitchell.

In the opposition, Plaintiff contends that her theory of liability against CDC Defendants

16

Szekrenyi, Hickman, Woodford, Rimmer, Campbell, Jacquez and Mitchell is based on their failure to train and supervise Defendant Ugwu- Oju.  Plaintiff points out that officials at CDC decided to use Defendant Ugwu-Oju and transferred Plaintiff to Defendant Ugwu-Oju's care. Supervisory personnel are generally not liable under Section 1983 for the actions of their employees or contractors under a theory of respondeat superior and, therefore, when a named defendant holds a supervisorial position, the causal link between him and the claimed constitutional violation must be specifically alleged.  See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978).  To state a claim for relief under Section 1983 based on a theory of supervisory liability, Plaintiff must allege some facts that would support a claim that supervisory CDC Defendants either: personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be alleged to support claims under section 1983.  See Leatherman v. Tarrant County Narcotics Unit, 507 U.S. 163, 168 (1993).

Plaintiff has not alleged any facts indicating that CDC Defendants Szekrenyi, Hickman, Woodford, Rimmer, Campbell, Jacquez and Mitchell personally participated in the alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'"  Hansen v. Black at 646.  There are no specific allegations showing that these CDC Defendants failed to train and supervise Defendant Ugwu-Oju, resulting in Defendant Ugwu-Oju's unnecessary removal of Plaintiff's ovaries.  There is also no specific allegations that any of these Defendants knew Plaintiff no longer had her ovaries but instructed the other Defendants to lie to Plaintiff and/or

17

improperly treat her for menopause.   Finally, there are no allegations of a specific policy created by CDC Defendants Szekrenyi, Hickman, Woodford, Rimmer, Campbell, Jacquez or Mitchell that caused either Defendant Ugwu-Oju to unnecessarily remove both of Plaintiff's ovaries and/or caused other CDC Defendants to lie to Plaintiff and fail to treat her menopause.    Thus, the complaint fails to state a claim against CDC Defendants Szekrenyi, Hickman, Woodford, Rimmer, Campbell, Jacquez or Mitchell for a violation of Plaintiff's Eighth Amendment rights because Plaintiff has not linked these named Defendants to the alleged constitutional violations.

When dismissing a complaint,  "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir.2001) (internal quotation marks omitted); Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.  (9th Cir. 1996).   Because it is not clear that Plaintiff will be unable to state a claim against CDC Defendants Szekrenyi, Hickman, Woodford, Rimmer, Campbell, Jacquez and Mitchell, the Eighth Amendment cause of action against these Defendants will be dismissed with leave to amend.

### 2. Cruel and Unusual Punishment

The remaining CDC Defendants contend that the complaint fails to state that they violated Plaintiffs' Eighth Amendment rights.

To constitute cruel and unusual punishment in violation of the Eighth Amendment, prison conditions must involve "the wanton and unnecessary infliction of pain."  Rhodes v. Chapman, 452 U.S. 337, 347 (1981).   A prisoner's claim of inadequate medical constitutes cruel and unusual punishment if the mistreatment rises to the level of "deliberate indifference to serious medical needs."  Estelle v. Gamble, 429 U.S. 97, 106 (1976).   A prisoner's claim of inadequate medical care does not rise to the level of an Eighth Amendment violation unless (1) "the prison official deprived the prisoner of the 'minimal civilized measure of life's necessities,'" and (2) "the prison official 'acted with deliberate indifference in doing so.'"  Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir. 2002)

18

1   (citation omitted)).

2          A prison official does not act in a deliberately indifferent manner unless the official

3   "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511

4   U.S. 825, 834 (1994).   The "deliberate indifference" standard involves an objective and a

5   subjective prong.  First, the alleged deprivation must be, in objective terms, "sufficiently

6   serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294,

7   298 (1991)).  Second, the prison official must act with a "sufficiently culpable state of mind,"

8   which entails more than mere negligence, but less than conduct undertaken for the very purpose

9   of causing harm.  Farmer, 511 U.S. at 837.  A prison official does not act in a deliberately

10  indifferent manner unless the official "knows of and disregards an excessive risk to inmate health

11  or safety." Id.

12         Deliberate indifference may be manifested "when prison officials deny, delay or

13  intentionally interfere with medical treatment," or in the manner "in which prison physicians

14  provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992), *overruled on*

15  *other grounds*, WMX Techs., Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc).

16  Where a prisoner is alleging a delay in receiving medical treatment, the delay must have led to

17  further harm in order for the prisoner to make a claim of deliberate  indifference to serious

18  medical needs.  McGuckin, 974 F.2d at 1060 (citing Shapely v. Nevada Bd. of State Prison

19  Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985)).

20         In applying the deliberate indifference standard, the Ninth Circuit has held that before it

21  can be said that a prisoner's civil rights have been abridged, "the indifference to his medical

22  needs must be substantial.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not

23  support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.

24  1980) (citing Estelle, 429 U.S. at 105-06).  "[A] complaint that a physician has been negligent in

25  diagnosing or treating a medical condition does not state a valid claim of medical mistreatment

26  under the Eighth Amendment.  Medical malpractice does not become a constitutional violation

27

28                                              19

1   merely because the victim is a prisoner." Estelle v. Gamble, 429 U.S. at 106; see also Anderson

2   v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995); McGuckin, 974 F.2d at 1050.  Even gross

3   negligence is insufficient to establish deliberate indifference to serious medical needs.  See Wood

4   v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).  A prisoner's mere disagreement with

5   diagnosis or treatment does not support a claim of deliberate indifference.  Sanchez v. Vild, 891

6   F.2d 240, 242 (9th Cir. 1989).

7        While not entirely clear, it appears Plaintiff's Eighth Amendment claim against CDC

8   Defendants rests on two theories.   First, CDC Defendants were deliberately indifferent to

9   Plaintiff's serious medical needs by referring her to Defendant Ugwu-Oju for surgery.   Second,

10  CDC Defendants were deliberately indifferent to Plaintiff's serious medical needs by not telling

11  Plaintiff what really happened during the surgery, not advising Plaintiff that her ovaries had been

12  removed, and improperly treating Plaintiff after surgery, including not providing Plaintiff with

13  non-hormonal treatments for menopause.

14  *a.   Defendant Reeves*

15       Most of the specific allegations in the complaint concern Defendant Reeves.  The

16  complaint alleges that when Plaintiff began to experience severe abdominal pains and started

17  menstruating on a biweekly cycle in 1999 and 2000, Defendant Reeves ordered an ultrasound and

18  biopsy.   Because the ultrasound revealed two cysts and the biopsy also revealed severe dysplasia

19  and some cancerous cells, Defendant Reeves informed Plaintiff that she would need to undergo a

20  cystectomy to remove the cysts and a cone biopsy of her cervix to check for cervical cancer.

21  Defendant Reeves told Plaintiff that the cystectomy was a basic procedure and would not

22  interfere with Plaintiff having children, but widespread cancer of the cervix might require a

23  complete hysterectomy.  The complaint alleges that  Defendant Reeves did not provide Plaintiff

24  with non-surgical alternatives.  The complaint alleges that, in 2001, Defendant Reeves, acting on

25  behalf of the prison and the CDC, entrusted Plaintiff to Defendant Madera and Defendant Ugwu-

26  Oju for medical care.   The complaint alleges that following the surgery, Plaintiff did not receive

27

28                                          20

1    appropriate post-operative care.  The complaint alleges that after surgery, Defendant Reeves

2    prescribed Premarin even though Plaintiff  had a history of deep vein thrombosis and blood clots.

3    The complaint alleges that Plaintiff has specifically asked Defendant Reeves if she still has her

4    ovaries following the surgery, and Defendant Reeves has repeatedly assured her that she still had

5    her ovaries and her current medical problems are not related to the surgery.

6         "Deliberate indifference is a high legal standard."  Toguchi v. Chung, 391 F.3d 1051,

7    1060 (9th Cir. 2004).   Plaintiff has not sufficiently alleged that Defendant Reeves "[knew] of and

8    disregard[ed] an excessive risk to [Plaintiff's] health or safety."  Farmer, 511 U.S. at 837.  While

9    the complaint alleges that Defendant Reeves failed to address alternatives to surgery with

10   Plaintiff, the complaint does not allege what alternatives existed.   In addition, assuming a

11   reasonable doctor should have explored alternatives, Plaintiff appears to only have alleged a

12   difference in opinion regarding medical treatment.   In order to prevail on a claim involving

13   choices between alternative courses of treatment, a prisoner- plaintiff must show that the course

14   of treatment the doctor chose was medically unacceptable under the circumstances and that he

15   chose this course in conscious disregard of an excessive risk to plaintiff's health.  Toguchi, 391

16   F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996). "Under this standard, the

17   prison official must not only 'be aware of the facts from which the inference could be drawn that

18   a substantial risk of serious harm exists,' but that person 'must also draw the inference.'"

19   Toguchi, 391 F.3d at 1057 (quoting Farmer, 511 U.S. at 837).  "'If a prison official should have

20   been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no

21   matter how severe the risk.'"  Id. (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175,

22   1188 (9th Cir. 2002)).  Based on the allegations in the complaint, the complaint does not allege

23   deliberate indifference based on Dr. Reeve's treatment before surgery.   The complaint does not

24   allege Dr. Reeve's actions were medically unacceptable under the circumstances and that Dr.

25   Reeve's chose surgery in conscious disregard of an excessive risk to plaintiff's health

26        The complaint also does not allege that Defendant Reeve knew that allowing Defendant

27

28                                          21

1   Ugwu-Oju to perform the surgery would create an excessive risk to Plaintiff's health.   There are

2   no allegations that Defendant Reeve had knowledge that Defendant Ugwu-Oju was not

3   competent to perform the necessary procedures and/or was likely to not perform the agreed upon

4   surgery.   There is no allegations indicating that Defendant Reeves knew Defendant Ugwu-Oju

5   would remove Plaintiff's ovaries unnecessarily.     Thus, the complaint does not allege that

6   Defendant Reeves knew of and disregarded an excessive risk to Plaintiff's health by turning her

7   care over to Defendant Ugwu-Oju and allowing him to perform surgery.

8           Concerning Plaintiff's treatment after surgery, there are no allegations that Defendant

9   Reeves knew Plaintiff's ovaries had been removed but continued to treat her has though they had

10  not been removed.   There are no allegations that the medical records Defendant Reeves had

11  access to showed that Defendant Ugwu-Oju actually removed Plaintiff's ovaries.   While

12  Defendant Reeves did order an ultrasound, there are no allegations that he personally performed

13  the ultrasound and/or personally reviewed the pictures.   There are simply know allegations

14  showing that Defendant Reeves knew that Plaintiff no longer had her ovaries but knowingly lied

15  to her and treated her improperly.   It appears Plaintiff's theory is that Defendant Reeves should

16  have realized based on Plaintiff's symptoms that both ovaries had been removed.   However,

17  such an argument only amounts to medical malpractice.   Medical malpractice  does not become

18  a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see

19  also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995).   Even gross negligence is

20  insufficient to establish deliberate indifference to serious medical needs.   See Wood v.

21  Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).   Thus, the complaint does not allege

22  deliberate indifference based on Defendant Reeves' conduct after surgery.

23          Plaintiff also alleges Defendant Reeves never should have given her Premarin because

24  Plaintiff  had a history of deep vein thrombosis and blood clots.   The complaint does not allege

25  that Premarin should not have been prescribed based on Dr. Reeve's knowledge.   Plaintiff has

26  only alleged a difference of opinion between her and Dr. Reeves regarding Premarin, and a

27

28                                                  22

disagreement between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a Section 1983 claim.  Franklin v. Oregon, 662 F.2d 1337, 1344 (9th Cir. 1981). To prevail, Plaintiff must allege that the course of treatment Dr. Reeves chose was medically unacceptable under the circumstances and Dr. Reeves took this course in conscious disregard to an excessive risk to Plaintiff's health.  See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986) (internal citations omitted).   Based on the allegations in the complaint, Plaintiff has not shown that Dr. Reeves knew of and disregarded an excessive risk to Plaintiff's health by prescribing Premarin.

Accordingly, the Eighth Amendment cause of action against Defendant Reeves is subject to dismissal with leave to amend.

### b.   Defendants Goodwin, Kruse and Suryadvara

The complaint alleges that three other CDC Defendants also failed to treat Plaintiff adequately after her surgery.   The complaint alleges that in 2003 Defendant Goodwin ordered an ultrasound, told Plaintiff the report showed both ovaries were normal, and told Plaintiff that there was nothing physically wrong with Plaintiff and she was imagining her problems. The complaint alleges that in 2004, Defendant Kruse ordered another ultrasound and told Plaintiff that the right ovary was normal, but there was no clear image of the left ovary.   The complaint alleges that Defendant Suryadvara told Plaintiff that nobody would treat her if she threatened litigation.   The complaint alleges that Defendants Goodwin, Kruse, and Suryadvara, and other doctors at CCWF, continue to insist that Thomas still has her ovaries and that her physical symptoms are unrelated to the surgery.

As with Defendant Reeves, there are no allegations that Defendants Goodwin, Kruse, and Suryadvara knew Plaintiff's ovaries had been removed but continued to lie to her and not treat menopause.   There are no allegations that Plaintiff's CDC medical records showed that Defendant Ugwu-Oju actually removed the ovaries or that Defendants Goodwin, Kruse, and Suryadvara had another reason to know Plaintiff's ovaries had been removed.   Defendant

23

1    Goodwin ordered another ultrasound and told Plaintiff the report showed both ovaries were

2    normal.   Defendant Kruse also ordered an ultrasound and told Plaintiff that while right ovary

3    was normal, but there was no clear image of the left ovary.    While ultrasounds were ordered,

4    there are no allegations that Defendant Suryadvara or Defendant Kruse knowingly lied because

5    they personally viewed pictures from the ultrasound and/or that the report stated both ovaries had

6    been removed.   There are simply no allegations showing that Defendants Goodwin, Kruse, and

7    Suryadvara knew that Plaintiff no longer had her ovaries but lied to her and refused to properly

8    treat her.   The allegations in the complaint at best allege medical malpractice because these

9    Defendants should have realized what had really happened to Plaintiff.   Medical malpractice is

10   insufficient to allege a violation of the Eighth Amendment.

11        Because it is possible that Plaintiff could allege additional facts that would cure the

12   deficiencies in Plaintiff's Eighth Amendment claim, the first cause of action is dismissed as to

13   the CDC Defendants with leave to amend.

14   **C. Second Cause of Action -- Violation of the Fourteenth Amendment**

15        The second cause action is brought under 42 U.S.C. § 1983 and alleges a violation of the

16   Fourteenth Amendment.   CDC Defendants contend that the complaint fails to state a claim for a

17   violation of the Fourteenth Amendment.   However, absent requesting that the second cause of

18   action be dismissed, CDC Defendants fail to brief whether Plaintiff has alleged a violation of the

19   Fourteenth Amendment.

20        In the second cause of action, Plaintiff specifically alleges a violation of the Fourteenth

21   Amendment.   The complaint alleges Defendant Ugwu-Oju violated Plaintiff's right of due

22   process, as guaranteed by the Fourteenth Amendment, by permanently depriving Plaintiff of her

23   right to procreate and of her right to be free from bodily injury.   The complaint alleges the CDC

24   Defendants violated Plaintiff's right of due process by their failure to adequately train and

25   supervise all Defendants responsible for Plaintiff's treatment and care, and in their failure to

26   provide adequate medical treatment to Plaintiff.

27

28                                          24

1    The Due Process clause confers both procedural and substantive rights.    United States v.

2    Salerno, 481 U.S. 739, 746 (1987).    Procedural due process requires "an opportunity for some

3    kind of hearing prior to the deprivation of a significant property interest."    Memphis Light, Gas

4    & Water Div. v. Craft, 436 U.S. 1, 19 (1978).[1]

5    Substantive due process primarily protects those liberties "deeply rooted in this Nation's

6    history and tradition," Moore v. East Cleveland, 431 U.S. 494, 503 (1905), such as marriage,

7    procreation, contraception, family relationships, child rearing, education, and an individual's

8    bodily integrity.    See  Planned Parenthood v. Casey, 505 U.S. 833, 851 (1992); Armendariz v.

9    Penman, 75 F.3d 1311, 1319 (9th Cir. 1996).    The Supreme Court has long recognized the right

10   of the individual "to be free from unwarranted governmental intrusion into matters so

11   fundamentally affecting a person as the decision whether to bear or beget a child."    Casey, 505

12   U.S. at 851 (quoting Eisenstadt v. Baird, 405, 453 U.S. 438 (1972)).    The Supreme Court's

13   precedents "have respected the private realm of family life which the state cannot enter."    Prince

14   v. Massachusetts, 321 U.S. 158, 166 (1944).

15   The complaint alleges that Plaintiff's right of due process, as guaranteed by the

16   Fourteenth Amendment, was violated by the acts alleged in the complaint, including, without

17   limitation to, permanently depriving Plaintiff of her right to procreate.    This allegation appears

18   to be a substantive due process claim based on Plaintiff's inability to procreate.    Essentially, a

19   motion to dismiss for failure to state a claim tests plaintiff's compliance with the liberal

20   requirements of Rule 8(a)(2) of the Federal Rules of Civil Procedure.    See 5A Charles Alan

21   Wright & Arthur R. Miller, Federal Practice and Procedure § 1356, at 294-96.    It is the burden

22   of the party bringing a motion to dismiss for failure to state a claim to demonstrate that the

23   requirements of Rule 8(a)(2) have not been met.    See Kehr Packages, Inc. v. Fidelcor, Inc., 926

24

25   _____

         [1]  Property interests protected by the due process clause are defined by state law.
26   Ruckelshaus v. Monsanto Co., 467 U.S. 986, 1001 (1984).  Before a property interest can be
     taken, the owner of the interest is entitled to notice and a hearing "at a meaningful time and in a
27   meaningful manner."  Armstrong v. Manzo, 380 U.S. 545, 552 (1965).

28                                                    25

1  F.2d 1406, 1409 (3d Cir.1991).   A court may dismiss a complaint only if it is clear that no relief

2  could be granted under any set of facts that could be proved consistent with the allegations.

3  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002).

4          Here, CDC Defendants have not briefed whether Plaintiff has stated a claim for a

5  substantive due process violation based on her loss of the ability to procreate.   Because CDC

6  Defendants have failed to brief this issue, any motion to dismiss Plaintiff's second cause of

7  action for a violation of substantive due process must be denied.   However, in any amended

8  complaint Plaintiff may wish to make the basis of this cause of action clearer and allege facts

9  supporting such a cause of action against each named Defendant.

10  **D.   All State Law Causes of Action – Supplemental Jurisdiction**

11          CDC Defendants request that the court decline to exercise supplemental jurisdiction over

12  the state law claims.   "[P]endent jurisdiction is a doctrine of discretion not of plaintiff's right.   Its

13  justification lies in considerations of judicial economy, convenience and fairness to the litigants;

14  if these are not present, a federal court should hesitate to exercise jurisdiction over state claims."

15  United Mine Workers v. Gibbs, 383 U.S. 715, 726  (1966).   The court may decline to exercise

16  supplemental jurisdiction over state claims when the federal claims are dismissed before trial.

17  See 28 U.S.C. § 1367(c)(3); Gibbs, 383 U.S. at 726.   Because one federal cause of action

18  remains and it is possible at this stage of the proceedings that Plaintiff could state a claim for an

19  Eighth Amendment violation, the court will continue to exercise supplemental jurisdiction over

20  the state law claims at this time.

21  **E.   All State Law Claims - California Tort Claims Act**

22          CDC Defendants contend that the state law claims must be dismissed against them

23  because Plaintiff did not comply with the California Tort Claims Act.

24          A plaintiff's pendent state law claims against a state or state employees are barred unless

25  the plaintiff has complied with the requirements of the California Tort Claims Act ("CTCA")

26  before commencing the civil action.  See Ortega v. O'Connor, 764 F.2d 703, 707 (9th Cir.1985),

27

28                                              26

*rev'd on other grounds*, 480 U.S. 709 (1987).  The CTCA applies to claims brought against state

employees "for injury resulting from an act or omission in the scope of his employment as a

public employee."  See Cal. Gov't Code § 950.2.  The CTCA requires that tort claims against

state employees be presented to the State Board of Control no more than six months after the

cause of action accrues.  See Cal. Gov't Code §§ 910, 911.2.   Compliance with the CTCA is

deemed to be a substantive element of a plaintiff's cause of action.  United States v. State of

California, 655 F.2d 914, 918 (9th Cir.1980); Hernandez v. McClanahan, 996 F.Supp. 975, 979

(N.D. Cal. 1998); see also Willis v. Reddin, 418 F.2d 702, 704 (1969) ("In California statutes or

ordinances which condition the right to sue the sovereign upon timely filing of claims and actions

are more then procedural requirements.  They are elements of the plaintiff's cause of action and

conditions precedent to the maintenance of the action"); City of San Jose v. Superior Court, 12

Cal.3d 447, 454 (1974) ("the claims statutes require timely filing of a proper claim as condition

precedent to the maintenance of the action").

     The parties agree that the complaint fails to allege any compliance with the CTCA.

However, in her opposition, Plaintiff contends that she did in fact comply with the CTCA.

Plaintiff provides evidence that she did file a claim with the California Victim Compensation

Board.  Plaintiff asks for leave to amend the complaint to include appropriate allegations about

the CTCA.   At this time, the state law claims must be dismissed as to the CDC Defendants for

failure to comply with the CTCA.  See  Karim-Panahi v. Los Angeles Police Dept., 839 F.2d

621, 627 (9th Cr. 1988).

     When dismissing a complaint, the Ninth Circuit has stated that "leave to amend should be

granted unless the district court determines that the pleading could not possibly be cured by the

allegation of other facts." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir.2001) (internal

quotation marks omitted); Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.  (9th Cir. 1996).  Here,

there appears to be an issue of whether Plaintiff's CTCA claim was timely filed.

     The CTCA requires that a claim be filed with the State within six months of accrual of

1  the cause of action.  Cal. Gov. Code § 911.2.   A claimant may also apply for leave to file a late

2  claim within one year of accrual.  Cal. Gov. Code § 911.4.   In this action, there is a question of

3  when Plaintiff's cause of action accrued.   A cause of action normally accrues at the time of

4  injury.   However, in some situations, a cause of action accrues when the plaintiff becomes aware

5  of the defendant's negligence as a cause, or could have become aware through the exercise of

6  reasonable diligence.  <u>Bastian v. County of San Luis Obispo</u>,  199 Cal.App.3d 520, 526-527

7  (1988).  "In order to raise the issue of belated discovery, the plaintiff must state when the

8  discovery was made, the circumstances behind the discovery, and plead facts showing that the

9  failure to discover was reasonable, justifiable and not the result of a failure to investigate or act."

10  <u>Id</u>. at 527.

11        The complaint does not state when Plaintiff discovered her injury. Because the complaint

12  is silent on all issues concerning the CTCA, including accrual, the complaint is subject to

13  dismissal with leave to amend to allege compliance.  <u>See</u> <u>United States ex rel. Saaf v. Lehman</u>

14  <u>Brothers</u>, 123 F.3d 1307, 1308 (9th  Cir. 1997) (finding district court erred by failing to allow

15  plaintiff opportunity to amend complaint to allege equitable tolling of statute of limitations).

16  The court finds the issue of whether Plaintiff's CTCA claim was timely would be better litigated

17  after Plaintiff amends her complaint than based on the allegations Plaintiff's makes in the

18  opposition.   Accordingly, the state law claims against the CDC Defendants are dismissed with

19  leave to amend to allege compliance with the CTCA and the date upon which Plaintiff

20  discovered her state law claims.

21  **F.  Third and Fourth Causes of Action** – **California Constitution**

22        The third cause of action alleges all defendants violated Plaintiff's rights under Article 1,

23  Section 17 of the California Constitution to be free from cruel and unusual punishment.  The

24  fourth cause of action alleges Defendants violated Plaintiff's right to substantive due process

25  under Article 1, Section 7 of the California Constitution.   CDC Defendants contend that

26  Plaintiff's allegations concerning violations of the California Constitution are insufficient for the

27

28                                                    28

1   same reasons as Plaintiff's allegations concerning violations of the Eighth Amendment to the

2   United States Federal Constitution fail.   Plaintiff opposes this contention.   All parties appear to

3   presume that the standards for a violation of California Constitution are identical to the standards

4   for a violation of the United States Constitution.

5          The complaint alleges the CDC Defendants violated Thomas's right to be free from cruel

6   and unusual punishment, as guaranteed by Article I, Section 17 of the California Constitution, by

7   their failure to adequately train and supervise all Defendants responsible for Plaintiff's treatment

8   and care, and in their failure to provide adequate medical treatment to Plaintiff.   The complaint

9   alleges Defendant Ugwu-Oju violated Plaintiff's right of substantive due process, as guaranteed

10  by Article I, Section 7 of the California Constitution, by permanently depriving Plaintiff of her

11  right to procreate and of her right to be free from bodily injury.   The complaint alleges the CDC

12  Defendants violated Plaintiff's right of substantive due process by their failure to adequately train

13  and supervise all Defendants responsible for Thomas's treatment and care, and in their failure to

14  provide adequate medical treatment to Thomas.

15         As a general rule, the discussion of Plaintiff's federal constitutional claim resolves both

16  the federal and state constitutional claims.   See, e.g., Los Angeles County Bar Assoc. v. Eu, 979

17  F.2d 697, 705 (9th Cir. 1992) (equal protection and due process); In re Alva, 33 Cal.4th 254, 291

18  (2004) (Eighth Amendment); Payne v. Superior Court, 132 Cal.Rptr. 405, 410 n. 3 (1976) (due

19  process).   Because the parties agree the court should resolve the third and fourth causes of action

20  the same as the court resolved the first and second causes of action brought under the United

21  States Constitution, the court would resolve the California constitutional claims pursuant to the

22  discussion in Section I.B. and Section I.C. above.   However, because the complaint fails to

23  allege compliance with the CTCA, all state law causes of action are being dismissed.

24  **G.  Fifth Cause of Action - Negligence**

25         CDC Defendants request the fifth cause of action for profession negligence against

26  Woodford, Rimmer, Hickman, Szekrenyi, Campbell, Mitchell, Jacquez, and Suryadvara be

27

28                                              29

dismissed.   CDC Defendants contend that Plaintiff has failed to plead adequate facts establishing that each of the CDC Defendants owed a duty of care to Plaintiff and how that Defendant's conduct fell below the standard of care or caused Plaintiff harm.

In general, to state a claim of negligence, a plaintiff must allege: (1) defendant's legal duty of care toward plaintiff, (2) defendant's breach of that duty, (3) damage or injury to plaintiff, and (4) the breach as the *proximate* or *legal cause* of the resulting injury.   Hoyem v. Manhattan Beach City School Dist., 22 Cal.3d 508, 514 (1978);   Hair v. State, 2 Cal.App.4th 321, 328 (1991);   Pultz v. Holgerson, 184 Cal.App.3d 1110, 1116-17 (1986); Palm v. U.S., 835 F.Supp. 512, 520 (N.D.Cal. 1993).

**_1.  Defendants Woodford, Hickman, Rimmer, Szekrenyi, Campbell, Jacquez, and Mitchell_**

CDC Defendants request the fifth cause of action for profession negligence against Woodford, Rimmer, Hickman, Szekrenyi, Campbell, Mitchell, and Jacquez be dismissed.   In her opposition, Plaintiff has not opposed the dismissal of these Defendants from the fifth cause of action.   Thus, they are dismissed.

**_2.  Defendant Suryadvara_**

CDC Defendants contend that the complaint fails to allege a cause of action for professional negligence against Defendant Suryadvara. "The elements of a cause of action in tort for professional negligence are: (1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's." Turpin v. Sortini, 31 Cal.3d 220, 229-30 (1982); Budd v. Nixen, 6 Cal.3d 195, 200 (1971); Elcome v. Chin, 110 Cal.App.4th 310, 317 (2003).

The complaint contains few references to Defendant Suryadvara.   The complaint alleges that after Plaintiff's surgery and after Plaintiff continued to experience medical problems, Defendant Suryadvara called Plaintiff into a meeting with Defendant Reeves and Defendant

1   Suryadvara.   During this meeting, Plaintiff was advised that she would not receive medical

2   treatment if she continue with her grievances against the facility.   While Defendant Suryadvara's

3   words may have been upsetting, the complaint does not allege that either Defendant Suryadvara

4   nor anyone under his control failed to provide Plaintiff with adequate medical care after this

5   meeting.  Assuming Defendant Suryadvara owed Plaintiff a duty of care as the Chief Medical

6   Officer to ensure Plaintiff's medical problems were treated, the complaint does not allege a

7   breach of that duty.

8        In addition, the complaint does not allege what inadequate medical care Defendant

9   Suryadvara provided.   It appears Plaintiff's theory against Defendant Suryadvara is in his

10  capacity as the Chief Medical Officer.     In order to state a cause of action for negligence against

11  defendant based on a wrong committed by his employee, the plaintiff must allege that the

12  wrongful act was in legal effect committed by the defendant.  Golceff v. Sugarman, 36 C.2d 152,

13  154 (1950);  Mascarin Professional Pharmacy v. Hart, 13 Cal.App.3d 462, 466 (1970).   Here,

14  Plaintiff has failed to provide sufficient legal authority to establish that alleged acts committed by

15  doctors and other personal who work for the Chief Medical Officer may have their acts imputed

16  on the Chief Medical Officer for purposes of professional negligence.

17       At this time, the state law claims must be dismissed as to all CDC Defendants for failure

18  to comply with the CTCA.  When dismissing a complaint, the Ninth Circuit has stated that

19  "leave to amend should be granted unless the district court determines that the pleading could not

20  possibly be cured by the allegation of other facts." Bly-Magee v. California, 236 F.3d 1014, 1019

21  (9th Cir.2001) (internal quotation marks omitted);  Chang v. Chen, 80 F.3d 1293, 1296 (9th Cir.

22  (9th Cir. 1996).  However, because it is not clear that Plaintiff would be unable to state a claim for

23  negligence against Defendant Suryadvara, the fifth cause of action against Defendant Suryadvara

24  is dismissed with leave to amend.

25  **H.  Sixth Cause of Action – Failure to Obtain Consent**

26       CDC Defendants move to dismiss the sixth cause of action against them because the

27

28                                                 31

complaint fails to allege sufficient facts showing that CDC Defendants failed to properly obtain Plaintiff's consent before surgery.   Plaintiff states in her opposition that she is not pursuing a cause of action based on the failure to obtain informed consent against CDC Defendants at this time.   Based on Plaintiff's concession, the sixth cause of action for failure to obtain consent prior to the surgery is dismissed against the CDC Defendants

**I.  Seventh Cause of Action – Battery**

CDC Defendants move to dismiss the seventh cause of action against them because the complaint fails to allege sufficient facts showing that CDC Defendants committed a battery on Plaintiff.   The complaint does not allege that any CDC Defendant was present during the surgery.  Plaintiff states in her opposition that she is no pursuing a battery cause of action against CDC Defendants at this time.   Based on Plaintiff's concession, the seventh cause of action for failure to obtain consent prior to the surgery is dismissed against the CDC Defendants

**J.  Eighth Cause of Action – Gross Negligence**

In the opposition, Plaintiff does not oppose Defendants' contention that Plaintiff cannot proceed with a separate cause of action for gross negligence.   Except for claims based upon statutes using the term "gross negligence," California courts have recognized that there is no separate cause of action for gross negligence. Continental Ins. Co. v. American Protection Industries 197 Cal.App.3d 322, 330 (1987); see also Saenz v. Whitewater Voyages, Inc., 226 Cal.App.3d 758, 766 n. 9  (1990).   Thus, Plaintiff's eighth cause of action for gross negligence is dismissed without leave to amend.

**K.  Ninth Cause of Action – Intentional Infliction of Emotional Distress**

CDC Defendants contend that the eighth claim, alleging intentional infliction of emotional distress, should be dismissed because the complaint does not allege extreme or outrageous conduct and that this conduct was especially calculated to cause Plaintiff mental distress.

The elements of a claim of intentional infliction of emotional distress are (1) extreme and

outrageous conduct by the defendant, (2) intention to cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional suffering and (4) actual and proximate causation of the emotional distress.   King v. AC & R Advertising, 65 F.3d 764, 769 (9th Cir. 1995); Christensen v. Superior Court, 54 Cal.3d 868, 903-04 (1991); Cole v. Fair Oaks Fire Protection Dist., 43 Cal.3d 148, 233 n.7 (1987).   The "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized community." Davidson v. City of Westminster, 32 Cal.3d 197, 209 (1982)  "Conduct is extreme and outrageous when it is of a nature which is especially calculated to cause, and does cause, mental distress." Wilkerson v. Butler, 229 F.R.D. 166, 171 (E.D. Cal. 2005).   Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities.   Fisher v. San Pedro Peninsula Hospital, 214 Cal.App.3d 590, 617 (1989).   While the issue of outrageousness is normally an issue of fact to be determined by the trier of fact, the court may determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery.   Trerice v. Blue Cross of California, 209 Cal.App.3d 878, 883 (1989).

The complaint alleges that Defendant Ugwu-Oju's conduct was extreme and outrageous because he removed Plaintiff's ovaries without her consent and knowing Plaintiff wanted more children.   The complaint alleges CDC Defendants covered up the unlawful acts of Defendant Ugwu-Oju by never providing Plaintiff with information about the surgery, never telling Plaintiff her ovaries had been removed, and representing the ovaries had not been removed.   Instead of telling Plaintiff what really happened, the complaint alleges the CDC Defendants refused to take Plaintiff's post-surgical symptoms seriously.

Failing to provide a patient with relevant information after a surgery is extreme and outrageous conduct.   When this information would have assisted in Plaintiff's treatment and would have provided her with knowledge about her own bodily integrity and future ability to procreate, the failure to reveal such information comes to the level where a reasonable jury could

1   conclude such conduct exceeds all bounds of that usually tolerated in a civilized community.

2        However, the problem with Plaintiff's intentional infliction of emotional distress claim

3   against CDC Defendants is not whether their possible conduct is extreme.   The problem is the

4   complaint does not allege CDC Defendants told Plaintiff what they did after the surgery knowing

5   it was a lie.    The complaint fails to allege CDC Defendants lied to Plaintiff with the intention of

6   causing her or in reckless disregard to the probability of causing Plaintiff emotional distress.

7   There is no allegation in the complaint that CDC Defendants knew that Plaintiff's ovaries had

8   been removed and she was going through menopause and deliberately misled her.    Because

9   there is no allegation that CDC Defendants knew they were providing false information, the

10  complaint fails to allege that the alleged extreme and outrageous conduct was calculated to cause

11  mental distress.

12       At this time, the state law claims must be dismissed as to the CDC Defendants for failure

13  to comply with the CTCA.   When dismissing a complaint, the Ninth Circuit has stated that

14  "leave to amend should be granted unless the district court determines that the pleading could not

15  possibly be cured by the allegation of other facts." Bly-Magee, 236 F.3d at 1019.   Because it

16  would be possible with additional facts to state a claim for emotional distress against the CDC

17  Defendants, dismissal is made with leave to amend.

18  **L.  Cause of Action Nine - Negligent Infliction of Emotional Distress**

19       The Ninth Cause of Action alleges negligent infliction of emotional distress.   CDC

20  Defendants contend that this cause of action is duplicative of Plaintiff's negligence cause of

21  action.

22       The negligent causing of emotional distress is not an independent tort, and the tort is

23  subsumed within negligence.  Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 984-85

24  (1993);  Burgess v. Superior Court,  2 Cal.4th 1064, 1071-72 (1992);  Spates v. Dameron Hosp.

25  Assn., 114 Cal.App.4th 208, 213 (2003).   To establish negligent infliction of emotional distress

26  the plaintiff must prove the traditional elements of negligence: duty, breach of duty, causation

27

28                                          34

1   and damages.  Burgess,  2 Cal.4th at 1071-72;  Friedman v. Merck & Co., 107 Cal.App.4th 454,

2   463 (2003).   A plaintiff's separate claims for negligent infliction of emotional distress are

3   included in a claim for negligence, and damages for emotional distress should be pleaded under

4   that cause of action.  Pappas v. Starwood Hotels & Resorts Worldwide, Inc., 2005 WL 3500691,

5   *3 (E.D.Cal. 2005).

6          In the opposition, Plaintiff agrees that there is no separate negligent infliction of

7   emotional distress claim.   Because negligent infliction of emotional distress should be pled as

8   damages under the negligence claim, Plaintiff requests leave to amend the negligence cause of

9   action.   Absent unusual circumstances, dismissal without leave to amend is improper unless it is

10  clear that the complaint could not be saved by amendment.   Chang v. Chen, 80 F.3d 1293, 1296

11  (9th Cir. 1996).   The court will dismiss the negligent infliction of emotional distress cause of

12  action as a separate cause of action but give Plaintiff leave to plead emotional distress damages

13  due to Defendants' negligence.

14  **M. Eleventh and Twelfth Causes of Action – Fraud and Negligent Misrepresentation**

15         CDC Defendants contend that the eleventh and twelfth causes of action for

16  misrepresentation and concealment of material facts are subject to dismissal because they do not

17  meet with the requirement of Rule 9(b) of the Federal Rules of Civil Procedure.

18         Rule 9(b) provides: "In all averments of fraud or mistake, the circumstances constituting

19  fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition

20  of mind of a person may be averred generally." Fed. R. Civ. Proc. 9(b).  "A pleading 'is sufficient

21  under Rule 9(b) if it identifies the circumstances constituting fraud so that the defendant can

22  prepare an adequate answer from the allegations.'" Neubronner v. Milken, 6 F. 3d 666, 671 (9th

23  Cir. 1993) (quoting Gottreich v. San Francisco Investment Corp., 552 F. 2d 866, 866 (9th Cir.

24  1977).)  A complaint alleging fraud meets the standard if it alleges the time, place, and content of

25  the fraudulent statements, including reasons why the statements are false. Decker v. GlenFed,

26  Inc., 42 F.3d 1541, 1547-48 (9th Cir. 1994) (en banc).   However, where fraud allegedly occurred

27

28                                                    35

over a period of time, Rule 9(b)'s requirement that the circumstances of fraud to be stated with

particularity have been less stringently applied.   United States v. Hempfling, 431 F. Supp. 2d

1069, 1075 (E.D. Cal. 2006) (citing Fujisawa Pharm. Co., Ltd. v. Kapoor, 814 F. Supp. 720, 726

(N.D. Ill. 1993) and United States ex rel. Semtner v. Med. Consultants, Inc., 170 F.R.D. 490, 497

(W.D. Okla. 1997)).

"The elements of fraud, which gives rise to the tort action for deceit, are (a)

misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity

(or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)

resulting damage."   Small v. Fritz Companies, Inc., 30 Cal.4th 167, 173 (2003); Lazar v.

Superior Court, 12 Cal.4th 631, 638 (1996); Anderson v. Deloitte & Touche, LLP, 56

Cal.App.4th 1468, 1474 (1997).   An intentional misrepresentation is "[t]he suggestion, as a fact,

of that which is not true, by one who does not believe it to be true."   Masters v. San Bernardino

County Employees Ret. Assn., 32 Cal.App.4th 30, 41-42 (1995).   Negligent misrepresentation

requires a plaintiff to prove "misrepresentation of a past or existing material fact, without

reasonable ground for believing it to be true, and with intent to induce another's reliance on the

fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by

the party to whom it was directed; and resulting damage."   Home Budget Loans, Inc. v. Jacoby &

Meyers Law Offices, 207 Cal.App.3d 1277, 1285 (1989).   The tort of negligent

misrepresentation does not require scienter or intent to defraud.   Small, 30 Cal. 4th at 173; Gagne

v. Bertran, 43 Cal.2d 481, 174 (1954).   Negligent misrepresentation  encompasses "[t]he

assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing

it to be true," see Cal. Civ. Code § 1710(2), and "[t]he positive assertion, in a manner not

warranted by the information of the person making it, of that which is not true, though he

believes it to be true," see Civ.Code, § 1572(2).   Small, 30 Cal.4th at 187; Fox v. Pollack, 181

Cal.App.3d 954, 962 (1986).

The complaint alleges that in 2001, prior to the date of surgery, CDC Defendants

misrepresented the material fact that the surgery could result in the removal of Plaintiff's ovaries.
Defendant Reeves also assured Plaintiff she would still be able to have children after the
cystectomy, and that a hysterectomy would only be considered if the cancer was widespread.
The complaint alleges that CDC Defendants never informed Plaintiff of potential complications
regarding surgical removal of cysts or discussed alternative treatments.   The complaint alleges
that following the April 5, 2001 surgery, CDC Defendants continued to misrepresent to Plaintiff
that her ovaries appeared normal within her body, when in material fact the surgery had resulted
in the removal of both ovaries.   After the surgery Defendant Reeves repeatedly assured Plaintiff
that she still had her ovaries.   In 2004, Defendant Kruse told Plaintiff her right ovary was
normal.    The complaint further alleges:

> Defendants made pre-surgery misrepresentations with knowledge of falsity,
> intending for [Plaintiff] to rely on these misstatements and agree to the improper
> treatment.   Defendants made post-surgery misrepresentations with knowledge of
> falsity, intending for Thomas to believe that her ovaries had not been removed.

Complaint ¶ 118.

Plaintiff's misrepresentation claim against Defendant Reeves for his actions before the
surgery is based on Defendant Reeves' failure to tell Plaintiff the surgery for the cysts could
result in the removal of Plaintiff's ovaries and Defendant Reeves' assertion Plaintiff would be
able to have children.[2]   Paragraph 18 of the complaint alleges the pre-surgery statements were
made with knowledge of falsity.    These allegations fail to state a claim for fraud or negligent
misrepresentation under Rule 9.   The complaint fails to allege an approximate time during
which Defendant Reeves made these statement.    The complaint fails to allege that Defendant
Reeves knew or should have known prior to surgery that the surgery would result in the removal
of Plaintiffs' ovaries and Plaintiff's inability to have children.   The complaint's allegations do
not allege implied knowledge because there are no allegations in the complaint that Defendant

---

[2]  The complaint does not allege any specific misrepresentation by another CDC
Defendants prior to surgery.   Absent specific misrepresentations, the complaint fails to allege
misrepresentation.

1   Reeves knew or should have known what surgery was actually going to be performed on Plaintiff

2   ahead of time.   Thus, Plaintiff's fraud claim based on misrepresentations by Defendant Reeves

3   prior to surgery fails to state a claim.

4       Plaintiffs' misrepresentation claim is also based on CDC Defendants' conduct after

5   surgery.  The complaint alleges Defendant Reeves, Defendant Kruse, Defendant Goodwin, and

6   Defendant Suryadvara  never told Plaintiff her ovaries had been removed, downgraded Plaintiff's

7   symptoms, did not tell Plaintiff she was experiencing menopause, and only later informed

8   Plaintiff one ovary had been removed, but continued to insist Plaintiff could still have children.[3]

9   While the complaint generally alleges Defendants made misrepresentations "with knowledge of

10  falsity," the court finds the complaint fails to meet Rule 9's standards because Plaintiff has failed

11  to allege which specific statements these Defendant knew or should have known were wrong

12  when they were made.   The complaint does not allege Plaintiff's medical records accurately

13  reflected what surgery was performed and these Defendants were aware of the medical records.

14  The complaint does not allege that their statements were based on their own knowledge of

15  Plaintiff's condition after observing tests or if they were simply relaying to Plaintiff what other

16  documents stated.   In addition, the complaint provides little details on when the false statements

17  were made.   While Plaintiff may not know the exact time and place, and this information might

18  be ascertained from Plaintiff's medical records, Plaintiff must make some attempt to narrow the

19  time frame during which the false statements were made to something other than the time after

20  surgery.   Thus, Plaintiff misrepresentation causes of action based on statements made after

21  surgery fail to state a claim because Plaintiff has failed to allege the required state of mind.

22      As previously mentioned, the state law claims must be dismissed as to the CDC

23  Defendants for failure to comply with the CTCA.   Leave to amend should be granted when

24  dismissing a cause of action unless the district court determines that the pleading could not

25

26      [3] The complaint does not allege any other specific misrepresentation by another CDC

27  Defendants after surgery.

28                                              38

1  possibly be cured by the allegation of other facts. Bly-Magee, 236 F.3d at 1019;  Chang, 80 F.3d

2  at 1296.   Because Plaintiff may be able to allege the required state of mind for fraud and/or

3  negligent misrepresentation, Plaintiff will be permitted to file an amended complaint.   To

4  comply with Rule 9, in filing any amended complaint, Plaintiff must allege the content of the

5  misrepresentation and the reason why Defendants knew or should have known the statements

6  were false.   In addition, Plaintiff should allege, to the extent she can, the time and place of the

7  fraudulent statements.  In filing any amended complaint, Plaintiff is advised to list as a defendant

8  in these causes of action only Defendants whom Plaintiff has a well-founded belief that a

9  cognizable or arguable legal theory exists that would support a cause of action against the named

10  Defendants.  See Fed. R. Civ. P. 11 (allowing sanctions to be awarded when litigant asserts

11  frivolous legal theory); Les Shockley Racing Inc. v. National Hot Rod Ass'n, 884 F. 2d 504, 510

12  (9th Cir. 1989).

13

14         **II.   DEFENDANT UGWU-OJU'S MOTION**

15  **A.  First Cause of Action – Eight Amendment**

16         Defendant Ugwu-Oju contends that the constitutional claims against him should be

17  dismissed because Plaintiff only alleges claims for negligence and malpractice.     Plaintiff

18  alleges that the allegations go beyond mere negligence.

19         As discussed in Section I.B. above, a prisoner's claim of inadequate medical care

20  constitutes cruel and unusual punishment in violation of the United States Constitution only if

21  the mistreatment rises to the level of "deliberate indifference to serious medical needs."  Estelle,

22  429 U.S. at 106.   A prison official does not act in a deliberately indifferent manner unless the

23  official "knows of and disregards an excessive risk to inmate health or safety."  Farmer, 511 U.S.

24  at 834; Toguchi, 391 F.3d at 1057.   The "deliberate indifference" standard involves an objective

25  and a subjective prong.  First,  alleged deprivation must be, in objective terms, "sufficiently

26  serious."  Farmer, 511 U.S. at 834.  Second, the prison official must act with a "sufficiently

27

28                                           39

culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. <u>Farmer</u>, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." <u>Id</u>.

"Deliberate indifference is a high legal standard." <u>Toguchi</u>, 391 F.3d at 1060. "A difference of opinion between a prisoner-patient and prison medical authorities regarding treatment does not give rise to a s 1983 claim." <u>Franklin</u>, 662 F.2d at 1344. To prevail, a plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the circumstances . . . and . . . that they chose this course in conscious disregard of an excessive risk to plaintiff's health." <u>Jackson</u>, 90 F.3d at 332. Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights. <u>Toguchi</u>, 391 F.3d at 1057.

The complaint alleges that Defendant Ugwu-Oju told Plaintiff that the surgery would not affect her ability to reproduce. The complaint alleges that:

> Upon commencing the surgery, Defendant Ugwu-Oju and/or other attending medical staff acting under Defendant Ugwu-Oju's supervision, clamped Thomas's infundibulopelvic ligaments, an action which cut off blood flow to the ovaries and in essence "killed" them. In so acting, Defendant Ugwu-Oju made no attempt during the surgery to remove the cysts without harming Thomas's ovaries or without sterilizing her.

(Complaint ¶ 30). The complaint alleges that Defendant Ugwu-Oju did not tell Plaintiff her ovaries had been removed after surgery. The complaint further alleges:

> Defendant Ugwu-Oju violated Thomas's right to be free from cruel and unusual punishment, as guaranteed to Thomas by the Eighth Amendment of the United States Constitution, by his actions in removing Thomas's ovaries when doing so was neither necessary nor proper, by failing to inform Thomas that the surgical procedure could involve removing her ovaries, by failing to inform Thomas that removing her ovaries would result in her permanent inability to procreate, by causing her to suffer hormonal disruption, depression, weight loss, anxiety, humiliation and physical pain, and by failing to explain to Thomas or pursue nonsurgical alternative courses of treatment.

(Complaint ¶ 48)

1 As discussed above, to violate the Eighth Amendment, Defendant Ugwu-Oju must have

2 acted or failed to act knowing that it would result in a substantial risk to serious harm to Plaintiff.

3 While the complaint alleges Defendant Ugwu-Oju unnecessarily removed Plaintiff's ovaries, the

4 complaint fails to allege Defendant Ugwu-Oju's state of mind.   Specifically, the complaint fails

5 to allege that Defendant Ugwu-Oju removed Plaintiff's ovaries knowing that they did not need to

6 be removed.   The complaints allegations are consistent with the position that Defendant Ugwu-

7 Oju simply removed Plaintiff's ovaries by mistake.   In addition, the complaint fails to allege

8 that when Defendant Ugwu-Oju told Plaintiff before and after surgery the surgery would not and

9 had not affected her ability to procreate, Defendant Ugwu-Oju was purposefully lying.   There is

10 nothing in the complaint alleging that at the time Defendant Ugwu-Oju made these statements to

11 Plaintiff, and other statements that serve as the basis for Plaintiff's Eighth Amendment claim,

12 Defendant Ugwu-Oju knew these statements were false.   Thus, based on the allegations in the

13 complaint, Plaintiff has failed to allege deliberate indifference, and the first cause of action

14 against Defendant Ugwu-Oju is subject to dismissal.

15  Absent unusual circumstances, dismissal without leave to amend is improper unless it is

16 clear that the complaint could not be saved by amendment.   Chang, 80 F.3d at 1296.  Here, it

17 appears additional allegations regarding Defendant Ugwu-Oju's state of mind would save this

18 cause of action from dismissal.   As such, dismissal with leave to amend is granted.

19 **B.  Second Cause of Action – Due Process**

20 Defendant Ugwu-Oju also moves for dismissal of Plaintiff's Fourteenth Amendment

21 cause of action.   As did CDC Defendants, when discussing this cause of action, Defendant

22 Ugwu-Oju limits his discussion to Eighth Amendment standards.   As discussed above in

23 Section I.C., the substantive due process clause of the Fourteenth Amendment recognizes the

24 right to be free from unwarranted governmental intrusion into the decision to bear a child.

25 Casey, 505 U.S. at 851; Eisenstadt, 405 U.S. 453 (1972).

26 The complaint alleges that Plaintiff's right to due process was violated by Defendants

27

28       41

1   permanently depriving Plaintiff of her right to procreate   It is the burden of the party bringing a

2   motion to dismiss for failure to state a claim to demonstrate that the requirements of Rule 8(a)(2)

3   have not been met.   See Kehr, 926 F.2d at 1409.   Here, Defendant Ugwu- Oju has not briefed

4   whether Plaintiff has stated a claim for a substantive due process violation based on her loss of

5   the ability to procreate.   Because no Defendant has briefed this issue, any motion to dismiss

6   Plaintiff's second cause of action for a violation of substantive due process must be denied at this

7   time.   However, in any amended complaint Plaintiff may wish to make the basis of this cause of

8   action clear and allege facts supporting such a cause of action against each named Defendant.

9   **C.  All State Law Causes of Action – Supplemental Jurisdiction**

10          As did CDC Defendants, Defendant Ugwu-Oju requests that the court decline to exercise

11   supplemental jurisdiction over the state law claims.   The court may decline to exercise

12   supplemental jurisdiction over state claims when the federal claims are dismissed before trial.

13   See 28 U.S.C. § 1367(c)(3); Gibbs, 383 U.S. at 726.   Because one federal cause of action

14   remains and it is possible at this stage that Plaintiff could state a claim for an Eighth Amendment

15   cause of action, the court will continue to exercise supplemental jurisdiction at this time.

16   **D.  Third and Fourth Causes of Action – California Constitution Causes**

17          The third and fourth causes of action allege all Defendants violated Plaintiff's rights

18   under the California Constitution.   All parties presume that the standards for a violation of the

19   California Constitution are identical to standards for a violation of the United States Constitution.

20          The complaint alleges Defendant Ugwu-Oju violated Plaintiff's right to be free from

21   cruel and unusual punishment by unnecessarily removing Plaintiff's ovaries and failing to inform

22   Plaintiff.  The complaint alleges Defendant Ugwu-Oju violated Plaintiff's right of substantive

23   due process by permanently depriving Plaintiff of her right to procreate and be free from bodily

24   injury.  As discussed above in Section I.E., the court's resolution of Plaintiff's federal

25   constitutional causes of action resolve the state constitutional causes of action.   See, e.g.,  Los

26   Angeles County Bar Assoc. v. Eu, 979 F.2d 697, 705 (9th Cir. 1992) (equal protection and due

27

28                                                     42

1  process); In re Alva, 33 Cal.4th 254, 291 (2004) (Eighth Amendment); Payne v. Superior Court,

2  132 Cal.Rptr. 405, 410 n. 3 (1976) (due process).    Defendant Ugwu-Oju's motion to dismiss the

3  third cause of action is granted and his motion to dismiss the fourth cause of action, alleging a

4  violation of Plaintiff's substantive due process rights is denied, for the reasons discussed in

5  Section II.A. and Section II.B.

6  **E. Sixth Cause of Action – Failure to Obtain Informed Consent**

7       Defendant Ugwu-Oju contends that Plaintiff's sixth cause of action for the failure to

8  obtain informed consent is subject to dismissal because Plaintiff failed to plead the requisite

9  elements.  Plaintiff contends that all elements can be inferred from the complaint.

10      A surgeon must obtain informed consent from a patient prior to preforming a procedure.

11 In Cobbs v. Grant 8 Cal.3d 229 (1972), the California Supreme Court held that a physician has a

12 duty to disclose to a patient "the available choices with respect to proposed therapy and . . . the

13 dangers inherently and potentially involved in each." Id. at 243.   The scope of a physician's duty

14 to disclose is measured by the amount of knowledge a patient needs in order to make an informed

15 choice.  Id. at 245.  Material information is information which the "physician knows or should

16 know would be regarded as significant by a reasonable person in the patient's position when

17 deciding to accept or reject a recommended medical procedure" Arato v. Avedon, 5 Cal.4th

18 1172, 1186 (1993)    The physician must also reveal to the patient such additional information

19 as a skilled practitioner of good standing would provide under similar circumstances.  Arato, 5

20 Cal.4th at 1190; Cobbs, 8 Cal.3d at 244-45.   Finally, "[i]f the physician knows or should know

21 of a patient's unique concern or lack of familiarity with medical procedures, this may expand the

22 scope of required disclosure." Truman v. Thomas., 27 Cal.3d 285, 291 (1980) (citations

23 omitted).

24      There is no general duty to disclose other procedures that are not recommended.  Vandi

25 v. Permanente Medical Group, Inc., 7 Cal.App.4th 1064, 1071 (1992).   Instead, the failure to

26 recommend a procedure is addressed under ordinary medical negligence standards; A physician

27

28                                                43

1   must disclose alternative treatments only to the extent it is required for competent practice within

2   the medical community.   Schiff v. Prados, 92 Cal.App.4th 692, 694-65 (2001).

3        The Judicial Council Of California Civil Jury Instructions define the essential elements

4   for the tort of failure to obtain informed consent as: (1) The defendant performed a medical

5   procedure on the plaintiff;  (2) The plaintiff did not give her informed consent for the procedure;

6   (3) A reasonable person in the plaintiff's position would not have agreed to the procedure if she

7   had been fully informed of the results and risks of the procedure; and (4) The plaintiff was

8   harmed by a result or risk that defendant should have explained before the procedure was

9   performed.  CACI 533 (2006).

10        Defendant Ugwu-Oju contends that the complaint fails to allege that had Plaintiff been

11   informed of the risks and alternatives to the surgery she would not have consented to the surgery.

12   While Cobbs does find a duty to disclose, it makes clear that "[t]here must be a causal

13   relationship between the physician's failure to inform and the injury to the plaintiff ... [which]

14   arises only if it is established that had the revelation been made consent to treatment would not

15   have been given." Id. at 245.   The complaint alleges that Defendants failed to adequately inform

16   Plaintiff of the scope of the surgery to be performed and the material risks inherent in surgery, as

17   well as non-surgical alternatives available to Plaintiff.   The complaint alleges Plaintiff was not

18   advised that the surgery could result in the removal of her ovaries and not advised the surgery

19   could result in her no longer being able to have children.   However, the complaint fails to allege

20   that had these revelations been made to Plaintiff prior to surgery, consent to the surgery would

21   not have been given.

22        In her opposition, Plaintiff contends that her lack of consent is obvious because no

23   reasonable person would have allowed the "killing" of her ovaries.   However, the Federal Rules

24   of Civil Procedure's liberal pleading requirements may not supply essential elements of the claim

25   that were not initially pled.  Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir.

26   1997); Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).  Given the symptoms Plaintiff

27

28                                           44

was experiencing, the court cannot infer that under the circumstances no reasonable person

would have consented.   Thus, this cause of action is subject to dismissal for Plaintiff's failure to

pled that neither she nor a reasonable person would have consented had they been informed that

the ovaries were going to be removed and Plaintiff would never be able to have children.

       As discussed above, when dismissing a complaint "leave to amend should be granted

unless the district court determines that the pleading could not possibly be cured by the allegation

of other facts." Bly-Magee, 236 F.3d at 1019;  Chang, 80 F.3d at 1296.   Because Plaintiff could

cure this defect, Plaintiff's failure to obtain consent claim against Dr. Ugwu-Oju will be

dismissed with leave to amend.

**F. Seventh Cause of Action – Battery**

       Defendant Ugwu-Oju contends that the complaint fails to state a claim of battery beyond

Plaintiff's claim of negligence against Defendant Ugwu-Oju.    Plaintiff contends that she has

properly alleged a battery because Defendant Ugwu-Oju subjected her to harmful and offensive

contact by removing both of her ovaries and part of her fallopian tubes without her consent.

       The elements of a civil battery are: (1) The defendant intentionally did an act which

resulted in a harmful or offensive contact with the plaintiff's person; (2) The plaintiff did not

consent to the contact; and (3) The harmful or offensive contact caused injury, damage, loss or

harm to the plaintiff.   Piedra v. Dugan, 123 Cal.App.4th 1483, 1495 (2004); Fluharty v. Fluharty,

59 Cal.App.4th 484, 497 (1997).   Where a doctor obtains consent of the patient to perform one

type of treatment and subsequently performs a substantially different treatment for which consent

was not obtained, there is a clear case of battery.   Cobbs, 8 Cal.3d at 239.   The battery theory is

reserved for those circumstances when a doctor performs an operation to which the patient has

not consented.   Moran v. Selig, 447 F.3d 748, 758 (2006).

> When the patient gives permission to perform one type of treatment and the doctor
> performs another, the requisite element of deliberate intent to deviate from the
> consent given is present. However, when the patient consents to certain treatment
> and the doctor performs that treatment but an undisclosed inherent complication
> with a low probability occurs, no intentional deviation from the consent given
> appears; rather, the doctor in obtaining consent may have failed to meet his due

1   care duty to disclose pertinent information. In that situation the action should be
2   pleaded in negligence.

3   Moran, 447 F.3d at 758;   Cobbs, 8 Cal.3d at 240-241; Piedra, 123 Cal.App.4th at 1495.

4       The complaint alleges that Plaintiff was subjected to surgical treatment without her

5   consent, and/or Defendant Ugwu-Oju performed a substantially different surgery on her than for

6   which she consented.   Defendant Ugwu-Oju argues that this allegations does not provide

7   sufficient information to sustain a claim for battery.  Defendant Ugwu-Oju's motion to dismiss

8   for failure to state a claim tests Plaintiff's compliance with the liberal requirements of Rule

9   8(a)(2) of the Federal Rules of Civil Procedure.  See 5A Charles Alan Wright & Arthur R.

10  Miller, Federal Practice and Procedure § 1356, at 294-96.  The burden imposed by Rule 8(a)(2) is

11  a minimal one.   Rule 8(a)(2) requires parties seeking relief in federal court by way of complaint

12  to include "a short and plain statement of the claim showing that the pleader is entitled to relief."

13  Rule 8(a)(2). When evaluating a complaint for failure to state a claim, the question is not whether

14  the facts stated in the complaint, if proven, would entitle the plaintiff to any relief.   Instead, the

15  question is whether there is any set of "facts that could be proved consistent with the allegations

16  of the complaint" that would entitle plaintiff to some relief.  Swierkiewicz v. Sorema N.A., 534

17  U.S. 506, 514 (2002);  Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); Diaz v. Gates, 380

18  F.3d 480, 482 (9th Cir. 2004).

19      While extraordinarily brief, Plaintiff alleges sufficient facts that, if proved, would be

20  consistent with a cause of action for battery.   The complaint alleges that the removal of

21  Plaintiff's ovaries was not discussed with Plaintiff prior to surgery.   Plaintiff contends that the

22  surgery Defendant Ugwu-Oju preformed was substantially different than the one for which she

23  consented.   Defendant  Ugwu-Oju's position may ultimately be determined to be correct

24  because the evidence will establish that the procedure Plaintiff consented to and the procedure

25  performed were substantially similar.   However, in this motion to dismiss, the court must accept

26  the complaint's allegations as true.   Hospital Bldg. Co., 425 U.S. at 740.   Under this standard,

27

28                                          46

1  the complaint states a claim for battery against Defendant Ugwu-Oju.   Thus, Defendant Ugwu-

2  Oju's motion to dismiss the sixth cause of action must be denied.

3  **G.   Eight Cause of Action – Gross Negligence**

4       Defendant contends that no claim for gross negligence is available above and beyond

5  Plaintiff's claim for professional negligence, which is pleaded the fifth cause of action.[4]

6  Plaintiff has not filed on opposition to dismissal of this claim.

7       Except for claims based upon statutes using the term "gross negligence," California courts

8  have recognized that there is no separate cause of action for gross negligence. Continental Ins.

9  Co. v. American Protection Industries 197 Cal.App.3d 322, 330 (1987); see also Saenz v.

10  Whitewater Voyages, Inc., 226 Cal.App.3d 758, 766 n. 9  (1990).   Based on the availability of a

11  cause of action for professional negligence, Plaintiff's eighth cause of action for gross negligence

12  is dismissed without leave to amend.

13  **H.   Ninth Cause of Action – Intentional Infliction of Emotional Distress**

14       Defendant Ugwu-Oju contends that Plaintiff's intentional infliction of emotional distress

15  claim is subject to dismissal because the complaint does not allege extreme and outrageous

16  conduct by Defendant Ugwu-Oju.    Plaintiff alleges that she has alleged extreme and outrageous

17  conduct because she alleges Defendant Ugwu-Oju unnecessarily removed her ovaries without her

18  consent and failed to inform Plaintiff after surgery what he had done.

19       As discussed in Section I.K., the elements of a claim of intentional infliction of

20  emotional distress are (1) extreme and outrageous conduct by the defendant, (2) intention to

21  cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional

22  suffering and (4) actual and proximate causation of the emotional distress.   King, 65 F.3d at 769;

23  Christensen, 54 Cal.3d at 903-04.   The plaintiff must allege how the emotional; distress she had

24  was "of such substantial quantity or enduring quality that no reasonable [person] in a civilized

25

26

27       [4]  Defendant Ugwu-Oju does not seek dismissal of the fifth cause of action for
   professional negligence.

1    society should be expected to endure it." <u>Fletcher</u>, 10 Cal.App.3d at 397.

2         Defendant Ugwu-Oju's contention is that the complaint does not allege extreme and

3    outrageous conduct.[5]   Here, the complaint alleges that Defendant Ugwu-Oju unnecessarily and

4    without Plaintiff's consent removed Plaintiff's ovaries.    The complaint alleges  Defendant

5    Ugwu-Oju knew Plaintiff wished to have more children.    The complaint alleges that  Defendant

6    Ugwu-Oju  failed to inform Plaintiff after the surgery that the ovaries had been removed and she

7    would not have children.  In fact, the complaint alleges that Defendant Ugwu-Oju told Plaintiff

8    she would have children.     The court must agree with Plaintiff that if Defendant Ugwu-Oju

9    performed the unnecessary surgery knowing it was unnecessary and lied to Plaintiff after the

10   surgery, Plaintiff has alleged extreme and outrageous conduct.   However, the complaint only

11   alleges that Defendant Ugwu-Oju did an unnecessary surgery on Plaintiff, informed Plaintiff he

12   had not removed both ovaries, caused Plaintiff to be unable to have more children, and told

13   Plaintiff she could have more children.   If proven, such conduct alone appears to be negligence.

14   Only when allegations that Defendant Ugwu-Oju's conduct was intentional do his actions rise to

15   a level that cannot be tolerated in a civilized society.   Thus,  Defendant Ugwu-Oju's motion to

16   dismiss the ninth cause of action is granted.    The court will grant Plaintiff leave to amend the

17   intentional infliction of emotional distress claim against Defendant Ugwu-Oju because additional

18   allegations consistent with the complaint might cure the deficiency.

19   **I.  Tenth Cause of Action – Negligent Infliction of Emotional Distress**

20        Defendant Ugwu-Oju contends that Plaintiff's cause of action for negligent infliction of

21   emotional distress is not cognizable as a separate tort under California law.  In her opposition,

22   Plaintiff concedes that the damages for negligent infliction of emotional distress would be

23   pleaded under her negligence claim.   As discussed in Section I.L., the court will dismiss

24   Plaintiff's tenth cause of action for negligent infliction of emotion distress with prejudice.

25

26        [5]  In this motion, Defendant does not contend the complaint fails to allege Defendant did
     not intent to cause the conduct or it was done in reckless disregard of the probability of causing
27   emotional distress.

28                                                48

1   Plaintiff, however, is granted leave to include allegations concerning emotional distress under the

2   negligence claim found in the fifth cause of action.

3   **I.   Eleventh and Twelfth Causes of Action – Fraud and Negligent Misrepresentation**

4           Defendant Ugwu-Oju contends that Plaintiff has failed to allege her claims for fraud and

5   negligent misrepresentation with the particularity required by Rule 9 of the Federal Rules of Civil

6   Procedure.

7           As discussed above in Section I.L., a complaint alleging fraud meets Rule 9's standards if

8   it alleges the time, place, and content of the fraudulent statements, including reasons why the

9   statements are false. <u>Decker</u>, 42 F.3d at 1547-48.   The elements of fraud "are (a)

10  misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity

11  (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e)

12  resulting damage."   <u>Small</u>, 30 Cal.4th at 173.   Negligent misrepresentation requires a plaintiff to

13  prove "misrepresentation of a past or existing material fact, without reasonable ground for

14  believing it to be true, and with intent to induce another's reliance on the fact misrepresented;

15  ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it

16  was directed; and resulting damage." <u>Home Budget Loans, Inc.</u>, 207 Cal.App.3d at 1285.   Both

17  causes of action require either knowledge of the falsity or no reasonable ground for believing it to

18  be true.

19          The complaint alleges Defendant Ugwu-Oju misrepresented to Plaintiff that the surgery

20  could result in the removal of Plaintiff's ovaries.   The complaint alleges that following the April

21  5, 2001 surgery, Defendant Ugwu-Oju informed Plaintiff that she would still be able to have

22  children.   The complaint alleges Defendant Ugwu-Oju, along with the other Defendants,

23  continues to insist that Plaintiff still has her ovaries and her physical symptoms are unrelated to

24  the surgery.   The complaint further alleges:

25          Defendants made pre-surgery misrepresentations with knowledge of falsity,
            intending for [Plaintiff] to rely on these misstatements and agree to the improper
26          treatment.   Defendants made post-surgery misrepresentations with knowledge of
            falsity, intending for Thomas to believe that her ovaries had not been removed.

27

28                                                      49

1   Complaint ¶ 118.

2        The complaint generally alleges Defendant Ugwu-Oju made misrepresentations "with

3   knowledge of falsity."   The complaint provides little details on when the false statements were

4   made.   While Plaintiff may not know the exact time and place of Defendant Ugwu-Oju's

5   statements and this information might be ascertained from Plaintiff's medical records, Plaintiff

6   must make some attempt to narrow the time during which the false statements were made to

7   something other than "before" and "after surgery."   The complaint also does not specifically

8   allege the content of each of Defendant Ugwu-Oju's misrepresentations and the reason why

9   Defendant Ugwu-Oju knew or should have known the statement was false. These allegations fail

10  to state a claim for fraud or negligent misrepresentation under Rule 9.

11       As previously mentioned, leave to amend should be granted when dismissing a cause of

12  action unless the district court determines that the pleading could not possibly be cured by the

13  allegation of other facts. Bly-Magee, 236 F.3d at 1019;  Chang, 80 F.3d at 1296.   Because

14  Plaintiff may be able to allege the required state of mind for fraud and/or negligent

15  misrepresentation, Plaintiff will be permitted to file an amended complaint.   To comply with

16  Rule 9, in filing any amended complaint, Plaintiff must allege and content of the

17  misrepresentation and the reason why Defendants knew or should have known the statements

18  were false.    In addition, Plaintiff should allege, to the extent she can, the time and place of the

19  fraudulent statements.

20

21       **III.   DEFENDANT MADERA COMMUNITY HOSPITAL'S MOTION**

22  **A  Civil Rights Causes of Action - Color of State Law**

23       Defendant Madera contends that the constitutional claims cannot proceed against

24  Defendant Madera because Defendant Madera did not act under color of state law.   Plaintiff

25  contends the complaint's allegations that she was sent by CDC Defendants to Defendant Madera

26  is sufficient to state that Defendant Madera acted under color of state law.

27

28                                          50

1    The remedy for alleged violations of the Constitution is generally 42 U.S.C. § 1983,

2  which provides a cause of action against any person who, under color of state law, subjects a

3  citizen of the United States to the deprivation of any rights, privileges, or immunities secured by

4  the Constitution.  See  42 U.S.C. § 1983.  Normally, private parties, including corporations, are

5  not acting under color of state law, and as such, no cause of action under Section 1983 is

6  available.  See Price v. Hawaii, 939 F.2d 702, 707-08 (9th Cir. 1991).  Corporations are generally

7  not acting under color of state law and alleged violations of the Constitution by a corporation

8  does not provide a plaintiff with a private cause of action against the corporation.   See Lugar v.

9  Edmondson Oil Co., Inc., 457 U.S. 922, 924 (1982).   The only way to proceed with an action

10  against a corporation for violations of the Constitution is to show that the corporation's action

11  were fairly attributable to the federal or state government. See Lugar, 457 U.S. at 936;  Mathis v.

12  Pacific Gas and Elec. Co., 75 F.3d 498, 502 (9th Cir. 1996).    An action by a private corporation

13  is only attributable to the federal or state government if: (1) there is a sufficiently close nexus

14  between the state and the challenged action of the entity so that the action of the latter may fairly

15  be treated as that of the state itself; (2) the state has exercised coercive power or has provided

16  such significant encouragement, either overt or covert, that the choice must in law be deemed to

17  be that of the state; and (3) the entity exercised powers that are traditionally those of state.  Blum

18  v. Yaretsky, 457 U.S. 991, 1004- 12 (1982).        In Lopez v. Dept. of Health Services, 939

19  F.2d 881 (9th Cir.1991), the Ninth Circuit found that state action was sufficiently alleged by a

20  complaint stating that the defendant hospital was under contract with the State of Arizona to

21  provide medical services to indigents.  Id. at 883.   In West v. Atkins, 487 U.S. 42 (1988), the

22  Supreme Court held that "a private physician under contract with a state to provide medical

23  services to inmates [is] a state actor for purposes of section 1983."  Id. at 54.

24    The complaint alleges that Defendant Madera is a not-for-profit institution providing

25  medical care in the County of Madera, California.   The complaint alleges that Plaintiff is

26  informed and believes that the medical treatment at issue in this action took place at Defendant

27

28                                              51

1  Madera.   The complaint alleges that Defendant Madera violated Plaintiff's constitutional rights

2  by failing to adequately train and supervise Defendant Ugwu-Oju.

3        There are no allegations that Defendant Madera contracted with the State of California to

4  provide medical care to prison inmates or to Plaintiff.   There are no other allegations indicating

5  how Defendant Madera was a state actor.   Thus, the allegations against Defendant Madera are

6  insufficient to find that it was a state actor for the purposes of committing a constitutional

7  violation.

8        The court will dismiss the causes of action alleging violations of the United States and

9  California Constitutions against Defendant Madera because the complaint contains insufficient

10  allegations to find that Defendant Madera was a state actor.   Because it is not clear that these

11  causes of action could not be saved by amendment, dismissal is with leave to amend.   Chang, 80

12  F.3d at 1296.

13  **B.  Sixth Cause of Action – Failure to Obtain Consent**

14        Defendant Madera contends that the Sixth Cause of Action for failure to obtain consent is

15  duplicative of Plaintiff's fifth cause of action for professional negligence.

16        A physician has a duty to disclose to a patient "the available choices with respect to

17  proposed therapy and . . . the dangers inherently and potentially involved in each." Cobbs, 8

18  Cal.3d at 243.  A physician's duty of disclosure rests on the assumption that patients are generally

19  persons unlearned in the medical sciences and thus they rely on medical information obtained

20  from a physician when deciding to consent to a particular medical treatment.   Arato v. Avedon, 5

21  Cal.4th 1172, 1183 (1993).   While a hospital may have a general duty to ensure that a patient has

22  signed a written consent form before any surgery is performed, no party has cited to this court

23  authority for the proposition that there is a standard of care requiring a hospital to obtain

24  informed consent from a patient.   No party has cited authority for the proposition that a

25  hospital's failure to obtain informed consent is a separate cause of action that is available against

26  a hospital beyond negligence.

27

28                                          52

1    The elements of a cause of action for failure to obtain informed consent have as an

2    element that the defendant perform a medical procedure on the plaintiff.  CACI 533 (2006).

3    There is no briefing on whether it is possible to allege a hospital, in addition to a doctor,

4    performed a medical procedure on a Plaintiff.   As such, it appears Defendant Madera is correct

5    that this claim is subsumed in the negligence claim against Defendant Madera, and there is no

6    authority for a separate cause of action for failure to obtain informed consent against Defendant

7    Madera.

8    Because it is not this court's burden to conduct extensive research on California law to

9    determine if failure to obtain consent is a cause of action available against a hospital, this court

10   dismisses this cause of action based on Plaintiff's failure to show such a cause of action exists.

11   Because Plaintiff could cure the defects on this cause of action, leave to amend will be granted.

12   Plaintiff is advised that any amended complaint that includes such a cause of action against

13   Defendant Madera must be based upon a well-founded belief that a cognizable or arguable legal

14   theory exists that would support such a theory.

15   **C.  Seventh Cause of Action – Civil Battery**

16   Defendant Madera contends that the complaint fails to state a cause of action for battery

17   against Defendant Madera.    Plaintiff contends that she has properly alleged a battery against

18   Madera because the complaint alleges the surgery was performed at Defendant Madera and

19   Defendant Madera's staff participated in the surgery.

20   The discussed above in Section II.F., the elements of a civil battery are: (1) intentional

21   harmful or offensive contact; (2) lack of consent; and (3) damages.   <u>Fluharty</u>, 59 Cal.App.4th at

22   497.   In the medical context, a battery is only done when a doctor performs a treatment

23   substantially different than the one for which consent was given.

24   As to Defendant Madera, the complaint alleges that by aiding, abetting, counseling, and

25   encouraging Defendant Ugwu-Oju to perform the surgical treatment without Plaintiff's consent,

26   Defendant Madera conspired to commit a civil batter.    These allegations do not provide

27

28                                          53

sufficient information to sustain a cause of action for battery against Defendant Madera.   The cause of action alleged in the complaint and briefed by Plaintiff is one for battery, not conspiracy to commit battery.   While alleged in the opposition, the complaint fails to allege that either Defendant Madera or its employees participated in the removal of Plaintiffs' ovaries.   There are no allegations that anyone working for Defendant Madera recommended the course of treatment or committed any type of harmful touching.   Thus, the complaint fails to state a claim for battery against Madera.

As previously mentioned, leave to amend should be granted when dismissing a cause of action unless the district court determines that the pleading could not possibly be cured by the allegation of other facts. Bly-Magee, 236 F.3d at 1019;  Chang, 80 F.3d at 1296.   Because it is possible Plaintiff can allege facts showing that Madera and/or its employees participated in the battery, leave to amend will be granted.

**D.  Eight Cause of Action – Gross Negligence**

Defendant contends that no claim for gross negligence is available above and beyond Plaintiff's claim for professional negligence, which is pleaded the fifth cause of action.[6] Plaintiff does not oppose dismissal of this claim.

As discussed above, California courts have recognized that there is no separate cause of action for gross negligence.  Continental Ins. Co., 197 Cal.App.3d 322, 330 (1987).   Based on the availability of a cause of action for professional negligence, Plaintiff's eighth cause of action for gross negligence is dismissed without leave to amend.

**E.  Intentional Infliction of Emotional Distress**

Defendant Madera contends that Plaintiff's intentional infliction of emotional distress cause of action is subject to dismissal because the complaint's allegations against Madera are vague.   Plaintiff alleges that she has alleged extreme and outrageous conduct because she

---

[6] Defendant Ugwu-Oju does not seek dismissal of the fifth cause of action for professional negligence.

1   alleges Defendant Madera covered up what Defendant Ugwu-Oju had done.

2          As discussed above in Section I.K., the elements of a claim of intentional infliction of

3   emotional distress are (1) extreme and outrageous conduct by the defendant, (2) intention to

4   cause or reckless disregard of the probability of causing emotional distress, (3) severe emotional

5   suffering and (4) actual and proximate causation of the emotional distress.   King, 65 F.3d at 769.

6   Plaintiff's theory against Defendant Madera is that instead of telling Plaintiff what really

7   happened during the surgery, Defendant Madera, along with CDC Defendants, covered up what

8   Defendant Ugwu-Oju had done and refused to take Plaintiff's post-surgical symptoms seriously.

9    If Defendant Madera provided false information to Plaintiff, knowing that it was false, and the

10  correct information would have assisted in future treatment and provided Plaintiff with

11  knowledge about her own bodily integrity and ability to procreate, the failure to reveal such

12  information comes to the level that exceeds all bounds of that usually tolerated in a civilized

13  community.   The problem with Plaintiff's intentional infliction of emotional distress claim

14  against Defendant Madera, as with the other Defendants, is that the complaint fails to allege

15  Defendant Madera knew what it was telling Plaintiff was false.   There are no allegations in the

16  complaint that Defendant Madera knew that Plaintiff's ovaries had been removed and

17  deliberately misled her.   Because there is no allegation that Defendant Madera intentionally

18  provided false information, the complaint fails allege extreme and outrageous conduct that was

19  calculated to cause  mental distress.   Thus, the emotional distress cause of action against Madera

20  must be dismissed.

21         For the reasons discussed above, leave to amend will be granted because the court does

22  not find that amendment would be futile.

23  **F.  Tenth Cause of Action – Negligent Infliction of Emotional Distress**

24         Defendant Madera contends that a claim of negligent infliction of emotional distress is

25  not cognizable as a separate tort under California law.  In her opposition, Plaintiff concedes that

26  the damages for negligent infliction of emotional distress should be pleaded under her negligence

27

28                                                55

claim.   Thus, the court will thus dismiss Plaintiff's tenth cause of action for negligent infliction of emotion distress with prejudice.   Plaintiff, however, is granted leave to include allegations concerning emotional distress under the negligence claim found in the fifth cause of action.

**G.   Eleventh and Twelfth Causes of Action – Fraud and Negligent Misrepresentation**

Defendant Madera contends that the eleventh and twelfth causes of action for misrepresentation and concealment of material facts are subject to dismissal because they do not meet with the requirement of Rule 9(b).

As discussed in Section I.L., a complaint alleging fraud meets Rule 9's standards if it alleges the time, place, and content of the fraudulent statements, including reasons why the statements are false.   Decker, 42 F.3d at 1547-48. "The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage."   Small, 30 Cal.4th at 173.   Negligent misrepresentation requires a plaintiff to prove "misrepresentation of a past or existing material fact, without reasonable ground for believing it to be true, and with intent to induce another's reliance on the fact misrepresented; ignorance of the truth and justifiable reliance on the misrepresentation by the party to whom it was directed; and resulting damage."   Home Budget Loans, Inc, 207 Cal.App.3d at 1285.

The complaint alleges that Defendant Madera misrepresented the material fact that the surgery could result in the removal of Plaintiff's ovaries.   The complaint alleges that Defendant Madera never informed Plaintiff of potential complications regarding surgical removal of cysts. The complaint alleges that after surgery Defendant Madera continued to misrepresent to Plaintiff that her ovaries were normal.  The complaint further alleges:

> Defendants made pre-surgery misrepresentations with knowledge of falsity, intending for [Plaintiff] to rely on these misstatements and agree to the improper treatment.   Defendants made post-surgery misrepresentations with knowledge of falsity, intending for Thomas to believe that her ovaries had not been removed.

1   Complaint ¶ 118.

2          The complaint fails to allege specific misrepresentations made by Defendant Madera, as

3   opposed to other Defendants.    To the extent statements by Defendant Madera are implied, the

4   complaint fails to mention who working for Defendant Madera made the statements and when

5   they were made.   The complaint simply fails to set forth what specific false or misleading

6   statement Defendant Madera made, why the statement or omission was false, and the time the

7   statement was made.  Plaintiff must make some attempt to narrow the time during which the

8   false statements were made to something other than "before" and "after" surgery.   These

9   allegations fail to state a claim for fraud or negligent misrepresentation under Rule 9.

10         As previously mentioned, leave to amend should be granted when dismissing a cause of

11  action unless the district court determines that the pleading could not possibly be cured by the

12  allegation of other facts. <u>Bly-Magee</u>, 236 F.3d at 1019; <u>Chang</u>, 80 F.3d at 1296.   Because

13  Plaintiff may be able to meet Rule 9's requirements, Plaintiff will be permitted to file an amended

14  complaint.

15

16                            **IV.   PUNITIVE DAMAGES**

17         All Defendants request that the court strike Plaintiff's request for punitive damages.

18  Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading

19  any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."   The

20  purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by

21  dispensing with those issues prior to trial.   <u>Sidney-Vinstein v. A.H. Robins Co.</u>, 697 F.2d 880,

22  885 (9th Cir.1983).   Immaterial matter is defined as matter that "has no essential or important

23  relationship to the claim for relief or the defenses being pleaded." <u>Fantasy, Inc. v. Fogerty</u>, 984

24  F.2d 1524, 1527 (9th Cir 1993) (quoting 5 Charles A. Wright & Arthur R. Miller, Federal Practice

25  and Procedure § 1382, at 706-07 (1990)), *rev'd on other grounds*, 510 U.S. 517 (1994).

26  Impertinent matter is defined as "statements that do not pertain, and are not necessary, to the

27

28                                     57

issues in question." <u>Fantasy, Inc.</u> 984 F.2d at 1527.  Granting a motion to strike may be proper if it will make the trial less complicated or if allegations being challenged are so unrelated to plaintiff's claims as to be unworthy of any consideration as a defense and that their presence in the pleading will be prejudicial to the moving party. <u>Id.</u>

Punitive damages are appropriate in an action brought under 42 U.S.C. § 1983.  Punitive damages are available "'when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others.'" <u>Kennedy v. Los Angeles Police Dept.</u>, 901 F.2d 702, 707 (9th Cir.1989) (quoting <u>Smith v. Wade</u>, 461 U.S. 30, 56 (1971)).  Once the jury has determined that the defendant is factually liable, its decision to award punitive damages properly depends on its discretionary moral judgment that the defendant's culpable conduct merits the particular punitive award imposed. <u>Larez v. City of Los Angeles</u>, 946 F.2d 630, 648 (9th Cir.1991).

Under California law, "where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." Cal. Civil Code § 3294.(a).

> (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others.
> (2) "Oppression" means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights.
> (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.

Cal.Civ.Code § 3294(c).

Here, the complaint fails to sufficiently allege a basis for punitive damages.   As discussed above, the complaint fails to specifically allege the motivation behind Defendants' conduct.   While Plaintiff alleges Defendants failed to adequately warn her about the surgery, her ovaries were improperly removed during the surgery, and Defendants did not tell Plaintiff what

really had happened, Plaintiff has failed to allege that Defendants' actions were more than negligence.   If the complaint alleged that each Defendant knew exactly what would happen during the surgery, purposefully allowed Plaintiff's ovaries to be improperly removed, and then lied to Plaintiff, knowing what really happened during surgery, the complaint's allegations would most likely rise to the level of malice, fraud, and oppression.   However, such specific allegations are not contained in the complaint.   Based on the complaint's allegations, the complaint does not contain sufficient information to allege punitive damages.

Defendants also move to strike Plaintiff's state punitive damages request for failure to satisfy California Civil Procedure Code § 425.13.   Defendants point out that Plaintiff has neither requested nor obtained an order from the court allowing for recovery of punitive damages nor made a showing of a substantial probability of prevailing.   California Civil Procedure Code § 425.13(a) provides that:

> In any action for damages arising out of the professional negligence of a health care provider, no claim for punitive damages shall be included in a complaint or other pleading unless the court enters an order allowing an amended pleading that includes a claim for punitive damages to be filed. . . ."

Cal.Civ.Pro.Code § 425.13(a).

Plaintiff claims that she is not required to obtain permission from the court prior to alleging punitive damages for her state law causes of action because Section 425.13(a) is a state procedural rule.   In support of her position, Plaintiff relies on Jackson v. East Bay Hospital, 980 F.Supp. 1341 (N.D.Cal.1997).   In Jackson, the plaintiff claimed punitive damages under the Emergency Medical Treatment and Active Labor Act of 1986 (EMTALA), which incorporates state substantive law in determination of damages.   The state substantive law for the determination of damages as applied to EMTALA was governed by Cal. Civ.Code § 3333.2(a), California's Medical Injury Compensation Reform Act of 1975 (MICRA).   In Jackson, the defendants moved to apply Section 425.13, a non-MICRA state procedural requirement, to the plaintiff's complaint and strike the punitive damages claim for the EMTALA federal cause of

1    action.  Jackson, 980 F.Supp. at 1350.    The Northern District reasoned that Section 425.13

2    would not apply to the plaintiff's federal cause of action because it was a state procedural law,

3    rather than substantive law.  Id. at 1353.    The Northern District held that Section 425.13 was not

4    so "intimately bound" to the state substantive law under MICRA that it would warrant

5    application to plaintiff's claims.   Id.

6          Plaintiff is not bringing a claim for punitive damages under EMTALA.    At issue is

7    Plaintiff's request for punitive damages for her state professional negligence claims.    Another

8    District Judge in the Eastern District of California recently held that Section 425.13 does apply to

9    such a claim for professional negligence.  See Allen v. Woodford, 2006 WL 1748587, *20 -22

10   (E.D.Cal. 2006).

11         Absent any federal statute or rule, state procedural rules may be deemed "substantive" for

12   Erie purposes if limited to a particular substantive area (e.g., medical malpractice or insurance

13   contracts) and designed to accomplish a particular substantive objective.   S.A. Healy Co. v.

14   Milwaukee Metropolitan Sewerage Dist., 60 F.3d 305, 310  (7th Cir. 1995).    State procedural

15   rules that are intimately bound with substantive law may apply in federal actions where they in

16   fact serve substantive state policies and are more properly rules of substantive law within the

17   meaning of Erie.   Feldman v. Allstate Ins. Co. 322 F.3d 660, 666 (9th Cir. 2003);  Wray v.

18   Gregory, 61 F.3d 1414, 1417  (9th Cir. 1995).   Where a state procedural law is part of an

19   integrated scheme for managing medical malpractice claims and constitutes a central feature of

20   that scheme, that law is intimately bound with the substantive claim.  Allen, 2006 WL 1748587;

21   Jackson, 980 F.Supp. at 1352;  see also Wray, 61 F.3d at 1417 (applying evidentiary rule to

22   malpractice claim).

23         The legislative intent behind Section 425.13 shows the rule to be intimately bound to the

24   state substantive causes of action for professional negligence.    Section 425.13 applies to any

25   action for damages arising out of the professional negligence of a health care provider. Cent.

26   Pathology Servs. Clinic, Inc. v. Superior Court, 3 Cal.4th 181, 187 (Cal. 1992).  The Legislature's

27

28                                                    60

intent when enacting Section 425.13 was to protect health care providers from frequently pleaded and frivolous, unsubstantiated, punitive damage claims. Id. at 190-91.   The intent of the Legislature was that any claim for punitive damages in an action against a health care provider is subject to the statute if the injury that is the basis for the claim was caused by conduct directly related to the rendition of professional services. Id. at 192.

Plaintiff's causes of action for professional negligence, intentional infliction of emotional distress, fraud and misrepresentation are directly related to the manner in which Defendants provided their professional services.   These claims arise out of the professional negligence of health care providers.   Plaintiff must petition the court for punitive damages pursuant to Section 425.13 for such relief under her state law claims.   Defendants' motions to strike Plaintiff's claim for punitive damages are granted with leave to amend.

## ORDER

Accordingly, based on the above memorandum opinion, the court ORDERS that:

1.   CDC Defendants' motion to dismiss for Plaintiff's failure to exhaust administrative remedies is DENIED without prejudice;

2.   CDC Defendants' motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part;

3.   Defendant Ugwu-Oju's motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part;

4.   Defendant Madera's motion to dismiss for failure to state a claim is GRANTED in part and DENIED in part;

5.   Plaintiff's first cause of action for a violation of the Eighth Amendment is DISMISSED with leave to amend as to all Defendants;

6.   Plaintiff's second cause of action for a violation of the Fourteenth Amendment is DISMISSED with leave to amend as to Defendant Madera only;

7.    All state law causes of action are DISMISSED with leave to amend as to CDC
      Defendants for Plaintiff's failure to allege compliance with the CTCA;

8.    The third cause of action for a violation of Article 1, Section 17 of the California
      Constitution is DISMISSED with leave to amend as to all DEFENDANTS;

9.    The fourth cause of action for a violation of Article 1, Section 7 of the California
      Constitution against Defendant Madera is DISMISSED with leave to amend and SHALL
      REMAIN against Defendant Ugwu-Oju;

10.   The sixth cause for failure to obtain consent is DISMISSED with leave to amend;

11.   The seventh cause of action for battery against Defendant Madera is DISMISSED with
      leave to amend and SHALL REMAIN against Defendant Ugwu-Oju;

12.   The eighth cause of action for gross negligence is DISMISSED with prejudice and
      without leave to amend;

13.   The ninth cause of action for intentional infliction of emotional distress is DISMISSED
      with leave to amend;

14.   The tenth cause of action for negligent infliction of emotion distress is DISMISSED with
      prejudice, but with leave to include allegations concerning emotional distress under the
      negligence claim found in the fifth cause of action;

15.   The eleventh and twelfth causes of action for fraud and negligent misrepresentation are
      DISMISSED with leave to amend for failure to comply with Rule 9;

16.   All parties' motions to strike the punitive damages request from the complaint is
      GRANTED; and

17.   The request for punitive damages is STRUCK from the complaint with leave to amend.


IT IS SO ORDERED.

**Dated:    October 5, 2006**            _____ **/s/ Anthony W. Ishii**_____
0m8i78                                   UNITED STATES DISTRICT JUDGE