UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KELLI THOMAS, | 1:06-cv-00215-AWI-SMS |
| Plaintiff, | ORDER ON PLAINTIFF'S MOTION TO COMPEL NON-PARTIES TO PRODUCE DOCUMENTS PURSUANT TO SUBPOENAS (DOC. 80) |
| v. | |
| RODERICK HICKMAN, et al., | |
| Defendants. | ORDER ON PLAINTIFF'S MOTION TO COMPEL FURTHER PRODUCTION BY DEFENDANT DR. UGWU-OJU (DOCS. 89, 90) |

ORDER ON PLAINTIFF'S MOTION TO COMPEL FURTHER PRODUCTION OF DOCUMENTS BY DRS. SURYADEVARA, KRUSE, REEVES, AND GOODWIN (DOCS. 54, 56)

ORDER ON DEFENDANTS' MOTION TO STRIKE THE DECLARATION OF TODD SPENCER, M.D. (DOCS. 67, 65)

Plaintiffs are proceeding with a civil action in this Court. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302(c)(1) and 72-303. Pending before the Court are three discovery motions.

I. Background

Plaintiff filed suit initially on February 27, 2006, alleging violation of 42 U.S.C. § 1983, professional negligence, failure to obtain informed consent, civil battery, gross

1

negligence, negligent and intentional infliction of emotional distress, intentional deceit/fraud, and negligent misrepresentation against thirteen defendants. After motions to dismiss were determined by Judge Ishii, Plaintiff filed a first amended complaint on November 7, 2006, and on November 9, 2007 Plaintiff Thomas filed a Notice of Errata and a Corrected Amended Complaint (FAC).

The FAC names only six defendants: Sampath Suryadevara, M.D., Chief Medical Officer, Central California Women's Facility (CCWF); 2) Shelly Kruse, M.D., a physician employed at CCWF; 3) Ernest Reeves, M.D., a gynecologist employed at CCWF; 4) Loraine Goodwin, M.D., a physician employed at CCWF; 5) Charles Ugwu-Oju, M.D., a physician, a member of a medical group in private practice under contract with CCWF to provide care to inmates, and a doctor on staff at Madera Community Hospital, which also provides care of inmates of CCWF; and 6) Madera Community Hospital, a California non-profit corporation that through agreements with the medical group of Dr. Ogwu-Oji and the California Department of Corrections and Rehabilitation (CDCR) provided treatment to inmates of CCWF, including Plaintiff. The FAC includes claims against each of the CDCR Defendants for negligence, intentional infliction of emotional distress, intentional and negligent misrepresentation, and cruel and unusual punishment under § 1983 and the California constitution. It includes similar claims against Dr. Ugwu-Oju and an additional claim under § 1983 and the California constitution for due process violations. There is also a claim against Madera Community Hospital for professional negligence.

After notifying counsel for all defendants and for the non-parties, Plaintiff served the subpoenas on the five CDCR/CCWF non-parties on March 12, 2007, requiring them to produce documents such as contracts, CDCR and CCWF policies and procedures, and documents concerning Plaintiff's medical treatment. (Doc. 82 - Declaration of Erica Brand-Portnoy in Support of Motion to Compel, Ex. B, C, D, E & F; Doc. 82, Ex. G.)

After unsuccessful efforts to negotiate with the non-parties, on November 13, 2006, Plaintiff sent her First Set of Requests for Production of Documents (RPD's) to the CDCR Defendants. In January 2007, CDCR Defendants each served their responses and objections, but only Defendant Reeves produced any documents, which consisted of 112 documents in response to only three of sixteen requests. (See Plaintiff's Memo, p. 4-5.)

Plaintiff served her first set for requests for production of documents (RPD's) on Defendant Oju on September 1, 2006. Responses and conferences produced no resolution of disputes concerning the scope and propriety of the requested discovery.

II. <u>Motion to Compel Non-Parties to Produce Documents pursuant to Subpoenas</u>

Plaintiff filed a motion, a supporting memorandum and declaration with exhibits and appendices; Defendant filed opposition, and Plaintiff a reply; thereafter, the hearing on the motion was vacated and the matter was submitted to the Court for decision.

Plaintiff brings this Motion to Compel Non-Parties to produce documents requested pursuant to Fed. R .Civ. P. 45 by subpoenas duces tecum that were issued on March 12, 2007, to the

following non-parties:

    1.  Deborah L. Patrick, Warden, Central California Women's Facility (CCWF);

    2.  Custodian of Records at CCWF;

    3.  Custodian of Records at California Department of Corrections and Rehabilitation (CDCR);

    4.  James E. Tilton, Secretary, CDCR; and

    5.  Dr. Peter Farber-Szekrenyi, Director, Division of Correctional Health Care Services, CDCR.
These individuals and custodians will be referred to as "CDCR/CCWF non-parties" or simply "non-parties."

    By the subpoenas Plaintiff seeks documents that will enable Plaintiff to learn more about the alleged improper surgery performed on her on April 5, 2001, at the Madera Community Hospital. She seeks documents relevant to her claims in this suit about the state of her ovaries which she alleges were removed during surgery; and documents pertaining to the surgery performed on her, the surgeon, and the prison system's policies regarding inmate medical care. Plaintiff claims that despite her efforts to avoid undue burden and expense on them, the CDCR/CCWF non-parties, like Defendants, have refused to produce documents and argue that they should have to produce no responsive documents, raising several objections.

    The non-parties are represented by attorneys separate from the attorneys for the defendants.

    A. <u>Immunity pursuant to the Eleventh Amendment</u>

    The non-parties object on the ground that they have sovereign immunity pursuant to the Eleventh Amendment with

1    respect to the third-party subpoenas because they are employees
2    and/or agents of the CDCR and CCWF and thus of the state.

3        The non-parties rely on Estate of Gonzales v. Hickman, 466
4    F.Supp.2d 1226 (E.D.Cal. 2006), in which it was held that the
5    California Department of Corrections and Rehabilitation (CDCR)
6    enjoyed Eleventh Amendment immunity with respect to subpoenas
7    that were issued in a suit by the estate of a corrections officer
8    and which sought information regarding the decedent's employment
9    and equipment he wore while on duty.

10       However, the present case involves not an arm of the state,
11   but rather a suit against the doctors and the medical officer in
12   their individual capacities. It is established that a suit
13   against state officers in their individual capacity for damages
14   on the basis of a violation of federal civil rights is not deemed
15   an action against the state and thus is not barred by the
16   Eleventh Amendment. Scheuer v. Rhodes, 416 U.S. 232, 237 (1974).
17   Further, the Eleventh Amendment immunity refers to assertions of
18   liability on the part of the state and claims for relief against
19   the state, as distinct from service of process to obtain
20   information. Jones v. Tozzi, 2007 WL 1299795, *3 (E.D.Cal. 2007)
21   (citing and discussing authorities). Thus, there may in some
22   circumstances be sovereign immunity against subpoenas for the
23   sovereign itself. See, United States v. James, 980 F.2d 1314 (9th
24   Cir. 1992), cert. denied, 510 U.S. 838 (1993). However, the
25   identity and extent of the immunity is determinative, and here
26   the Eleventh Amendment is not implicated because the persons
27   proceeded against are not the state itself, but rather
28   individuals, and further because those individuals are not

                                    5

asserted to be liable in a manner that would result in a judgment against the state that would be paid out of the state's treasury. See, Jones v. Tozzi, 2007 WL 1299795, *3 (E.D.Cal. 2007) (holding in part that trial subpoenas issued to state officers in their individual capacities, as distinct from a state or state agency, were not barred by Eleventh Amendment immunity); Laxalt v. McClatchy, 109 F.R.D. 632 (D. Nev. 1986) (holding that the Eleventh Amendment did not bar subpoenas to the custodian of records of a state gaming control board because the custodian was not a state and because the discovery process of inspecting and copying state records did not amount to an assertion of liability on the state's part or a claim for relief against it).

The Court finds inapposite the various authorities relied on by Defendants and non-parties that concern immunity from suit, as distinct from a mere subpoena. The Court therefore rejects the non-parties' contention that the Eleventh Amendment immunizes them from the subpoenas; the objections on the ground of sovereign or Eleventh Amendment immunity are overruled.

B. Waiver of Immunity

Although the Court has concluded that there is no Eleventh Amendment or sovereign immunity, the Court determines that Defendant Dr. Reeves' production of documents constituted a waiver by the state of California of any immunity.

Reeves produced 112 documents from Plaintiff's central file, with an accompanying authentication by the custodian of medical records from CCWF, in response to Plaintiff's RPD's. In the joint statement, it was represented that Defendant Reeves stated that he was not the custodian of the records requested and did not

have possession, custody, or control over any of the CDC records
requested. (Jt. Stmt. (Doc. 63) at pp. 14, 17.) It thus appears
that Defendant Reeves obtained the documents from the custodian
of medical records of CCWF and then selectively produced them in
response to the RPD's; it further appears from the official
custodian's authentication that the state voluntarily provided
the documents to one Defendant, Dr. Reeves.

It is established that a third party's voluntarily providing
documents relevant to a case constitutes a waiver of immunity.
United States v. James, 980 F.2d 1314, 1320 (9th Cir. 1992)
(holding that the Quinault Indian Nation was entitled to a claim
of sovereign immunity but waived it with respect to relevant
documents in the possession of the Housing Authority by
voluntarily providing the opposing party with documents that had
been in the Housing Authority's possession). It is not
permissible for the entity claiming the immunity to provide
documents selectively and then hide behind a claim of sovereign
immunity when the opposing party requests different documents
from the same agency. Id. See also, Jett v. Penner, 2007 WL
127790, *2 (E.D.Cal. Jan. 12, 2007) (holding that the CDCR's
providing some documents from the plaintiff inmate's central file
to the defendants constituted a waiver of any claim of sovereign
immunity with respect to the documents in the central file).

Thus, the objections on the ground of privilege or
protection are further overruled on the ground that any privilege
or protection was waived.

C. Privacy and Privilege

The non-parties make various arguments concerning privacy

7

1  rights: 1) the privacy rights of Defendant Dr. Ugwu-Oju will be

2  invaded by disclosure of financial information pertinent to

3  contract negotiations with the non-party state of California, and

4  the state of California does not have the authority to waive the

5  doctor's right to privacy; 2) the privacy rights of the doctor

6  and of third parties, such as non-parties as to whom medical

7  services had been rendered, would be invaded by the disclosure,

8  and the state cannot waive these persons' right to privacy; 3)

9  the stipulation and protective order presently in effect is

10  ineffective to protect privacy rights of these entities because

11  it protects only those documents filed with the Court, whereas

12  the requested discovery would not be filed with the Court but

13  rather would be produced during the regular course of discovery,

14  thus enabling any party freely to disseminate the information.

15                  1. <u>State Privileges</u>

16      The Court rejects the assertion of privacy rights derived

17  from the California constitution because state privilege law does

18  not apply in federal question cases, but rather federal law

19  governs even state law claims that are pendent to federal

20  question cases. <u>Jackson v. County of Sacramento</u>, 175 F.R.D. 653,

21  654 (E.D.Cal. 1997); <u>Burrows v. Redbud Community Hospital</u>

22  <u>District</u>, 187 F.R.D. 606, 610-11 (N.D.Cal. 1998).

23               2. <u>Federal Privileges and Privacy</u>

24      With respect to a claim of federal privilege, Defendants

25  have failed to make the required threshold showing. Fed. R. Civ.

26  P. 26(b)(5)(A) provides that when a party withholds information

27  otherwise discoverable under the rules by claiming that it is

28  privileged or subject to protection as trial-preparation

material, then the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that will enable other parties to assess the applicability of the privilege or protection without revealing the privileged or protected information itself. In order to assist a court in determining a claim of privilege, a court may require an adequately detailed privilege log in conjunction with evidentiary submissions to fill in any factual gaps. United States v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir. 1996), cert. denied, 519 U.S. 927, (1996); see also, Allen v. Woodford, 2007 WL 309485, *4 (E.D.Cal. 2007), aff'd, Allen v. Woodford, 2007 U.S. Dist. Lexis 24345 (E.D.Cal. 2007). With respect to each document as to which a privilege is claimed, the person claiming the privilege should include in the privilege log the document's general nature and description, including its date, the identity and position of the author, and the identity and position of all addressees and recipients; the present location of the document; and the specific reasons it was withheld, including the privilege invoked and the grounds therefor. Allen v. Woodford, 2007 WL 309485, *4 (citing Construction Products, 73 F.3d at 473-74, and In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th Cir. 1992)).

### a. Official Information Privilege

With respect to an assertion of the governmental information privilege, the privilege log or declaration must be submitted at the time the party claiming the privilege or protection serves its response to the discovery request. Miller v. Pancucci, 141

1  F.R.D. 292, 300 (C.D.Cal. 1992). This enables the Court to engage

2  in a case-specific and fact-specific balancing of the interests

3  of law enforcement, privacy interests of police officers or

4  citizens, interests of civil rights plaintiffs, policies that

5  inform the laws, and the needs of the judicial process. <u>Kelly v.</u>

6  <u>City of San Jose</u>, 114 F.R.D. 653, 667-69 (N.D.Cal. 1987). The

7  claimant must show that the agency generated or collected the

8  information and maintained its confidentiality; the declarant

9  reviewed the material personally; there is a specific

10 governmental or privacy interest that would be threatened by

11 disclosure to Plaintiff and/or his attorney; a description of how

12 disclosure subject to a carefully crafted protective order would

13 create a substantial risk of harm to significant governmental or

14 privacy interests; and an assessment of the extent of the harm

15 that would result from disclosure. <u>Id.</u> at 670. It is helpful if

16 the agency can describe how the plaintiff could acquire the

17 information or information of equivalent value from other

18 sources. <u>Id.</u>

19      Here, the CDCR/CCWF non-parties submitted no declarations or

20 privilege log; there is no indication that anyone has reviewed

21 the materials requested. Because Defendants have not made their

22 substantial threshold showing and have not provided adequate

23 information concerning their claim of privilege or protection,

24 the Court rejects the claim of privilege based on the official

25 information privilege under federal law.

26               b. <u>Privacy Based on State Statute</u>

27      The non-parties also argue for privacy based upon

28 California's Confidentiality of Medical Information Act (CIMA)

and the federal Health Insurance Portability and Accountability Act (HIPAA). The CDCR/CCWF non-parties do not discuss this objection in their opposition to the motions here; rather, they raised the issue in their objections to Request 18 in the subpoenas served on the five CDCR/CCWF non-parties. They have not further indicated why CIMA or HIPAA apply.

CIMA is a state act that generally bars disclosure of a patient's medical information without the patient's authorization, and health care providers must hold that information confidential unless compelled to disclose by provisions of the Act allowing such disclosure. Cal. Civ. Code § 56.10. As discussed previously, federal, not state, privilege law applies. Boyd v. City and County of San Francisco, 2006 WL 1390423 (N.D.Cal. May 18, 2006). Because the only issues to be resolved are determined under federal privilege law, CIMA is not applicable here.

### c. HIPAA

The court in Allen v. Woodford, 2007 WL 309485, at *5 (E.D.Cal. Jan. 30, 2007) addressed HIPAA's applicability fully, discussing both its requirements and restrictions with regard to disclosure of protected health information. There it was determined that disclosure is permitted pursuant to a court order, subpoena or discovery request when the healthcare provider receives satisfactory assurance from the party seeking the information that reasonable efforts have been made to secure a qualified protective order. 45 C.F.R. § 164.512(e)(2004).

Plaintiffs argue that a protective order is in place and that it satisfies the requirements for disclosure pursuant to the

subpoenas in question. The CDCR/CCWF non-parties contend that the protective order is insufficient.

A review of the protective order in place here appears to satisfy the requirements of HIPAA as there are protections prohibiting disclosure or use of the protected health information for any purpose other than the litigation herein, and the protected information is returned to the physician or destruction of the protected health information is provided for at the end of the proceeding. 45 C.F.R. § 164.512(e)(v). The protective order in place here satisfactorily protects the interests of HIPAA. (See Exhibit 1 to each of Exhibits B, C, D and F, Decl. of Erica Brand Portnoy in Support of Motion to Compel.)

Accordingly, objections based on privilege, protection, or privacy are overruled.

D. <u>Overbreadth, Vagueness, and Ambiguity</u>

The CDCR/CCWF non-parties complain that the subpoenas are overbroad, vague and ambiguous. They take issue with the definitions provided by Plaintiff to "CDC" and "PERSONS" because it includes predecessors and successors in interest who would not have possession, custody or control of the requested information. The contend that the definition of "COMMUNICATION" is vague and that it appears to require the non-parties here to create documents of verbal communications, a violation of Fed. R. Civ. P. 34. They also complain that production of "potential contracts or agreements" or "possible agreements or negotiations" requests are overly broad, vague and ambiguous, and are oppressive and unreasonable. They propose that the only relevant agreements would be executed contracts in effect during the relevant time

1  period. They further object to such terms as "prisoner medical
2  care," "medical care," and "provision of medical care."  They
3  contend that medical treatment or care of a broken hand or a knee
4  injury is irrelevant.

5      Although Plaintiff has redefined the term "possible
6  agreements or negotiations" to include "unexecuted drafts,
7  documentation of negotiations of contracts, or other documents
8  referring to these contracts, such as e-mails or letters
9  discussing their existence and potential problems therewith," the
10  non-party recipients of the subpoenas continue to claim the
11  requests are overly broad and unreasonable.

12      Additionally, they claim that the requests are overly broad
13  because they do not specify a time frame relevant to this action.

14      Plaintiff responds that the burden to establish that the
15  subpoena is unreasonable or oppressive is upon the objecting
16  party. Fed. R. Civ. P. 34(b) specifically requires that each
17  request be addressed and that unless the requested inspection is
18  allowed, an objection be stated and the reasons for the objection
19  "shall be stated." The objecting entity must state specifically
20  how, despite the broad and liberal construction of federal
21  discovery rules, each question is overly broad, unduly
22  burdensome, or oppressive by submitting affidavits or offering
23  evidence revealing the nature of the burden. Klein v. AIG Trading
24  Group, Inc., 228 F.R.D. 418, 422 (D.Conn. 2005). Objections must
25  be made with sufficient specificity in accordance with
26  Fed.R.Civ.P. 34; objections that are not sufficiently specific,
27  such as statements that requests are overly broad, burdensome, or
28  oppressive, are waived. Ramirez v. County of Los Angeles, 231

1  F.R.D. 407, 409 (C.D.Cal. 2005).

2      Further, the responding party should exercise reason and
3  common sense to attribute ordinary definitions to terms and
4  phrases utilized in the discovery documents. McCoo v. Denny's
5  Inc., 192 F.R.D. 675, 694 (D.Kan. 2000).

6      Here, the objections are not sufficiently specific or
7  adequately explained. The objections with regard to the terms and
8  definitions accompanying the subpoenas in this case could have,
9  and should have been, resolved without court intervention.
10 Without the objecting party's reasons for the objections here,
11 the Court overrules these objections.

12          E. Lack of Possession, Custody, or Control

13     The CDCR/CCWF non-parties contend that request numbers 1, 2,
14 3, 4 and 5 seek documents regarding negotiations between the
15 CDCR, Madera and Dr. Ugwu-Oju that would be in the possession,
16 custody or control of CDCR, but not CCWF or Warden Patrick or the
17 custodian of records there. They state that if their Eleventh
18 Amendment issues are resolved against them, they will work with
19 Plaintiff to identify the employees in possession, custody and
20 control.

21     Plaintiff contends that pursuant to the liberal federal
22 discovery rules, if Ms. Patrick and/or the Custodian of Records
23 at CCWF do not have the requested documents, they are required to
24 seek out the records provided they have the practical ability to
25 obtain them.

26     Since the recipients of the subpoenas here have agreed to
27 assist in procuring the requested documents, the Court will not
28 address this objection further. The CDCR/CCWF non-parties are

                            14

reminded that cooperation in obtaining these documents promptly
is expected by the Court.

Finally, the Court notes that if a particular objection is
not directly addressed in this order, the parties are informed
that the question was considered and rejected as being improperly
raised and/or insufficiently supported.

In summary, the motion to compel non-parties to produce
documents pursuant to Fed. R. Civ. P. 45 IS GRANTED.

III. <u>Plaintiff Motion to Compel Further Production by
Charles Ugwu-Oju, M.D.</u>

Plaintiff moves to compel Dr. Oju to disclose billing
records and medical records related to all patients for whom Dr.
Oju has ever performed cystectomies, cone biopsies,
oophorectomies, and/or all patients whom the doctor treated for
ovarian cysts and dysplasia. Defendant Oju is defending claims of
violation of the Eighth Amendment and Fourteenth Amendment Due
Process Clause, professional negligence, failure to obtain
informed consent, battery, negligent and intentional
misrepresentation, and intentional infliction of emotional
distress based on his allegedly unauthorized and unnecessary
removal of Plaintiff's ovaries during a surgical procedure.

The motion was filed on May 8, 2007, and an amended motion
was filed the same day. A joint statement was filed on June 11,
2007, which included an appendix of authorities and the
declaration of Dakota S. Whitney as well as Defendant's exhibits.
The hearing on the motion was vacated, and the matter was
submitted to the Court for decision.

A. <u>Billing Other Incarcerated Patients for Similar
Procedures and Treatment</u>

15

1        The first disputed request is number 11, which is for "ALL

2   DOCUMENTS RELATING TO YOUR medical bills for cystectomies, cone

3   biopsies, oophorectomies, AND/OR ANY other MEDICAL TREATMENT

4   RELATING TO removal of ovarian cysts AND/OR dysplasia." It was

5   provided that personal identification information should be

6   redacted for individuals not covered by protective order or

7   stipulation. (Jt. Stmt. p. 7.) Plaintiff also limited the request

8   (numbers 11 and 15) to responsive documents relating to

9   incarcerated inmates only. (Decl. of Dakota S. Whitney ¶ 2.)

10              1. <u>Relevance</u>

11        Parties have a right to obtain discovery regarding any

12   matter, not privileged, that is relevant to the claim or defense

13   of any party; further, for good cause shown, the Court may order

14   discovery of any matter relevant to the subject matter involved

15   in the action. Fed. R. Civ. P. 26(b)(1). To be relevant, evidence

16   must have a "tendency to make the existence of any fact that is

17   of consequence to the determination of the action more probable

18   or less probable than it would be without the evidence." Fed. R.

19   Evid. 401. Relevant information need not be admissible at the

20   trial if the discovery appears reasonably calculated to lead to

21   the discovery of admissible evidence. <u>Id.</u> Information relevant to

22   a party's claim or defense includes information that a party may

23   use to support its denial or rebuttal of the claims or defenses

24   of another party. Adv. Comm. Note to 2000 Amendment; <u>see</u>

25   Schwarzer, Tashima and Wagstaffe, California Practice Guide,

26   Federal Civil Procedure Before Trial, § 11:21.2. Information

27   relevant to the subject matter of the action, available with

28   leave of court for good cause shown, means information that might

reasonably assist a party in evaluating a case, preparing for
trial, or facilitating settlement. <u>Hickman v. Taylor</u>, 329 U.S.
495, 506-07 (1947). Relevance should be construed liberally and
with common sense, and it has been defined to encompass any
matter that bears on, or reasonably could lead to other matter
that could bear on, any issue that is or may be in the case.
<u>Miller v. Pancucci</u> , 141 F.R.D. 292, 296 (C.D.Cal. 1992) (citing
<u>Oppenheimer Fund, Inc. v. Sanders</u>, 437 U.S. 340, 351 (1978)).

Plaintiff argues that the documents requested may show that
there was a pattern of Defendant Oju's performing improper
procedures or engaging in negligence, or that Oju had a financial
or other improper motive to remove Plaintiff's ovaries
unnecessarily, and/or that the CDCR and/or Madera Community
Hospital had notice of Defendant's improper motives and/or
medical treatment of incarcerated patients.

Defendant argues that the information would only be relevant
to the subject matter of the action and as such requires a
showing of good cause under Rule 26(b)(1) before discovery is
ordered; bills for other patients with similar conditions do not
tend to make more or less probable a fact of consequence to the
determination of the action. <u>See</u>, Fed. R. Evid. 401. Further,
Defendant cites authority to the effect that information
regarding Defendant Oju's overall financial condition is not
discoverable because ordinarily it is not relevant and/or does
not lead to the discovery of admissible evidence.

Here, the information has substantial relevance to the case
before the Court. <u>See</u>, <u>Allen v. Woodford</u>, 2007 WL 309485, *6-7
(E.D.Cal. 2007) (concluding that where alleged abuse of medical

1   treatment for financial gain was alleged, comparable medical

2   records for third parties and financial records for the

3   procedures were an opportunity to show deliberate indifference by

4   pattern and practice of medical abuse).

5                         2. Privacy

6        Defendant argues that the request invades a federally

7   recognized, general right to privacy, which the parties agree

8   exists and may be raised in response to a discovery request. See,

9   Johnson by Johnson v. Thompson, 971 F.2d 1487, 1497 (10th Cir.

10  1992), cert. denied, 507 U.S. 910 (1993) (upholding a court's

11  denial of a motion to compel discovery of the names of all

12  participants in a study concerning parents who had to make

13  decisions concerning whether to administer heroic life-sustaining

14  treatment to a severely handicapped newborn based on the

15  importance of maintaining the privacy of the other parents, which

16  the court determined outweighed the relevance and necessity of

17  the information requested); DeMasi v. Weiss, 669 F.2d 114, 119-20

18  (3d Cir. 1982); Soto v. City of Concord, 162 F.R.D. 603, 616

19  (N.D.Cal. 1995) (recognizing a constitutionally based right that

20  when claimed requires balancing the need for the information

21  sought against the privacy right asserted). However, the right of

22  privacy is conditional rather than absolute, and limited

23  impairment of the right may be allowed if properly justified by a

24  need for the information that outweighs the privacy interest.

25  Perry v. State Farm Fire & Cas. Co., 734 F.2d 1441, 1447 (11th

26  Cir. 1984), cert. denied, 469 U.S. 1108 (1985); Ragge v.

27  MCA/Universal Studios, 165 F.R.D. 601, 604 ;(C.D.Cal. 1995); see

28  also, Caesar v. Mountanos, 542 F.2d 1064, 1068 (9th Cir. 1976).

                                18

1 The Court is to balance the interests under federal law because
2 state law does not inform federal privilege law. <u>Jackson v.</u>
3 <u>County of Sacramento</u>, 175 F.R.D. 653 (E.D.Cal. 1997). Further, a
4 carefully drafted protective order could minimize the impact of
5 any disclosure. <u>Soto</u>, 162 F.R.D. at 616. Finally, where
6 disclosure is ordered, the scope of disclosure should be narrowly
7 circumscribed and specific, and should be permitted only to the
8 extent necessary for a fair resolution of the lawsuit. <u>Cook v.</u>
9 <u>Yellow Fright System, Inc.</u>, 132 F.R.D. 548, 552 (E.D.Cal. 1990),
10 overruled on another point, <u>Jackson v. County of Sacramento</u>, 175
11 F.R.D. 653, 654 (E.D.Cal. 1997).

12      Here, the Plaintiff needs the evidence to investigate a
13 motive or practice concerning unnecessary procedures, which in
14 turn would be relevant to the material issue of deliberate
15 indifference on the Eighth Amendment claim and to issues of
16 liability on the other claims. <u>Compare</u>, <u>Allen v. Woodford</u>, 2007
17 WL 309485, *6-7 (E.D.Cal. 2007) (concluding that where alleged
18 abuse of medical treatment for financial gain was alleged,
19 comparable medical records for third parties and financial
20 records for the procedures were an opportunity to show deliberate
21 indifference by pattern and practice of medical abuse). The
22 privacy interests can be protected by redaction, which Plaintiff
23 has already requested be effected, and by a protective order.

24      With respect to a protective order, the Court notes that
25 there is a protective order in this case. (Doc. 33, filed
26 September 5, 2006.) However, the parties have raised concerns
27 concerning the adequacy of the order. The parties will be
28 directed to meet and confer within fifteen days of the date of

1  service of this order in order to determine any additional

2  provisions needed in a protective order; if the parties are

3  unable to resolve their differences with respect to the

4  protective order, then they will be directed to arrange for a

5  conference call with the Court.

6      Accordingly, the Court rejects Defendants' claim of a

7  privacy interest that would bar disclosure.

8              3. <u>HIPAA</u>

9      As previously discussed, HIPAA does not bar disclosure

10 where, as here, the court will order it pursuant to a discovery

11 request, and it appears that Defendants and/or any pertinent

12 healthcare provider can receive satisfactory assurance from the

13 party seeking the information that reasonable efforts have been

14 made to secure a qualified protective order. 45 C.F.R. §

15 164.512(e)(2004); <u>see</u>, <u>Hutton v. City of Martinez</u>, 219 F.R.D.

16 164, 167 (N.D.Cal. 2003) (concluding that where the resisting

17 party had attempted to obtain the information by subpoena and

18 discovery request, and where there was an adequate protective

19 order).

20     Accordingly, the Court rejects Defendant's contention that

21 HIPAA bars the discovery.

22     Further, the Court notes that Defendant's privilege log does

23 not list any documents withheld in response to this request.

24 Thus, objections on the basis of privilege appear to be waived.

25         4. <u>Vagueness, Overbreadth, Burden</u>

26     As noted hereinabove, with respect to these objections, the

27 objecting entity must state specifically how each question is

28 overly broad, unduly burdensome, or oppressive by submitting

affidavits or offering evidence revealing the nature of the
burden. Klein v. AIG Trading Group, Inc., 228 F.R.D. 418, 422
(D.Conn. 2005). Objections that are not sufficiently specific,
such as statements that requests are overly broad, burdensome, or
oppressive, are waived. Ramirez v. County of Los Angeles, 231
F.R.D. 407, 409 (C.D.Cal. 2005). The fact that complying with a
discovery request will involve expense or consumption of time
does not necessarily render it unduly burdensome. Jackson v.
Montgomery Ward & Co., 173 F.R.D. 524, 529 (D.Nev. 1997).

      Here, the objections are not sufficiently specific or
adequately explained. (Deft.'s Exs. to Jt. Stmt., Ex. A, pp. 6,
8.) Defendant merely made the unspecific assertion without
stating any explanation concerning the objections except for
specification of additional claims of protection based on
privilege, privacy, or statute. Without the objecting party's
reasons for the objections here, the Court overrules these
objections.

            B. <u>Documents concerning Other Patients' Treatment</u>

      Request number 15 is for "ALL DOCUMENTS RELATING TO ANY
patient who had a cystectomy, cone biopsy, oophorectomy, AND/OR
ANY other MEDICAL TREATMENT RELATING TO removal of ovarian cysts
AND/OR dysplasia." Plaintiff provided that personally identifying
information should be redacted for individuals whose
confidentiality is not covered by protective order or
stipulation. (Deft.'s Exhibits to Jt. Stmt., Ex. A, p. 8.)
Further, Plaintiff has limited the request to documents regarding
incarcerated patients only. (Whitney Decl. ¶ 2.)

      Defendant disputes the relevance of these documents.

Plaintiff argues that documents concerning incarcerated patients who received similar treatment to that of Plaintiff may show a pattern of Defendant's performing improper procedures, or of negligence or of Defendant's motives in intentionally removing Plaintiff's ovaries. These documents are generally discoverable for the reasons stated above concerning request 11.

Likewise, the analysis of privacy rights and HIPAA set forth with respect to request 11 also applies with respect to request 15.

Finally, there has been no specification sufficient to establish valid objections on the basis of overbreadth, vagueness, or undue burden.

Accordingly, the Court GRANTS Plaintiff's motion to compel further production by Defendant Ugwu-Oju.

IV. <u>Plaintiff's Motion to Compel Further Production of Documents by Defendants Suryadevara, Kruse, Reeves, and Goodwin</u>

Plaintiff's motion to compel further production of documents by the Defendant doctors was filed on February 5 and 7, 2007, and a joint statement regarding the discovery disputes was filed on March 6, 2007. On March 14, 2007, Defendants filed objections and a motion to strike the declaration of Todd Spencer, M.D., which had been submitted in support of the motion. On March 21, 2007, Plaintiff filed opposition to the objections and motion to strike. Defendants filed a reply on March 30, 2007. The hearing on the motion was vacated, and the matter was thereafter submitted to the Court for decision.

Plaintiff moves to compel further production of documents by Defendants Drs. Sampath Suryadevara, Loraine Goodwin, Shelly

Kruse, and Ernest Reeves in response to Plaintiff's first set of requests for production of documents (RPD's), which were served on the four doctors, referred to herein as the "CDCR Defendants," on November 13, 2006, and which contained sixteen requests that were identical for each Defendant.

On December 19, 2006, Plaintiff served subpoenas for production and inspection on the custodian of records at the California Department of Corrections and Rehabilitation (CDCR) and the custodian of records at the Central California Women's Facility (CCWF) seeking the same documents sought in the RPD's. On January 11, 2007, the CDCR Defendants filed a motion to quash the subpoenas and/or for a protective order; on January 16, the motion was withdrawn.

On January 8, 2006 the CDCR Defendants each served their responses and objections to the RPD's. Plaintiff states that only Defendant Reeves produced any documents, which consisted of 112 documents in response to three of the sixteen requests. None of the defendants have produced any documents requested in the RPD's for documents involving contracts, investigations, complaints about medical care; relating to policies, procedures and protocols used by contracting physicians in treating inmates of CCWF; and being used for reviewing the care rendered and bills submitted by contracting physicians generally, and Dr. Ugwu-Oju specifically, regarding plaintiff Kelli Thomas and other inmates of CCWF.

After the exchange of numerous letters and telephone conversations between the parties, on February 2, 2007, the CDCR Defendants filed supplemental responses to Plaintiff's RPD's,

23

1 which produced no new documents or agreement to produce, but
2 which stated:

> Without waiving previously asserted objections to this
> request, responding parties respond as follows:
> Responding parties, sued in their individual
> capacities, have no legal right to the documents
> requested and thus have no documents in their
> possession, custody or control responsive to this
> request.

7     Following the receipt of the supplemental responses,
8 Plaintiff and Defendants exchanged a series of letters and
9 contacts explaining their respective positions.

10     Defendants mount numerous objections to the motion to compel.
11 Defendants allege that none has possession, custody or control of
12 the documents requested, that the state of California is immune
13 from subpoenas under the Eleventh Amendment, that the documents
14 belong to the state and Defendants have no authority to produce
15 them, the documents are available from another source, are
16 protected under the California Constitution and California
17 Evidence Code § 1040, the U. S. Constitution, federal common law
18 of privacy and the federal Privacy Act, deliberative process
19 privilege, work product privilege, and attorney-client privilege
20 along with boilerplate objections. The primary objection is that
21 the defendants do not have possession, custody or control of the
22 documents requested.

23          A. Eleventh Amendment

24     Defendants' objections based on the Eleventh Amendment are
25 not well taken. This action proceeds against Defendants in their
26 individual capacities, and thus the action is not against the
27 state. The Court further relies on the analysis of the application
28 of principles of immunity provided by the Eleventh Amendment that

1  is set forth above in connection with Plaintiff's motion regarding

2  subpoenas to non-party officers of the state. Here, a requirement

3  that state officers produce documents does not raise the

4  possibility of a judgment against the state that would have to be

5  paid from its treasury. Defendants have no Eleventh Amendment

6  immunity from their obligation to respond to the discovery

7  requests.

8         B. <u>Lack of Possession, Custody, or Control</u>

9         Defendants contend in their responses that they are not in

10  possession, custody or control of the documents. Defendants also

11  supplemented their responses alleging that they are being sued in

12  their individual capacities and have no legal right to the

13  documents requested and thus have no documents in their custody,

14  possession, or control that are responsive to the requests.

15         The requested documents include documents relating to any

16  contracts or potential contracts or agreements or possible

17  agreements or negotiations between the CDC or CCWF and Dr. Oju

18  relating to the provision of medical services for the CDC, between

19  the CDC or CCWF and Madera relating to the provision of medical

20  services at Madera, or between Dr. Oju and Madera relating to the

21  provision of medical services at Madera; relating to complaints

22  made by any person regarding Dr. Oju, including but not limited to

23  his medical treatment, and to investigations of Dr. Oju, including

24  of his medical treatment and/or billing practices by the state

25  medical board, CDC, or any other agency of the office; all

26  documents relating to the CDC's written policies, procedures, or

27  protocols relating to prisoner medical care, to the contracting of

28  physicians for the purpose of providing medical services to

25

prisoners, for reviewing the medical care rendered by physicians contracting with the CDC or by Dr. Oju, for reviewing the medical bills submitted by physicians contracting with the CDC and/or those who are members of the panel of approved providers or submitted by Dr. Oju; documents relating to bills submitted by Dr. Oju for cystectomies, cone biopsies, cophorectomies, and/or any medical treatment relating to removal or treatment of ovarian cysts and dysplasia, and for treatment of Plaintiff; all documents relating to Plaintiff's medical treatment, to requests for medical treatment by Plaintiff and the CDC's response, if any, to such requests; and all documents relating to representations by the CDC relating to whether Plaintiff's ovaries were removed. (Jt. Stmt., Ex. S.)

Defendants have stated under oath that they have no documents in their possession, custody or control that are responsive to any of the requests. Defendants are doctors who were involved in Plaintiff's medical care at CCWF while employed by the CDCR. Dr. Reeves and Dr. Kruse treated Plaintiff at CCWF and are still employed there as physicians. Dr. Reeves provided some of Plaintiff's medical records in response to the request, but he did not provide any other types of documents beyond records from Plaintiff's own medical file to which Plaintiff herself could have access. Dr. Oju, a surgeon at Madera Community Hospital who contracts with CDCR through his medical group to provide services to inmates at CCWF, performed a surgery on Plaintiff at Defendant Madera Community Hospital. Dr. Goodwin treated Plaintiff at CCWF but is no longer an employee of the CDCR. Dr. Suryadevara is still employed by CDCR but no longer works at CCWF, where Plaintiff is

housed; from about 2003 until recently, Dr. Suryadevara was Chief Medical Officer of CCWF, responsible for the medical care of CCWF inmates and supervisor of all CCWF medical staff, including the Defendants Kruse, Goodwin, and Reeves. (Jt. Stmt., pp. 9-14; Exs. P, Q.)

Defendants have attached to their reply to the opposition to their motion to strike a declaration from Defendant Dr. Suryadevara "in an attempt to informally resolve this motion and to assist the court in deciding this motion, even though Dr. Suryadevara is not an executive of the CDCR and has not been ordered by the court to submit a declaration."

The governing standards are established. Rule 34 requests may be used to inspect documents, tangible things, or land in the possession, custody, or control of another party. The party seeking production of documents bears the burden of proving that the opposing party has such control. United States v. International Union of Petroleum and Indus. Workers, AFL-CIO, 870 F.2d 1450, 1452 (9th Cir. 1989). Property is deemed within a party's possession, custody, or control if the party has actual possession, custody, or control thereof, or the legal right to obtain the property on demand. In re Bankers Trust Co., 61 F.3d 465, 469 (6th Cir. 1995) (documents prepared by Federal Reserve and bank during bank examination were subject to discovery despite Federal Reserve's ownership of documents, in light of apparent relevance of documents and fact that bank had possession of documents). A party having actual possession of documents must allow discovery even if the documents belong to someone else; legal ownership of the documents is not determinative. In re

1 | Bankers Trust Co., 61 F.3d at 470 (Federal Reserve regulations

2 | prohibiting disclosure of confidential documents in party's

3 | possession held invalid when conflicting with discovery order).

4 | "Control" need not be actual control; courts construe it

5 | broadly as "the legal right to obtain documents upon demand."

6 | United States v. Int'l Union of Petroleum & Indus. Workers, 870

7 | F.2d 1450, 1452 (9th Cir. 1989) (Ninth Circuit refused to compel

8 | an international union to produce documents belonging to local

9 | union affiliates in response to a subpoena where the international

10 | union did not have physical possession of the documents); Scott v.

11 | Arex, Inc., 124 F.R.D. 39, 41 (D.Conn.1989) (party controls

12 | document if it has right, authority, or ability to obtain

13 | documents on demand).

14 | "Legal right" is evaluated in the context of the facts of

15 | each case. In re Folding Carton Antitrust Litig., 76 F.R.D. 420,

16 | 423 (D.Ill. 1977). The determination of control is often fact-

17 | specific. Central to each case is the relationship between the

18 | party and the person or entity having actual possession of the

19 | document. Estate of Young v. Holmes, 134 F.R.D. 291, 294

20 | (D.Nev.1991). The requisite relationship is one where a party can

21 | order the person or entity in actual possession of the documents

22 | to release them. Id. This position of control is usually the

23 | result of statute, affiliation or employment. Id.; In re Citric

24 | Acid Litig. (9th Cir. 1999) 191 F.3d 1090, 1107 (court cannot

25 | order production of documents held by a separate legal entity,

26 | where requested party is not in actual possession or custody of

27 | the documents).

28 | "Control" may be established by the existence of a principal-

28

1   agent relationship. In <u>Rosie D. v. Romney</u>, 256 F.Supp.2d 115, 119
2   (D.C.Mass.2003), defendant state officials were required to
3   produce documents that were in the possession of non-party
4   agencies. The state's Division of Medical Assistance (MDA)
5   delegated the delivery of health services to several entities that
6   in turn were authorized to engage subcontracted service providers.
7   MDA's contracts required these entities to maintain books and
8   records and gave MDA the right to examine and copy these records.
9   There was little doubt, in light of these contractual provisions,
10  that the state officials had the right to control and obtain the
11  documents that were in the possession of the non-parties. In <u>Clark
12  v. Vega Wholesale Inc.</u>, 181 F.R.D. 470 (D. Nev. 1998), Vega sought
13  discovery on Clark's allegations of physical injury by requesting
14  Clark's medical records and sought to compel Vega to execute a
15  medical release. The court denied Vega's motion, finding that
16  Clark did not have control over the records.

17      Here, unlike the situation in <u>Allen v. Woodford</u>, CV-F-05-
18  1104-OWW-LJO, E.D.Cal. 2007, discussed by the parties, there is no
19  indication that the documents requested in the RPD's, which
20  involved contracts, investigations, complaints of medical care, or
21  the policies for reviewing billings from contract physicians would
22  necessarily be within the possession, custody or control of
23  individual Defendants Drs. Kruse, Reeves or Goodwin, in the course
24  of their employment relationship. The defendants in <u>Allen</u> in their
25  official capacities were the Director of the CDCR (Woodford), the
26  Acting Director of the CDCR (Rimmer), the Deputy Director of
27  Health Care Services of the CDCR (Campbell), and the Warden of the
28  CCWF (Mitchell). The only defendant in common in the two cases is

1   Dr. Suryadevara, who was the Chief Medical Officer of the CCWF.

2        Pursuant to the discussion in _Allen v. Woodford_, it is

3   apparent that defendants Dr. Goodwin (former staff doctor at

4   CCWF), Dr. Reeves (gynecologist at CCWF) and Dr. Kruse (staff

5   physician at CCWF) were or are not in a position with job duties

6   or authority such that it may be reasonably concluded that their

7   employment relationship would give rise to their actual

8   possession, custody, or control, or the legal right to obtain

9   control of, documents involving the negotiation or drafting of

10  contracts between the CDCR or CCWF and outside physicians;

11  investigations and/or complaints of medical care involving the

12  CCWF and the inmates of the CCWF; the arrangement or review of the

13  payment of invoices of outside doctors; or the formulation,

14  drafting, revising, or maintaining of the CDCR's or CCWF's

15  policies and procedures for inmate medical care. Defendants

16  represented in correspondence that Drs. Reeves and Kruse could

17  only access hard copies of an inmate's medical records upon

18  request, solely for the purpose of treating an inmate, and not for

19  any other purpose. (Exs. in Supp. of Jt. Stmt., Ex. Q, p. 3.)[1]

20       Contrary to the circumstances in _Allen_, none of the documents

21  previously produced by Dr. Reeves suggests that he has possession,

22  custody or control of documents other than medical records

23  reflecting his own treatment of his patients; likewise, the

24  matters before the Court do not reflect that Dr. Reeves has a

25  _right_ to obtain medical records other than the records of his own

26

27  ――――――――――――――

28  [1]ngement The Court notes that there is no comprehensive declaration from any of the Defendants describing their duties and their access to and authority over any of the records requested; only Dr. Suryadevada has submitted a declaration, and it addresses only his knowledge of who the custodians of the records are.

treatment. With the exception of Dr. Suryadevada, the Defendants are not persons who are even arguably officials or executives of the agencies with ultimate authority or control over the CDCR and/or the CCWF.

Only Dr. Suryadevara, as former Chief Medical Officer of CCWF, could arguably be or have been in a position to provide some of the requested information. However, the doctor is no longer employed at CCWF, where Plaintiff is housed. It has not been shown that Dr. Suryadevara retains any authority of any type over the facility or over the arrangements, relationships, and processes that constitute the subject matter of the documents requested. Further, it has not been shown that merely by virtue of his former employment as a medical doctor and supervisor he is in a position to obtain documents over which he states he has no control or custody. The nature of his present status, and the extent of the trust and authority extended to him within the CDCR, are only matters of speculation.

However, as Allen v. Woodford instructs, as a party he does have an obligation in good faith to cooperate in the acquisition of this discovery by Plaintiff. In that regard, Defendants provided a declaration of Dr. Suryadevara with their Reply to Plaintiff's Opposition to the Motion to Strike (Doc. 78). The doctor states that it was provided "in an attempt to informally resolve this motion and to assist the court in deciding this motion, even though Dr. Suryadevara is not an executive of the CDCR and has not been ordered by the court to submit a declaration." It appears that Defendants are seeking to aid the resolution of this dispute without an order to provide a

1 declaration like the one required in <u>Allen</u>.[2]

2      Dr. Suryadevara's declaration responds to every request but
3 16 in some manner. He provided the names of the custodian of
4 records, insofar as he knew them, to requests 1, 2, 3, 6, 7, 8,
5 and 9, which requested documents regarding contracting of CDC and
6 CCWF with Dr. Ugwu-Oju and with Madera Community Hospital, and
7 contracting between Madera Community Hospital and Dr. Ugwu-Oju, as
8 well as the written policies, procedures, and protocols dealing
9 with these contracting functions.

10      The declaration also provides the name of the custodian of
11 records, insofar as Dr. Suryadevara knew it, with respect to
12 additional documents: (a) Requests 4, 10, 11, 12, and 13 -
13 documents regarding complaints about medical treatment and
14 billings by Dr. Ugwu-Oju, and procedures, policies and protocols
15 for reviewing bills of contracting physicians generally and Dr.
16 Ugwu-Oju specifically; and policies, procedures and protocol for
17 reviewing bills for specific procedures as well as bills for the
18 treatment of Plaintiff; (b) Request 8 - documents regarding CDC
19 policies, procedures, or protocols for reviewing care rendered by
20 contracting physicians; (c) Request 14 - all documents relating to

21 _____

22      [2]In <u>Allen,</u> the defendants had already produced documents responsive to
the requests for contract documents, and the court determined that this
23 established that the CDCR defendants have possession, custody or control of
some of the responsive documents. The officials were required to provide the
24 information requested, and if they themselves were not the custodians of the
requested records, they were required to provide the information via
25 declaration as to who has custody, possession or control of the documents.
This declaration was to be provided by the supervisor/s of the named
26 individual defendants explaining the issue of access, who had access, the
statute or written policy relied upon as to access, under what circumstances
26 access was granted, the process for getting access, and why the process did
not allow access by the defendants. Upon reconsideration, the Court's order
27 was amended to require the parties themselves to provide declarations
regarding their knowledge and understanding of the appropriate source or
28 custodian of the needed documentation.

1  the medical treatment of Plaintiff; and (d) Request 15 - requests

2  for medical care from the CDC by Plaintiff and the CDC responses

3  to these requests. As to request 5, which asks for documents

4  regarding the investigation into Dr. Ugwu-Oju's treatments and

5  billing practices by the State Medical Board, the CDC or any

6  agency, Dr. Suryadevara responded that he believed no documents

7  responsive to this request existed.

8      Accordingly, the Court concludes that Defendants cannot be

9  compelled to produce the documents in question because based on

10 the evidence presently before the Court, it has not been

11 established that they have possession or control, or the right to

12 control and obtain, the documents requested.

13     However, the Court notes that Dr. Suryadevara, the former

14 chief medical officer, has stated who the general custodian of

15 numerous records is believed to be. It appears that Dr.

16 Suryadevara has extensive knowledge with respect to the custody

17 and control of many of the records in question. It is in the

18 interest of efficient discovery for Plaintiff to proceed to

19 attempt to obtain the records from these custodians.

20     Further, when the parties meet and confer concerning other

21 matters referred to in this order, the parties will be directed to

22 meet and confer in good faith to determine what arrangements, if

23 any, can be made to facilitate the production of the requested

24 discovery. If the parties cannot facilitate this production, they

25 will be directed to arrange a telephonic conference call with the

26 Court.

27         C. Privacy

28     With respect to request 4, which seeks all documents relating

33

to complaints made by any persons regarding Dr. Oju, including but
not limited to his medical treatment and medical billing,
Defendants argue that the federal common law right to privacy and
the Federal Privacy Act prevent disclosure.

Complaints regarding Dr. Oju might show that there was a
pattern of performance of improper procedures, negligence, motive,
and/or whether the CDCR had prior notice of Dr. Oju's performing
improper medical procedures. These matters concern the heart of
the Plaintiff's case. With respect to privacy, whether the
physicians' own or the interest of a patient in one's own medical
records, the need for the information outweighs any privacy
concern, particularly where as here the Plaintiff has agreed to
redaction of identifying information (names, CDCR numbers) of
third parties not covered by the protective order. (Ex. A, p. 5,
ll. 5-8.) Further, CDCR Defendants could mark the documents as
confidential and thereby further protect them.

With respect to HIPAA, as previously noted, there is no bar
to disclosure here where a protective order has been sought.
Further, it is questionable whether the information is even
subject to the statute because of the redaction. See, 42 U.S.C. §
1320d(6).

Defendants argue that Cal. Civ. Code § 1798 et seq., the
Information Practices Act, prevents disclosure of information
maintained by an agency that identifies an individual, including
his or her medical history. However, even if redacted records
qualified as protected matter under the statute, § 1798.24(k)
provides that the protected information may be disclosed to any
person pursuant to a subpoena, court order, or other compulsory

34

legal process if, before the disclosure, the agency reasonably
attempts to notify the individual to whom the record pertains and
such notification is not prohibited by law. It thus does not
appear that there is any ultimate barrier to disclosure.

D. <u>Privilege</u>

With respect to requests 4 and 5, seeking all documents
relating to complaints made by any persons regarding Dr. Oju,
including but not limited to his medical treatment and medical
billing, and further relating to all investigations of Dr. Oju or
his medical treatment and/or billing by the state medical board,
the CDC, or any other agency, Defendants argue that Cal. Evid.
Code § 1040 and the federal official information privilege prevent
disclosure.

As previously noted, state privilege law does not inform or
govern the application of federal privilege law.

With respect to the qualified federal official information
privilege, the Court will not proceed to determine whether the
potential benefits of disclosure of any regulatory or governmental
personnel files or disciplinary records will outweigh the
potential disadvantages. <u>See</u>, <u>Sanchez v. City of Santa Ana</u>, 936
F.2d 1027, 1033-34 (9th Cir. 1990). This is because the Defendants
have not made the threshold showing, required at the time the
response to the discovery request is filed and/or served, that the
agency has generated or collected the material and maintained its
confidentiality and a government official has personally reviewed
the material; further, the claimant must show a specific
governmental or privacy interest that would be threatened by

1  disclosure is identified, set forth a description of how

2  disclosure subject to a carefully crafted protective order would

3  create a substantial risk of harm to a significant interest; and

4  an estimate of how much harm would be done if disclosure occurred.

5  Miller v. Pancucci, 141 F.R.D. 292, 300 (C.D.Cal. 1992).

6  Defendants did not provide a declaration and made only generalized

7  assertions of harm. Further, Defendants did not provide a

8  privilege log with respect to this request, and thus any claim of

9  privilege is waived. See, Burlington Northern & Santa Fe Ry. Corp.

10 v. United States District Court, 408 F.3d 1142, 1149 (9th Cir.

11 2005) (holding that boilerplate objections or blanket refusals

12 inserted in a response to a Rule 34 request for production of

13 documents are insufficient, and a privilege may be deemed waived

14 in light of all pertinent circumstances where the privilege log is

15 untimely served and does not show whether the withheld documents

16 are privileged).

17     Defendants also claimed a deliberative process privilege

18 generally but not with respect to any specific request. This

19 protection is for documents reflecting advisory opinions,

20 recommendations and deliberations comprising part of a process by

21 which government decision and policies are formulated. Dept. of

22 Interior & Bureau of Indian Affairs v. Klamath Water Users

23 Protective Ass'n, 532 U.S. 1, 8 (2001). The privilege is based on

24 the fact that officials will not communicate candidly among

25 themselves if each remark is discoverable; the policy is to

26 enhance the quality of agency decisions by protecting open and

27 frank discussion among those who make them within the government.

28 Id. However, the qualified, common law executive privilege must be

asserted by 1) making a formal claim of privilege by the head of the department that has control over the requested information after personally considering the material; 2) explaining by affidavit or declaration the need for preserving the confidentiality of the material; and 3) providing a detailed explanation of each withheld document. <u>Landry v. F.D.I.C.</u>, 204 F.3d 1125, 1135 (9th D.C.Cir. 2000).

At this point, Defendants have averred that there are no documents responsive to this request. There has been no proper claiming of the privilege. The Court concludes that at present, no privilege has been established.

Defendants produced a privilege log with respect to only three requests, namely 14, 15, and 16 (all documents relating to Plaintiff's medical treatment by the CCWF, all of Plaintiff's requests for medical treatment and the CDC's responses to such requests, and all documents relating to representations by the CDC relating to whether or not Plaintiff's ovaries were removed). Defendants claim attorney-client privilege and work product protection regarding "correspondence, facsimile transmission cover sheets, and memoranda between defendants' attorneys, Jim Amis, Litigation Coordinator at CCWF and defendant." The privilege logs are set forth on pages 94, 95, 102, 103, 107, and 108 of the Joint Statement re: Discovery Dispute filed on March 6, 2007.

Plaintiff correctly contends that the privilege logs are inadequate to permit the Court's assessment of the applicability of any privilege or protection. As noted hereinabove, Fed. R. Civ. P. 26(b)(5)(A) provides that when a party withholds information otherwise discoverable under the rules by claiming that it is

privileged or subject to protection as trial-preparation material,
then the party shall make the claim expressly and shall describe
the nature of the documents, communications, or things not
produced or disclosed in a manner that will enable other parties
to assess the applicability of the privilege or protection without
revealing the privileged or protected information itself. In order
to assist a court in determining a claim of privilege, a court may
require an adequately detailed privilege log in conjunction with
evidentiary submissions to fill in any factual gaps. United States
v. Construction Products Research, Inc., 73 F.3d 464, 473 (2d Cir.
1996), cert. denied, 519 U.S. 927, (1996); see also, Allen v.
Woodford, 2007 WL 309485, *4 (E.D.Cal. 2007), aff'd, Allen v.
Woodford, 2007 U.S. Dist. Lexis 24345 (E.D.Cal. 2007). With
respect to each document as to which a privilege is claimed, the
person claiming the privilege should include in the privilege log
the document's general nature and description, including its date,
the identity and position of the author, and the identity and
position of all addressees and recipients; the present location of
the document; and the specific reasons it was withheld, including
the privilege invoked and the grounds therefor. Allen v. Woodford,
2007 WL 309485, *4 (citing Construction Products, 73 F.3d at 473-
74, and In re Grand Jury Investigation, 974 F.2d 1068, 1071 (9th
Cir. 1992)).

Further, the Court declines to find a waiver from the
privilege log previously submitted. In view of the importance of
the privileges in question, the Court will grant the Defendants
forty-five days in which to create and serve a privilege log. The
Court informs Defendants that it is only with respect to

voluminous documents that a document-by-document log may not be required. See, Schwarzer, Tashima, and Wagstaffe, California Practice Guide: Federal Civil Procedure before Trial, § 11:795 (2007); Adv. Comm. Notes to 1993 Amendments to Fed. R. Civ. P. 26(b).

### E. Relevance

Documents concerning negotiation of contracts between Dr. Oju and CDC or CCWF, and the contracts between the doctor and the institutions, will reveal the identity of caretakers and the terms that governed the care; they may reveal a history of problems or a motive to perform a more invasive procedure than was necessary. Policies for providing and reviewing medical care might shed light on the quality of care actually rendered and any investigations of any Defendant's conduct. Any policies or protocols concerning review of Dr. Oju's medical treatment might reveal the motives or reasons for his conduct, and might indicate knowledge or negligence on the part of the hospital. It does not appear that an updated list of such policies is publicly available. Policies and procedures for reviewing medical bills submitted by contracting physicians might reveal a motive for the treatment in this case or a pattern of misconduct. Investigations of Defendant Oju's treatment and billing, as well as documents relating to the billing itself, might reveal a pattern of misconduct or knowledge thereof.

### F. Burdensome Request

Defendants argue with respect to many of the records requested that the documents are equally available to Plaintiff. However, Defendants have not shown the public availability of all

1  the documents, and Defendants have not made a specific, detailed

2  showing that the burden or expense of producing the documents

3  outweighs the need for them or their likely benefit. See, Natural

4  Resources Defense Council v. Curtis, 189 F.R.D. 4, 13 (D.D.C.

5  1999). Likewise, the fact that some of the documents might be

6  possessed by Plaintiff or be available to Plaintiff or the public

7  is not a basis for refusing to produce documents that are

8  otherwise discoverable. See, 6 James Wm. Moore et al., Moore's

9  Federal Practice, § 26.41[13] 3d ed. 2006); Weiner v. Bache Halsey

10  Stuart, Inc., 76 F.R.D. 624, 625 (S.D.Fla 1977).

11       Further, Defendants argue that the requests are excessive

12  because they are not limited in time. However, Defendant did not

13  designate a reasonable time period and scope limitation and then

14  produce documents accordingly. Further, Plaintiff agreed to limit

15  the request to documents created and/or received within the last

16  ten years. (Jt. Stmt. p. 32.)

17       V. Motion to Strike Declaration of Todd Spencer, M.D.

18       On March 14, 2007, the CDCR Defendants filed a motion to

19  strike the declaration of Todd Spencer, M.D., which was submitted

20  by Plaintiff in the initial motion. In the declaration, Dr.

21  Spencer, a radiologist who asserted that he was familiar with the

22  procedures used by radiologists in his office to create imaging

23  reports of prisoners of CCWF who were patients, and who declares

24  that the images and reports are returned to the prison without any

25  copy being owned or retained by the office. CDCR Defendants

26  objected to the declaration, contending, generally, that the

27  declaration was not timely, and that it is irrelevant because the

28  subject matter does not include as an issue whether or not the

CDCR or CCWF have control or custody over medical records or radiology films. The first paragraph of the Declaration, a one-page document, reads as follows:

> I am employed by Todd Spencer, M.D., Medical Group, Inc. ("Medical Group") as a radiologist in their office located at 1100 Almond Ave., Suite 101 in Madera, California.  As part of my job duties, I am required to be familiar with the procedures in which radiologists in my office create Imaging Reports for patients who are prisoners at the Central California Women's Facility.  I have personal knowledge of the facts attested to in this declaration, and if called upon to do so, could and would testify competently thereto.

The foregoing paragraph is six lines of this document which has eighteen lines of text. The remaining lines are specifically objected to line by line on many grounds, including generally lack of foundation/personal knowledge, hearsay, and impermissible opinion. The Court concludes that it should be stricken as irrelevant and immaterial.

In summary, the Court concludes that Plaintiff's motion to compel Defendants Kruse, Goodwin, Reeves, and Suryadevara to produce further documents IS DENIED.

Accordingly, it IS ORDERED that

1) Plaintiff's motion to compel non-parties to produce documents pursuant to Fed. R. Civ. P. 45 IS GRANTED; and

2) Plaintiff's motion to compel further production of documents by Dr. Ugwu-Oju IS GRANTED; and

3) Plaintiff's motion to compel Drs. Suryadevara, Kruse, Reeves, and Goodwin to produce further documents IS DENIED; and

4) Defendants' motion to strike the declaration of Dr. Todd Spencer IS GRANTED; and

5) The parties ARE DIRECTED to meet and confer in good faith

1   within fifteen days of service of this order to determine any

2   additional provisions needed in a protective order, and if the

3   parties are unable to resolve their differences with respect to

4   the protective order, then they ARE DIRECTED immediately

5   thereafter to arrange for a conference call with the Court by

6   calling Harriet Herman at 499-5692; and

7       6) Defendants ARE DIRECTED to create and serve on Plaintiff

8   no later than forty-five days after the date of service of this

9   order an adequate privilege log in conformity with the standards

10  set forth above.

11  IT IS SO ORDERED.

12  **Dated:     December 5, 2007**              **/s/ Sandra M. Snyder**
                                        UNITED STATES MAGISTRATE JUDGE

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28