1

2

3

4

5

6

7

8

9              IN THE UNITED STATES DISTRICT COURT FOR THE

10                     EASTERN DISTRICT OF CALIFORNIA

11

12    KELLI THOMAS,                        )     1:06-CV-0215 AWI SMS
                                           )
13                      Plaintiff,         )     MEMORANDUM OPINION AND
            v.                             )     ORDER ADDRESSING
14                                         )     DEFENDANT'S MOTION FOR
      RODERICK HICKMAN, et al.,            )     SUMMARY JUDGMENT
15                                         )
                        Defendants.        )     (Doc. #183)
16    _____  )

17

18          Plaintiff Kelli Thomas, an inmate at the Central California Women's Facility ("CCWF"),

19    filed civil rights actions pursuant to 42 U.S.C. § 1983 against prison medical staff, a private

20    doctor, and private hospital.   The court has jurisdiction over Plaintiff's civil rights causes of

21    action pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law causes of

22    action pursuant to 28 U.S.C. § 1367.   Because the events underlying this action took place at

23    CCWF and Madera Community Hospital, venue in this court is appropriate.   Pending before the

24    court is Defendant Charles Ugwa-Oju's motion for summary judgment.

25    //

26    //

27    //

28

On November 9, 2006, Plaintiff filed a corrected first amended complaint ("complaint"). The first cause of action alleges a violation of the Eighth Amendment, pursuant to 42 U.S.C. § 1983. The second cause of action alleges a violation of the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983. The third cause of action alleges violation of Article 1, Section 17 of the California Constitution. The fourth cause of action alleges a violation of Article 1, Section 7 of the California Constitution. The fifth cause of action alleges professional negligence against Defendant. The sixth cause of action alleges failure to obtain informed consent. The seventh cause of action alleges civil battery. The eighth cause of action alleges intentional infliction of emotional distress. The ninth cause of action alleges intentional deceit/fraud by Defendant. The tenth cause of action alleges negligent misrepresentation by Defendant.

On September 26, 2008, Defendant Ugwa-Oju (hereinafter "Defendant") filed a motion for summary judgment. Defendant contends that Plaintiff's civil rights causes of action are time-barred. Defendant further contends the first cause of action fails because Defendant was not deliberately indifferent to Plaintiff's serious medical needs. Defendant contends he did not violate Plaintiff's due process rights because Plaintiff consented to the procedure knowing it might affect her ability to have children. Defendant contends the third and fourth causes of action for violation of Article 1, Section 17, and Article 1, Section 7 of the California Constitution should be summarily adjudicated. Defendant contends the fifth cause of action is time-barred by California's one-year/three-year statute of limitations on actions against a health care provider. In the alternative, Defendant contends he met or exceeded the applicable standard of care in the care and treatment of Plaintiff and did not cause Plaintiff's injuries. Defendant contends Plaintiff's sixth cause of action for failure to obtain consent should be summarily

---

[1] California Department of Correction ("CDC") employees and Madera Community Hospital were also named as Defendants in this action. On July 21, 2008, Plaintiff dismissed all Defendants other than Defendant Ugwa-Oju. Thus, the causes of action against other Defendants and background information pertaining to other Defendants have been omitted.

adjudicated because it was not timely filed, and Defendant obtained Plaintiff's informed consent. Defendant contends summary adjudication as to the seventh cause of action for battery should be granted because the action is untimely, and Defendant did not deviate from Plaintiff's consent. Defendant contends the eighth cause of action for intentional infliction of emotional distress should be summarily adjudicated because it was not timely filed, and Defendant's actions were not extreme or outrageous as a matter of law. Defendant contends that because Defendant did not intentionally deceive Plaintiff, and her reliance on statements allegedly made by Defendant was not justified, Plaintiff's ninth cause of action for intentional deceit/fraud should be summarily adjudicated. Furthermore, Defendant contends summary judgment should be granted as to the tenth cause of action for negligent misrepresentation because Plaintiff's action was not timely filed, and she was not justified in relying on Defendant's alleged misrepresentations.

On October 10, 2008, Plaintiff filed an opposition to Defendant's motion for summary judgment or, alternatively, summary adjudication. Plaintiff contends her claims are not time-barred. Plaintiff contends Defendant's conduct of willfully performing a bilateral salpingo-oophorectomy without adequate informed consent constitutes deliberate indifference to an excessive risk to Plaintiff's reproductive health in violation of the Eighth Amendment. Plaintiff contends Defendant violated Plaintiff's Fourteenth Amendment right to procreate by performing a bilateral salpingo-oophorectomy to which she did not consent. Plaintiff contends Defendant violated the standard of care by performing a medically unnecessary surgery that left Plaintiff functionally surgically castrated. Plaintiff contends Defendant did not obtain Plaintiff's informed consent, and Defendant committed a battery by performing a procedure to which Plaintiff did not consent. Plaintiff contends Defendant intentionally caused Plaintiff emotional distress by functionally castrating her and then misleading her about the surgery. Plaintiff contends Defendant is not entitled to summary adjudication on Plaintiff's fraud claim. Further, Plaintiff contends summary adjudication of Plaintiff's negligent misrepresentation claim is improper.

On October 20, 2008, Defendant filed a reply brief.

**STATEMENT OF UNDISPUTED FACT[2]**

Plaintiff is, and was, at all relevant times herein, incarcerated at CCWF in Chowchilla, California.  Plaintiff expects to be released from prison between February 21, 2009 and March 9, 2009.

Prior to the date of Plaintiff's surgery, Defendant saw Plaintiff just once, on February 9, 2001, for between five and ten minutes.    Plaintiff complained of chronic pelvic pain of more than six months in duration.  Defendant consulted with Plaintiff regarding the need for surgery to remove the cysts on her ovaries.  Defendant consulted with Plaintiff about the possibility that there may be minimal ovarian tissue after the surgery.   The parties dispute whether Defendant explained to Plaintiff what "minimal ovarian tissue" meant.

Defendant's recommendation that Plaintiff undergo surgery was made, at least in part, to relieve Plaintiff's chronic pelvic pain.

There is a disputed issue of fact on whether prior to her surgery Plaintiff told Defendant that she wanted to have more children after her release from prison.  Both Plaintiff and Defendant testified that Plaintiff did not tell Defendant that she wanted more children.  See Thomas Depo. at 72-73; Oju Depo. at 81-82.  However, in his answer Defendant concedes "that in a pre-surgery consultation, Plaintiff discussed her desire to have more children", see Answer ¶ 104, and admits "that he knew that Plaintiff wanted to have more children."  see Answer ¶ 110. On this motion for summary judgment, the court must consider the pleadings, which include the answer, to determine if there are any genuine issues of material fact.  See Fed.R.Civ.P. 56(c). Because the court cannot weigh the evidence nor assess credibility and all justifiable inferences are to be drawn in the opposing party's favor, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986), the court finds Defendant's admission in the answer is sufficient to create a disputed issues of material fact regarding whether Plaintiff told Defendant she wanted more children.

Plaintiff understood that she might not be able to have children after the surgery *if* the

---

[2]  These undisputed facts are deemed undisputed for the purposes of this motion only.

4

cone biopsy showed cancer.  See Thomas Depo. at 69-71.[3]  She knew there was a risk that Defendant might have to perform a hysterectomy or partial hysterectomy if Defendant found cancer during her surgery.   Plaintiff knew that a partial hysterectomy meant she would retain at least part of her uterus and ovaries.  Plaintiff knew that a full hysterectomy would remove the uterus and both ovaries, in which case she would not be able to have children in the future.

Defendant performed surgery on Plaintiff on April 5, 2001.

After arriving at Madera Community Hospital on April 5, 2001, and prior to surgery, Plaintiff read and acknowledged she understood the consent form, had the medical procedures adequately explained to her, had a chance to ask questions, and received all the information she desired about the medical procedures.  Plaintiff signed her name to the consent form authorizing a laparotomy, bilateral ovarian cystectomies, and a cone biopsy of the cervix.   The consent form did not mention an oophorectomy or salpingectomy.   Defendant testified at his deposition that he did not think Plaintiff wanted anything to be done except what was listed on the form.  See Oju Depo. at 102.

At her deposition, Plaintiff was asked why, when Plaintiff gave Defendant authority to exercise his discretion about how much of the cervix and uterus to remove based on the amount of cancer that he found, she did not give Defendant this same discretion and judgment relative to the ovaries.[4]  See Thomas Depo. at 75.   In response, Plaintiff indicated that she probably would have asked more questions about the surgery and about other treatments because Plaintiff had

---

[3] Defendant failed to indicate in his proposed undisputed facts that Plaintiff's understanding about being unable to have children after surgery was limited to Defendant's finding of cancer.

[4] Defendant's mis-characterization of the question actually asked during Plaintiff's deposition is difficult to reconcile with the one found in Defendant's statement of undisputed facts.  Despite Defendant's insistence that Plaintiff never testified she would not have consented to the surgery if she had understood that her ovaries might be removed, Plaintiff was never asked this question.  The question posed and answer is cited above.

5

heard of other treatments for cysts.[5]  See id.  When specifically asked at her deposition whether she would have refused the surgery, Plaintiff answered: "I don't know."  See Thomas Depo. at 76.  In her declaration, Plaintiff states that if Defendant had told her there was a possibility she could lose her ability to become pregnant naturally following surgery for some reason other than advanced cancer, she would not have consented to the procedure.  See Thomas Dec. at ¶ 9.[6]

Defendant did not specifically know the extent of Plaintiff's ovarian cysts or how much viable ovarian tissue existed prior to the surgery.

Defendant documented that he consulted with Plaintiff regarding the risks of surgery to remove her cysts including the possibility there might be minimal ovarian tissue left after her surgery.[7]  There is a disputed issue of fact on whether Defendant explained what minimal ovarian tissue meant or that it could mean menopause and the inability to have further children. Compare Oju Depo. at 82, with Thomas Dec. at ¶ 7 and Foster-Rosales Dec. at ¶ 10.

During surgery, Defendant attempted to identify the nature of the cyst on the left ovary, before dissecting and clamping the infundibulopelvic ("IFP") ligament.  He first went into the abdomen, but was unable to identify any ovarian tissue planes.  He then incised the anterior

_____

[5]  It appears that Plaintiff had never been told there was another option to cancer other than removal and/or she had already opted for that treatment.

[6]  Defendant contends that Plaintiff's declaration about declining the surgery is a sham declaration.   The general rule is that "a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."  School District No. 1J, Multnomah County, Oregon v. ACandS, Inc., 5 F.3d 1255, 1264 (9th Cir.1993);  Kennedy v. Allied Mut. Ins. Co., 952 F.2d 262, 266 (9th Cir.1991) see also Cleveland v. Policy Management Systems Corp., 526 U.S. 795, 807 (1999).  However, to apply this the "court must make a factual determination that the contradiction was actually a 'sham.'" .  Kennedy, 952 F.2d at 266-67.  Testimony is a sham only if it flatly contradicts earlier testimony in an attempt to create an issue of fact to avoid summary judgment.  Kennedy, 952 F.2d at 267.  Thus, testimony is not a sham if it merely elaborates upon, explains or clarifies prior testimony.  Messick v. Horizon Indust., Inc., 62 F.3d 1227, 1231 (9th Cir.1995).
     Here, the court does not find the declaration a sham.   The issue in Plaintiff's deposition was why Plaintiff would not have given Defendant discretion over how much ovary to remove. The issue in the declaration is whether Plaintiff would have consented to surgery had she known there was a likelihood she could not have children.    A different set of hypotheticals are at issue.

[7]  Because this fact is premised on what Defendant **documented**, the fact is deemed undisputed.

6

broad ligaments, to see if he could see any normal ovarian tissue.  Seeing none, he proceeded to

clamp the IFP ligament.  Defendant also attempted to determine the nature of the cyst on the right

ovary prior to attempting to dissect it from the IFP ligament.  Plaintiff provides additional

evidence[8] that Defendant did not perform a meticulous dissection so as to release the left ovary

from the surrounding adhesions, elevate the cyst, and the ovary in its entirety, and carefully

inspect the adnexa so as to identify the ovary and tube.  See Foster-Rosales Decl. ¶¶ 11-12;

Foster Rosales Depo. at 72.    Plaintiff provides evidence that Defendant did not perform a

cystectomy (removal of the cyst), while preserving as much ovarian tissue as possible, and

leaving the fallopian tube in tact.   See Foster-Rosales Decl. ¶¶ 11-12; Foster-Rosales Depo. at

74-76, 78-79.   Plaintiff provides evidence that once Defendant visualized the cyst by incising the

anterior leaf of the broad ligament, Defendant clamped and cut the IFP, thereby completely

cutting off the main blood supply to the ovary and making preservation of viable ovarian tissue

virtually medically impossible.  See Foster-Rosales Depo. at 75-77.   Upon removing the cysts,

Defendant also removed a least part of Plaintiff's fallopian tube. See Foster-Rosales Depo. at 75.

Plaintiff's expert did concede that hypothetically, there are instances where it is technically

impossible to salvage an ovary.  See Foster-Rosales Depo. at 74.

Concerning the right ovary, Defendant identified the cyst on the right ovary and

determined that it was completely compromised.   Defendant belied the cyst was bilateral

because he had already taken out the left one, so the chances that the right one was the same were

very high.   Defendant could see that the shelf of the cul-de-sac was obliterated by endometriosis,

and by the time he incised the anterior broad ligament without seeing the ovary, he could see that

the ovary had been compromised by the cyst.  The parties dispute whether Defendant clamped

---

[8] Defendant contends that Plaintiff's expert's description of the surgery in her declaration
is a sham.   The court has reviewed Dr. Foster-Rosales description of the surgery in her
declaration, and finds that it merely provides more details than her deposition.   While Dr. Foster-
Rosales declaration uses terms such as bilateral salpingectomy to refer to removal of the fallopian
tudes, and bilateral oophorectomy to refer to the removal of the ovaries, the deposition describes
these same events using lay language.   In addition, Dr. Foster-Rosales was never specifically
asked at her deposition to describe in detail what she would have done.

and cut the IFP prior to observing the cul-de-sac.  See Oju Depo. Ex. 42; Oju Depo at 134.

Defendant did not attempt to perform a meticulous dissection so as to release the left ovary from the surrounding adhesions, elevate the cyst, and the ovary in its entirety, and carefully inspect the adnexa so as to identify the ovary and tube.   Defendant did not attempt to perform a cystectomy. To insure that the disease did not spread into the peritoneum, Defendant dissected the cyst in its entirety.   Plaintiff again provides evidence that when Defendant clamped and cut the IFP, he cut off the blood supply to the ovary making preservation of viable ovarian tissue virtually medically impossible.  See Foster-Rosales Depo. at 76-77.

After the surgery, Defendant indicated on his Operative Report that both the right and left ovaries were absent with the possibility of ovarian remnants, which were minimal.   The parties dispute what part of this report was relayed to Plaintiff.

The parties dispute whether Defendant adequately explained to Plaintiff after surgery that there was a possibility that she may not have any more ovaries.   Defendant testified that, after surgery, he adequately explained to Plaintiff that there was a possibility that she may not have any more ovaries.   Defendant provides evidence that he had no intent to deceive Plaintiff regarding the surgery performed or the outcome of the surgery.    Plaintiff testified that when Defendant told her something about taking a cyst off of the fallopian tube and removing part of one fallopian tube, Plaintiff asked him if she would still be able to have kids.   Plaintiff testified that Defendant responded that he did not see why not, and all he had done was remove the cysts from there, but she still had her uterus.  See Thomas Depo. at 87, 96.   Plaintiff also offers evidence that Defendant did not tell her he had performed an oophorectomy or salpngectomy. Defendant offers evidence he did tell her there was a possibility that she may not have any more ovaries.  See Oju Depo. at 159.

The parties dispute whether Defendant knew Plaintiff would suffer surgical menopause. After the surgery, Defendant testified that he did not know if the possible remnants of ovaries that remained following the removal of the cysts would be enough to sustain an adequate level of

hormones for Plaintiff to ovulate, or whether she would suffer surgical menopause. Plaintiff provides evidence that Defendant did not communicate to Plaintiff that he did not know if Plaintiff may suffer surgical menopause. Further, Plaintiff provides evidence that it was virtually certain that Plaintiff would suffer surgical menopause even if minimal ovarian tissue or remnants were left behind because once the IFP's were clamped or cut, the tissue is no longer viable. See Foster-Rosales Dec. at ¶ 13; Foster-Rosales Depo. at 76-77.[9]

As part of his discharge orders, Defendant prescribed Premarin to Plaintiff, a drug which is used to treat decreased hormone levels in the body.

Defendant included a discharge instruction that "Further evaluation for hormone replacement therapy and also for follicle-stimulating hormone to be done in four weeks to evaluate surgical menopause status." There is no evidence this information was ever given to Plaintiff.

The parties dispute whether Defendant intended to cause Plaintiff emotional distress. Defendant provides evidence that at no time during his care and treatment of Plaintiff did Defendant intend to cause her emotional distress. See Oju Decl. at ¶ 10. Plaintiff offers evidence that by clamping and cutting the IFP during the surgery, Defendant purposefully did something during the surgery that would make it impossible for Plaintiff to have more children - something Defendant knew she wanted.

Plaintiff was discharged from MCH on April 8, 2001. Defendant did not treat Plaintiff after her discharge from MCH and her return to prison.

After the surgery, Defendant told Plaintiff that he prescribed Tylenol 3 for her pain. Defendant did not discuss any other medications.

Plaintiff never took the Premarin that Defendant prescribed. She did not take any hormonal treatment in the first year after her surgery.

---

[9] Because both Dr. Foster-Rosales' declaration and deposition claim it was impossible to salvage the ovaries once the clamp was in place, Dr. Foster-Rosales' declaration is not a shame.

The parties dispute whether Defendant at all times met the applicable standard of care in the diagnosis, care and treatment of Plaintiff.

Dr. Nash opines that Defendant at all times met the applicable standard of care in the diagnosis, care and treatment of Plaintiff. Dr. Nash opined that because Plaintiff had large endometriomas requiring surgery to relieve her from chronic pain, Defendant performed necessary and reasonable treatment. Dr. Nash further opined that nothing Defendant did, or failed to do, caused Plaintiff injury. Plaintiff points out that Dr. Nash's conclusion regarding the endometriosis as causing the cysts and pain was not determined until after surgery.

Dr. Foster-Rosales offers the opinion that Defendant violated the standard of care by not obtaining adequate informed consent for the procedure he actually performed on Plaintiff - a bilateral salpingo-oophorectomy (removal of both ovaries and portions of the fallopian tubes).[10] Dr. Foster-Rosales opinions that the procedure he performed was not indicated. See Foster-Rosales Depo. at 31. & 99. Dr. Foster-Rosales opines that Defendant disregarded an excessive risk to Plaintiff's reproductive health in that he disregarded her express wish to conserve her ovaries and cut the IFP.[11] The parties dispute whether Defendant destroyed Plaintiff's ovaries by clamping and cutting her IFP – the primary blood supply to the ovaries.

The parties dispute whether Defendant discussed with Plaintiff her desire to have children. The parties dispute whether Defendant adequately explained to Plaintiff the risks of entering menopause at age 25.

The pelvic pain Plaintiff was experiencing prior to the surgery went away after the surgery. The parties dispute why the pain ceased.

---

[10] The court does not find Dr. Foster-Rosales has been inconsistent even though at times she refers to Defendant's procedure as a bilateral salpingpo-oophorectomy and other time refers to Defendant having removed and/or killed the Plaintiff's ovaries and removed part of the fallopian tubes. The lay language Dr. Foster-Rosales uses in her deposition is essentially a salpingpo-oophorectomy.

[11] Dr. Foster-Rosales' declaration is not a sham. Defendant has failed to cite to the portion of her deposition where Dr. Foster-Rosales' medical opinions on Defendant's treatment, opposed to Defendant's lack of obtaining consent, were asked.

After the surgery, Plaintiff began feeling different; she started to feel "weird." A few weeks after her surgery, another inmate told Plaintiff that maybe Defendant had removed more than the cysts and something else was happening. See Thomas Depo. at 97. Plaintiff consulted a medical dictionary to find out what Premarin was and whether it had side effects. See id. at 106-08.

In the first month after her surgery, Plaintiff was in pain, losing weight and "feeling weird." She stopped menstruating after the surgery.

Plaintiff first complained to prison officials about possible complications from her surgery on May 9, 2001, in a 602 form complaining about pain.

Between 2001 and 2005, Dr. Reeves told Plaintiff he could not tell from her medical records whether her ovaries had been removed. Dr. Reeves claimed that Plaintiff's ultrasounds were within normal limits.

Between 2001-2005 Plaintiff also met with her yard doctors regarding her condition. Plaintiff was told by her yard doctors that ultrasounds revealed no abnormalities.

In 2003, Plaintiff had suicidal thoughts and was referred to psychiatric care.

Plaintiff experienced hot flashes, back pain, stomach pain, depression, and anxiety attacks in the months and years following the surgery.

No medical doctor has ever told Plaintiff that she does not have her ovaries. See Thomas Depo. at 98. The only medical opinion Plaintiff has seen which indicates that her ovaries have been removed is the expert report by Dr. Foster-Rosales, which Plaintiff saw on or about July 3, 2008.

Plaintiff filed her original Complaint on February 24, 2006.

A bilateral ovarian cystectomy is removal of a cyst or cysts from both ovaries. If cysts have consumed most or all of the ovary, removal of the cysts may leave little or no ovarian tissue remaining.

//

**LEGAL STANDARD**

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Adickes v. S.H. Kress & Co., 398 U.S. 144, 157 (1970); Poller v. Columbia Broadcast System, 368 U.S. 464, 467 (1962); Southern California Gas Co. v. City of Santa Ana, 336 F.3d 885, 888 (9th Cir 2003).

> Under summary judgment practice, the moving party [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Miller v. Glenn Miller Productions, Inc., 454 F.3d 975, 987 (9th Cir. 2006). A fact is material if it could affect the outcome of the suit under the governing substantive law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Miller, 454 F.3d at 987. "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id.; Fortyune v. American Multi-Cinema, Inc., 364 F.3d 1075, 1080 (9th Cir. 2004). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Celotex Corp. 477 U.S. at 322; Miller, 454 F.3d at 987. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. 477 U.S. at 322. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing

12

party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); First Nat'l Bank of Arizona v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968); Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.,210 F.3d 1099, 1103 (9th Cir. 2000).   The opposing party cannot "'rest upon the mere allegations or denials of [its] pleading' but must instead produce evidence that 'sets forth specific facts showing that there is a genuine issue for trial.'"  Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir.2008) (quoting Fed. R. Civ. Pro. 56(e)); Miller, 454 F.3d at 987.  In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the mere allegations or denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists.  Rule 56(e); Matsushita, 475 U.S. at 586 n.11; First Nat'l Bank, 391 U.S. at 289; Miller, 454 F.3d at 987.  The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Cline v. Industrial Maintenance Engineering & Contracting Co., 200 F.3d 1223, 1229 (9th Cir. 2000), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Anderson, 477 U.S. 248-49; In re Caneva, 550 F.3d 755, 761 (9th Cir. 2008); Lindsey v. SLT Los Angeles, LLC, 447 F.3d 1138, 1144 (9th Cir. 2006).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor.  It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial."  First Nat'l Bank, 391 U.S. at 290; Giles v. General Motors Acceptance Corp., 494 F.3d 865, 872 (9th Cir. 2007).  Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'"  Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments); International Union of Bricklayers v. Martin Jaska, Inc., 752 F.2d 1401, 1405 (9th Cir. 1985).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Rule 56(c); <u>Poller</u>, 368 U.S. at 468; <u>Price v. Sery</u>, 513 F.3d 962, 965 n.1 (9th Cir 2008); <u>Lockett v. Catalina Channel Exp., Inc.</u>, 496 F.3d 1061, 1064 (9th Cir. 2007). "[I]n ruling on a motion for summary judgment, the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999) (quoting <u>Anderson</u>, 477 U.S. at 255; Miller, 454 F.3d at 987; <u>Stegall v. Citadel Broad, Inc.</u>, 350 F.3d 1061, 1065 (9th Cir. 2003). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" <u>Matsushita</u>, 475 U.S. at 587 (citation omitted).

Additionally, the court has the discretion in appropriate circumstances to consider materials that are not properly brought to its attention, but the court is not required to examine the entire file for evidence establishing a genuine issue of material fact where the evidence is not set forth in the opposing papers with adequate references. <u>See</u> <u>Southern Cal. Gas Co. v. City of Santa Ana</u>, 336 F.3d 885, 889 (9th Cir. 2003); <u>Carmen v. San Francisco Unified Sch. Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

**DISCUSSION**

**A. Civil Rights Causes of Action and Statute of Limitations**

Plaintiff filed the complaint in this action on February 24, 2006. The discussions between Defendant and Plaintiff about the surgery occurred on April 4, 2001. Defendant preformed the surgery on April 5, 2001. Defendant contends that the civil rights causes of action are barred because this action was filed almost five years after the surgery and discussions. Plaintiff contends that this action did not accrue until long after April 2001.

Because 42 U.S.C. § 1983 contains no specific statute of limitations, federal courts borrow state statues of limitations for personal injury actions in Section 1983 suits. Wilson v. Garcia, 471 U.S. 261, 276 (1985); Canatella v. Van De Kamp, 486 F.3d 1128, 1132 (9th Cir. 2007); Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004). Prior to January 1, 2003, California's statute of limitations for personal injury actions was one year. See Cal. Civ. Proc. Code § 340(3) (West Supp.2002). Effective January 1, 2003, the new California statute of limitations for personal injury claims was two years instead of one. Cal. Civ. Proc. Code § 335.1. The new statute of limitations does not apply retroactively. Maldonado v. Harris, 370 F.3d 945, 955(9th Cir. 2004),

Courts apply the forum state's law regarding tolling, including equitable tolling, except to the extent any of these laws is inconsistent with federal law. Canatella, 486 F.3d at 1132; Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). Under California law, prisoners who at the time the cause of action accrued were either imprisoned on a criminal charge or serving a sentence of less than life for a criminal conviction enjoy a two-year tolling provision for damages actions. Cal. Civ. Proc. Code § 352.1. This tolling applies to all claims that accrued after January 1, 1995. See Ellis v. City of San Diego, Cal.,176 F.3d 1183, 1189 (9th Cir. 1999).

"Federal law determines when a civil rights claim accrues." Maldonado, 370 F.3d at 954; Knox v. Davis, 260 F.3d 1009, 1013 (9th Cir.2001). Accrual occurs when the plaintiff has "a complete and present cause of action." Wallace v. Kato, 549 U.S. 384, 388 (2007). The Ninth Circuit has explained that "[u]nder federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." Maldonado, 370 F.3d at 955; Know, 260 F.3d at 1013.

Defendant contends that Plaintiff's claim accrued on April 5, 2001 or a few weeks after the surgery when Plaintiff began having side effects. Under Defendant's version, Plaintiff's cause of action accrued in April or May 2001. Given the one year statue of limitations in effect in 2001, and adding two years for tolling, Plaintiff's statute of limitations expired in 2004.

Plaintiff contends that she did not discover her injury until early 2005.   If Plaintiff's civil rights cause of action did not accrue until early 2005, and a two year statute of limitations applies, plus an addition two years for tolling, this action filed in 2006 is clearly not barred by the statute of limitations.  See Cal. Civ. Proc. Code § 335.1. (two year statute of limitations); Cal. Civ. Proc. Code § 352.1. (two year additional years for tolling).

In this case, the undisputed facts reveal that within a month of the surgery Plaintiff began to feel "weird", lost weight, stopped menstruating, and had pain.   In addition, another inmate suggested to Plaintiff that maybe Defendant had removed more than the cysts.  Plaintiff complained to prison officials about possible complications from her surgery on May 9, 2001. Defendant contends that these events were sufficient for Plaintiff to know of the injury which is the basis of the action on notice about Defendant's possible misconduct.

On this motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. Anderson, 477 U.S. at 255; Sullivan v. U.S. Dep't of the Navy, 365 F.3d 827, 832 (9th Cir. 2004).   The undisputed facts reveal that Plaintiff repeatedly sought care for her symptoms between 2001 and 2006.   Dr. Reeves repeatedly told Plaintiff that he could not tell from her medical records whether her ovaries had been removed. During this time, yard doctors told Plaintiff that ultrasounds revealed no abnormalities.  Other than her expert in this action, Dr. Foster-Rosales, no medical doctor has ever told Plaintiff that she does not have her ovaries or explained what occurred during the surgery.  The court cannot find that Plaintiff should have known of the injury caused by Defendant prior to 2005.[12]   Medical doctors told Plaintiff repeatedly that nothing was wrong with her and her ultrasound looked normal.  If the numerous doctors who Plaintiff saw in the four years after her surgery could

_____

[12]   In the reply brief, Defendant contends that Plaintiff's use of an early 2005 accrual date shows the limitation period accrued earlier because nothing changed in 2005.   On this motion for summary judgment, Defendant has the burden of proving an accrual date outside the statute of limitations.   The court disagrees with Defendant's 2001 accrual date.  At this time, it is unnecessary to determine if this action accrued in early 2005, early 2006, or not until Plaintiff obtained her expert's report.   It is enough for the court to find that this action did not accrue any early than 2005.

neither determine that Plaintiff had injuries nor resolve what Defendant may have done during the surgery, the court cannot find that a prisoner with no medical training should have known that Defendant had injured her and that she had a cause of action against him. The court therefore concludes that genuine issues of material fact remain as to when Plaintiff discovered her injury. These factual disputes in turn create a genuine issue of material fact as to whether this action was filed within the statute of limitations. Thus, the court cannot grant summary judgment on the civil rights claims on the basis that this action was filed outside the statute of limitations.

**B. Eighth Amendment Cause of Action**

Defendant contends that the undisputed facts show that he was not deliberately indifferent to Plaintiff's health care needs. Plaintiff contends that Defendant's treatment was medically unacceptable.

Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. Estelle v. Gamble, 429 U.S. 97 (1976); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006). "In the Ninth Circuit, the test for deliberate indifference consists of two parts." Jett, 439 F.3d at 1096. First, the plaintiff must show a serious medical need by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain. Jett, 439 F.3d at 1096; McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1992), *overruled in part on other grounds by* WMX Technologies, Inc. v. Miller, 104 F.3d 1133, 1136 (9th Cir. 1997) (en banc). "Second, the plaintiff must show the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096. A prison official is "deliberately indifferent" if he or she knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In other words, the second prong is satisfied by the plaintiff showing "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need and (b) harm caused by the indifference." Jett, 439 F.3d at 1096.

17

Prison officials demonstrate "deliberate indifference" when they are aware of the patient's condition but "deny, delay or intentionally interfere with medical treatment." Jett, 439 F.3d at 1096.

"Deliberate indifference is a high legal standard." Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004). Under this standard, the prison official must not only "be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists," but that person 'must also draw the inference.'" Farmer, 511 U.S. at 837; Toguchi, 390 at 1057. "'If a prison official should have been aware of the risk, but was not, then the official has not violated the Eighth Amendment, no matter how severe the risk.'" Toguchi, 390 at 1057 (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

Deliberate indifference may be shown by "the way in which prison physicians provide medical care." McGuckin v. Smith, 974 F.2d 1050, 1062 (9th Cir. 1992), overruled on other grounds by WMX Technologies, Inc. v. Miller, 104 F.3d 1133 (9th Cir. 1997). Mere negligence or the "inadvertent failure to provide adequate medical care," will not sustain a Section 1983 claim. Estelle, 429 U.S. at 105. Similarly, a showing of nothing more than a difference of medical opinion as to the need to pursue one course of treatment over another is generally insufficient to establish deliberate indifference. Toguchi, 391 F.3d at 1058, 1059-60; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989). In order to prevail on a claim involving choices between alternative courses of treatment, a prisoner-plaintiff must show that the course of treatment the doctors chose was medically unacceptable under the circumstances and that they chose this course in conscious disregard of an excessive risk to plaintiff's health. Toguchi, 391 F.3d at 1058; Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996).

The problem with granting summary judgment in this case is that there is a disputed issue of fact as to what Defendant discussed with Plaintiff before and after surgery, and what exactly Defendant did during the surgery. Prior to the date of Plaintiff's surgery, Defendant saw Plaintiff for between five and ten minutes. Defendant consulted with Plaintiff regarding the need for

surgery to remove the cysts on her ovaries.   Defendant documented that he consulted with her about the possibility that there may be minimal ovarian tissue after the surgery.   The parties dispute whether Defendant explained to Plaintiff what "minimal ovarian tissue" meant.   Taking the facts in the light most favorable to Plaintiff, Defendant knew prior to the surgery and during the surgery that Plaintiff wanted more children.   Not only has Defendant conceded this knowledge, but a reasonable doctor would assume a 25-year-old woman had not made a final decision on whether to have children.   Plaintiff was aware that she might not be able to have children after the surgery because there was a risk Defendant would find cancer and he would have to perform a hysterectomy.

Prior to the surgery, Plaintiff read and acknowledged she understood the consent form, had the medical procedures adequately explained to her, had a chance to ask questions, and received all the information she desired about the medical procedures.   Plaintiff signed her name to the consent form authorizing a laparotomy, bilateral ovarian cystectomies, and a cone biopsy of the cervix.   The consent form did not mention an oophorectomy or salpingectomy.   Defendant testified at his deposition that he did not think Plaintiff wanted anything to be done except what was listed on the form.   See Oju Depo. at 102.

Prior to the surgery Defendant did not specifically know the extent to Plaintiff's ovarian cysts nor how much viable ovarian tissue existed.   Plaintiff testified that if she had understood that her ovaries might be removed during the surgery, she would have asked more questions but Plaintiff is unsure on whether she would have still have had the surgery.   However, Plaintiff offers evidence that had Defendant told her there was a possibility she could lose her ability to become pregnant naturally following surgery for some reason other than advanced cancer, she would not have consented to the procedure.   Taking these facts in the light most favorable to Plaintiff, Defendant was made aware prior to surgery of Plaintiff's desire to preserve her fertility and that Plaintiff only wanted a laparotomy, bilateral ovarian cystectomies, and a cone biopsy of the cervix; Plaintiff did not want an oophorectomy or salpingectomy.

During the surgery, the parties disagree on whether Defendant clamped the IFP ligament before learning the extent of the cysts. The parties dispute whether clamping the IFP ligament essentially destroyed the ovaries. Taking the facts in the light most favorable to Plaintiff, Defendant knew Plaintiff desired to have more children, and Plaintiff did not want an oophorectomy but Defendant purposefully destroyed the ovaries prior to learning whether complete removal of the ovaries was even necessary.

There is a disputed issue of fact on whether Defendant was deliberately indifferent after the surgery by not adequately explaining to Plaintiff what had occurred during the surgery and what further symptoms and side effects she may have. Defendant indicated on his Operative Report that both the right and left ovaries were absent with the possibility of ovarian remnants, which were minimal. However, the parties dispute whether this information was adequately explained to Plaintiff. The parties dispute whether Defendant knew Plaintiff would suffer surgical menopause and whether Defendant told Plaintiff of this risk. In addition, Plaintiff offers evidence that Defendant told her he did not see why Plaintiff could not have children when she asked him about her ability to still have children. Plaintiff also offers evidence that Defendant tried to mislead Plaintiff by not telling her he had performed an oophorectomy or salpingectomy.

Taking the facts in the light most favorable to Plaintiff, Plaintiff has demonstrated that Defendant's failure to properly treat her resulted in further significant injury or the unnecessary and wanton infliction of pain. Under Plaintiff's facts, Defendant knew she did not want to be prohibited from having children, knew she did not want her ovaries removed, and agreed to a hysterectomy only if she had cancer. Defendant's failure to explore the ovaries prior to cutting the IFP resulted in future injury to Plaintiff because Defendant, essentially, made preservation of viable ovarian tissue medically impossible. Defendant then failed to explain to Plaintiff what the removal of so much ovarian tissue could mean for her future health and ability to procreate. Plaintiff's injury included going into surgical menopause without ever being warned that this might happen. Plaintiff's failure to explain the results of the surgery to Plaintiff left her in pain

for years, the symptoms of menopause at 25-years-old, and the long term affects of going through menopause at 25-years-old without proper treatment. Defendant failed to take reasonable steps to abate Plaintiff's potential injuries after surgery by not informing Plaintiff or the doctors that would treat her later about the risk Plaintiff would go into menopause.

Taking the evidence in the light most favorable to Plaintiff, Defendant has shown deliberate indifference. "[A]n Eighth Amendment claimant need not show that a prison official acted or failed to act believing that harm actually would befall an inmate; it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." Farmer, 511 U.S. at 842. Thus, Defendant is not entitled to summary judgment.

## C. Fourteenth Amendment

Defendant contends that he is entitled to summary judgment on Plaintiff's Fourteenth Amendment claim because he performed the surgery with Plaintiff's consent. Plaintiff contends that there is a disputed issue of fact on whether Defendant sterilized her unnecessarily.

The Substantive Due Process Clause protects personal decisions relating to marriage, procreation, contraception, family relationships, child rearing, and education. Lawrence v. Texas, 539 U.S. 558, 559 (2003); Planned Parenthood of Southeastern Pennsylvania v. Casey, 505 U.S. 833, 851 (1992). The Supreme Court has recognized that the individual has a right to be "free from unwarranted governmental intrusion into matters so fundamentally affecting a person as the decision whether to bear or beget a child." Casey, 505 U.S. at 851. In Skinner v. State of Okl. ex rel. Williamson, 316 U.S. 535 (1942), the Supreme Court invalidated Oklahoma's Habitual Criminal Sterilization Act that mandated the sterilization of habitual criminals. The Supreme Court held that the right to procreate was one of "the basic civil rights of man. Marriage and procreation are fundamental to the very existence and survival of the race." Id. at 541 "The power to sterilize, if exercised, may have subtle, far-reaching and devastating effects." Id.

More recently, the Ninth Circuit has affirmed a prisoner's right against sterilization. In Gerber v. Hickman, 291 F.3d 617 (9th Cir. 2002), the plaintiff contended that inmates have a constitutional right to procreate while in prison by at least artificial insemination. Id. at 622. In ruling against the Plaintiff, the Ninth Circuit concluded that the right to procreate is inconsistent with incarceration. Id. However, the Ninth Circuit recognized that the "right to procreate while incarcerated and the right to be free from surgical sterilization by prison officials are two very different things." Id. Recognizing that procreation is a fundamental right, the Ninth Circuit concluded that there can be no comparison between sterilization and denial of the facilitation of artificial insemination. Id.

Taking the facts in the light most favorable to Plaintiff, Plaintiff did not consent to a hysterectomy, nor to any other form of sterilization, **_unless_** the cone biopsy showed cancer. Because no cancer was present, Defendant did not sterilize Plaintiff based on the consent Plaintiff had given in case of cancer. Rather, the parties agree Defendant removed cysts in Plaintiff's ovaries and part of a fallopian tube. The issue in this case is whether Defendant purposefully destroyed Plaintiff's ovaries without knowing whether destroying the ovaries was required by the cysts. Another issue is whether Plaintiff only agreed to a cyst removal and Plaintiff believed removal of the cysts would not sterilize Plaintiff. In addition, there is a sub-issue on whether Plaintiff's consent extended to Defendant removing the ovaries if in Defendant's medical opinion the cysts and/or other medical conditions had essentially destroyed the ovaries.

Taking the facts in the light most favorable to Plaintiff, Defendant did not have Plaintiff's consent to sterilize her for any reason other than cancer. Taking the facts in the light most favorable to Plaintiff, Defendant never discussed with Plaintiff the fact that removing the cysts might also result in Plaintiff being unable to have further children; And Defendant never obtained Plaintiff's consent to remove the cysts if it would sterilize her. Finally, taking the facts in the light most favorable to Plaintiff, Defendant destroyed the ovaries before even determining

whether it was medically necessary to do so.   From these facts, it would be possible for a jury to find that Defendant, a purported state actor, sterilized Plaintiff without her consent.   Such a finding would violated the Fourteenth Amendment.   Thus, Defendant is not entitled to summary judgment.

**D.  California Constitution, Article 1, Section 7 and Section 17**

The parties agree that the court should make the same findings on Plaintiff's cause of action pursuant Article I, Section 7 of the California Constitution and pursuant to Article I, Section 17 of the California Constitution as the court makes regarding Plaintiff's Eighth Amendment cause of action and Fourteenth Amendment.

***1.  Article I, Section 17***

Article I, Section 17 of the California Constitution states that "[c]ruel or unusual punishment may not be inflicted or excessive fines imposed."  Cal. Const. Art. 1, § 17. "Punishment" under California law has the same meaning than would apply under the Eighth Amendment.  In re Alva, 33 Cal.4th 254, 291 (2004).  Because there is a disputed issue of fact on whether Defendant violated Plaintiff's Eighth Amendment rights be being deliberately indifference to Plaintiff's serious medical needs, the court declines to grant Defendant summary judgment on Plaintiff's cause of action based on Article I, Section 17 of the California Constitution.  See e.g., Ochoa v. Superior Court, 39 Cal.3d 159, 173 (1985) (stating in dicta in a medical care claim that both the Eighth Amendment of the Federal Constitution and Article I, Section 17 of the California Constitution prohibit the infliction of cruel and unusual punishment). Thus, summary judgment is denied on this cause of action.

***2.  Article I, Section 7***

Article I, Section 7 of the California Constitution provides that "[a]person may not be deprived of life, liberty, or property without due process of law or denied equal protection of the laws; . . ."  Cal. Const. Art. 1, § 7.   The procedural due process requirements under the

California Constitution closely follow the federal requirements except that California does not require a plaintiff to "establish a property or liberty interest as a prerequisite to invoking due process protection." Schwarm v. Craighead, 552 F.Supp.2d 1056, 1083 (E.D.Cal. 2008); Ryan v. Cal. Interscholastic Fed'n-San Diego Section, 94 Cal.App.4th 1048, 1069 (2001). Contrary to the Fourteenth Amendment's substantive due process right to privacy, Article 1, Section 7 does not include a right to procreate. Thus, Plaintiff's Article 1, Section 7 cause of action fails on its face and it must be dismissed.

Article I, Section 1 of the California Constitution provides that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Cal. Const. Art. 1, § 1. Article I, Section 1 accords similar protection to the right to privacy found in the Fourteenth Amendment of the United States Constitution. Conservatorship of Valerie N., 40 Cal.3d 143, 163 (1985). Article I, Section 1 protects the right of a woman to choose whether or not to bear a child. Id.

Because the parties are proceeding under the assumption that the complaint contains a cause of action under the California Constitution that mirrors Plaintiff's Fourteenth Amendment cause of action, the court will allow Plaintiff to include in her pretrial statement a cause of action brought under Article I, Section 1's prohibition of forced sterilization.

**E. Professional Negligence**

*1. Statue of Limitations*

Defendant contends that Plaintiff's medical malpractice claim is barred by either California's one year statute of limitations or three year statute of limitations. Under California law, "a cause of action accrues at the time when the cause of action is complete with all of its elements." Grisham v. Philip Morris U.S.A., Inc., 40 Cal.4th 623, 634 (2007). Resolution of limitations issues are normally a question of fact, and it can only be decided as a matter of law

where "uncontradicted facts established through discovery are susceptible of only one legitimate inference." Mills v. Forestex Co., 108 Cal.App.4th 625, 640 (2003).

California Civil Procedure Code § 340.5 provides:

> In an action for injury or death against a health care provider based upon such person's alleged professional negligence, the time for the commencement of action shall be three years after the date of injury or one year after the plaintiff discovers, or through the use of reasonable diligence should have discovered, the injury, whichever occurs first. In no event shall the time for commencement of legal action exceed three years unless tolled for any of the following: (1) upon proof of fraud, (2) intentional concealment, or (3) the presence of a foreign body, which has no therapeutic or diagnostic purpose or effect, in the person of the injured person. . . .

Cal.Civ.Pro. § 340.5.

Plaintiff contends that she did not discover her injury until at least 2005. The "'discovery rule,' postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Fox v. Ethicon Endo-Surgery, Inc., 35 Cal.4th 797, 807 (2005). "Under the discovery rule, suspicion of one or more of the elements of a cause of action, coupled with knowledge of any remaining elements, will generally trigger the statute of limitations period." Grisham, 40 Cal.4th at 634.

> The discovery rule does not encourage dilatory tactics because plaintiffs are charged with presumptive knowledge of an injury if they have information of circumstances to put them on inquiry or if they have the opportunity to obtain knowledge from sources open to their investigation. In other words, plaintiffs are required to conduct a reasonable investigation after becoming aware of an injury, and are charged with knowledge of the information that would have been revealed by such an investigation.

Fox, 35 Cal.4th at 808 (internal cites, quotes, and brackets omitted). It is the discovery of the facts, and not their legal significance, that starts the running of the statute. Jolly v. Eli Lilly & Co., 44 Cal.3d 1103, 1113 (1988). In fact, once the plaintiff has a suspicion of wrongdoing the plaintiff must go find the facts, and she cannot wait for the facts to find her. Id. at 1111. However, wrongdoing is not used in any technical sense, but rather in accordance with "lay understanding." Norgart v. Upjohn Co., 21 Cal.4th 383, 397-98 (1999).

For the reasons discussed above, the court finds that Plaintiff did not reasonably discover

25

her injury until at least 2005, if not later.   While Plaintiff was in pain following surgery, the symptoms she had were never discussed with her by Defendant.  For years, Plaintiff reasonably sought to determine the facts from the resources available to her as a prisoner.   Plaintiff repeatedly sought treatment from the doctors available to her in prison.   These medical doctors were unable to determine Plaintiff's condition or its cause.   No medical doctor ever told Plaintiff that her symptoms were a result of the surgery.  In fact, some of the doctors told Plaintiff there was nothing wrong with her.   Taking the facts in the light most favorable to Plaintiff, Plaintiff did not discover Defendant's negligence prior to 2005.

Defendant maintains that even if Plaintiff discovered her injury in 2005, her statute of limitations cannot be tolled for over three years by Section 340.5's express terms. In this malpractice claim, Plaintiff must prove Defendant's fraud or intentional concealment to allow tolling until February 2006, when this action was filed.    Taking the facts in the light most favorable to Plaintiff, Defendant told Plaintiff that he did not see why she would not be able to have children.   Defendant did not discuss with Plaintiff that she most likely would go into surgical menopause.   Taking the facts in the light most favorable to Plaintiff, Defendant had clamped the IFP, which he knew would destroy the ovaries.  By telling Plaintiff she could still have children and not discussing the possibility of menopause, Defendant misrepresented to Plaintiff what had occurred during the surgery and concealed the fact that Plaintiff was sterilized and that she would go into menopause.   Taking the facts in the light most favorable to Plaintiff, this fraud or intentional concealment caused Plaintiff to not realize what was causing her symptoms - tolling the limitations period.


## *2.  Standard of Care*

Defendant contends that he is entitled to summary judgment on Plaintiff's malpractice cause of action because Defendant at all times met or exceeded the applicable standard of care in his treatment and care of Plaintiff and Defendant did not cause any injuries.  Plaintiff contends

there is a disputed issue of fact on whether Defendant violated the standard of care and whether Defendant caused Plaintiff any injuries.

The elements a plaintiff must prove for a negligence action based on medical malpractice are: "(1) the duty of the professional to use such skill, prudence, and diligence as other members of his profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the negligent conduct and the resulting injury; and (4) actual loss or damage resulting from the professional's negligence." Johnson v. Superior Court, 143 Cal.App.4th 297, 305 (2006); Hanson v. Grode, 76 Cal.App.4th 601, 606 (1999). "The standard of care in a medical malpractice case requires that medical service providers exercise . . . that degree of skill, knowledge and care ordinarily possessed and exercised by members of their profession under similar circumstances." Barris v. County of Los Angeles, 20 Cal.4th 101, 108 n. 1 (1999). "Because the standard of care in a medical malpractice case is a matter 'peculiarly within the knowledge of experts,' expert testimony is required to 'prove or disprove that the defendant performed in accordance with the standard of care' unless the negligence is obvious to a layperson." Johnson, 143 Cal.App.4th at 305.

There is a disputed issue of fact on whether Defendant's breached his duty to Plaintiff by not meeting the applicable standard of care. Dr. Nash opines that Defendant at all times met the applicable standard of care in the Plaintiff's diagnosis, care, and treatment. Dr. Foster-Rosales opines that Defendant's conduct breached the standard of care because he performed a bilateral salpingo-oophorectomy and clamped and cut of the IFP without knowing if these procedures were medically necessary. Dr. Foster-Rosales also claims that Defendant did not attempt to preserve as much ovarian tissue as possible and he could have done a more time consuming surgery to save additional ovarian tissue. Finally, Dr. Foster-Rosales provides evidence that Defendant failed to adequately discuss with Plaintiff the risk that the surgery might leave Plaintiff unable to have children and in surgical menopause.

The parties also dispute whether Defendant caused Plaintiff any injury. Dr. Nash opines

that Defendant did not cause Plaintiff any injury.   Dr. Foster-Rosales provides evidence that as a result of the surgery, Plaintiff cannot have future biological children.   Dr. Foster-Rosales also provides evidence that Plaintiff was put into surgical menopause at 25-years-old, which may cause her future loss of sexual function, estrogen deficiency, osteoporosis, bone fractures, and cardiac disease.   Thus, there is a disputed issue of fact on whether Defendant breached the duty of care and whether he caused Plaintiff any injury.   Summary judgment is not appropriate.

**F.  Informed Consent**

*1.  Statue of Limitations*

Defendant contends that Plaintiff's sixth cause of action for failure to obtain informed consent is bared by the applicable statute of limitations.   California Civil Procedure Code § 340.5 provides the time limit for bringing a cause of action under the doctrine of informed consent. Warren v. Schecter, 57 Cal.App.4th 1189, 1200 (1997).   For the same reasons that the court found Plaintiff did not violate the statute of limitations set forth in Section 340.5 for Plaintiff's medical malpractice cause of action, Defendant is not entitled to summary judgment on the failure to obtain informed consent cause of action for Plaintiff's alleged violation of the statute of limitations.

*2.  Disputed Issues on Informed Consent*

A surgeon must obtain an informed consent from a patient.  Physicians have a duty to inform their patients of the known risks of death or serious bodily harm associated with proposed treatments. Cobbs v. Grant, 8 Cal.3d 229, 244 (1972); Piedra v. Dugan, 123 Cal.App.4th 1483, 1490 (2004).  A physician has a duty to disclose to a patient "the available choices with respect to proposed therapy and the dangers inherently and potentially involved in each." Cobbs, 8 Cal.3d at 243.  The scope of a physician's duty to disclose is measured by the amount of knowledge a patient needs in order to make an informed choice. Id. at 245.  The physician must reveal to the patient such additional information as a skilled practitioner of good standing would

provide under similar circumstances. <u>Arato v. Avedon</u>, 5 Cal.4th 1172, 1190 (1993); <u>Cobbs</u>, 8 Cal.3d at 244-45. A physician need not discuss the risks inherent in common procedures that very rarely result in serious ill effects. <u>Cobbs</u>, 8 Cal.3d at 244; <u>Piedra</u>, 123 Cal.App.4th at 1490. Additionally, in emergency situations, physicians need not obtain consent before treating a patient. <u>Piedra</u>, 123 Cal.App.4th at 1490.

The standard for disclosure is measured by under a "reasonable person" standard, and the information the physician must disclose is information the physician knows or should know would be regarded as significant by a reasonable person in the patient's position when deciding to accept or reject a recommended medical procedure. <u>Arato</u>, 5 Cal.4th at 1186 (1993). However, "[i]f the physician knows or should know of a patient's unique concern or lack of familiarity with medical procedures, this may expand the scope of required disclosure." <u>Truman v. Thomas</u>., 27 Cal.3d 285, 291 (1980) (citations omitted). The plaintiff in an informed consent case has the burden to establish that a prudent person in her position would not have consented if adequately informed of the risks. <u>Warren v. Schecter</u>, 57 Cal.App.4th 1189, 1207 (1997).

Defendant contends that he obtained Plaintiff's informed consent to the surgery. Defendant argues that Defendant consulted with Plaintiff regarding the need to remove her cysts. Defendant also provides evidence that Plaintiff read and signed the standard consent form. There is a disputed issue of fact on whether Plaintiff specifically told Plaintiff that she wanted to have more children. Regardless, there is a disputed issue of fact on whether Defendant discussed with Plaintiff the fact she may no longer be able to have children and may go into surgical menopause based on the removal of the cysts. The fact Plaintiff understood she might need a hysterectomy and this might prevent future pregnancy is of little relevance. Plaintiff's consent to the hysterectomy was in case she had cancer, not if removal of the cysts also required removal of the ovaries. Taking the facts in the light most favorable to Plaintiff, there are disputed issues of fact on what Defendant told Plaintiff prior to the surgery. A jury could find that a reasonable 25-year-old woman would not consent to the removal of cysts if she had been

told of the risk of not becoming pregnant and forced menopause.   Thus, summary judgment will not be granted.

## G.   Battery - Deviation From Consent

### 1.  Statue of Limitations

An action for battery caused by the wrongful act of another must be brought within two years.  Cal. Civ. Pro. Code 335.1.   For the reasons discussed above, the court finds Plaintiff's statute of limitations did not accrue until at least 2005.  Thus, this action filed in 2006 is not bared by the two year statute of limitations for battery.

### 2.  Whether Dr. Oju's Deviated from Consent

Defendant contends that he did not deviate from the consent Plaintiff gave.  As such, Defendant argues that he could not have committed a battery.

The elements of a civil battery are: (1) The defendant intentionally did an act which resulted in a harmful or offensive contact with the plaintiff's person; (2) The Plaintiff did not consent to the contact; and (3) The harmful or offensive contact caused injury, damage, loss or harm to the plaintiff.  Brown v. Ransweiler, 171 Cal.App.4th 516, 526-27 (2009); Piedra v. Dugan, 123 Cal.App.4th 1483, 1495 (2004).  "A typical medical battery case is where a patient has consented to a particular treatment, but the doctor performs a treatment that goes beyond the consent." Conte v. Girard Orthopaedic Surgeons Medical Group, Inc., 107 Cal.App.4th 1260, 1267 (2003).   "Where a doctor obtains consent of the patient to perform one type of treatment and subsequently performs a substantially different treatment for which consent was not obtained, there is a clear case of battery." Cobbs v. Grant,  8 Cal.3d 229, 239 (1972).   In addition, when a patient is affirmatively misled and consents to a procedure that is "substantially different" from that which was performed, such a procedure may amount to a battery.  Moran v. Selig, 447 F.3d 748, 759 (9th Cir. 2006); Cobbs v. Grant, 8 Cal.3d 229, 239 (1972); Kaplan v.

Mamelak, 162 Cal.App.4th 637, 646 (2008). A patient is deemed to have consented to a touching that, although not literally covered by the patient's express consent, involves complications inherent to the procedure. Kaplan, 162 Cal.App.4th at 646. "The battery theory should be reserved for those circumstances when a doctor performs an operation to which the patient has not consented. When the patient gives permission to perform one type of treatment and the doctor performs another, the requisite element of deliberate intent to deviate from the consent is present." Moran, 447 F.3d at 758 (quoting Cobbs, 8 Cal.3d at 240); Saxena v. Goffney, 159 Cal.App.4th 316, 324 (2008).

The California Supreme Court has held that a battery and lack of informed consent are two separate causes of action. "A claim based on lack of informed consent--which sounds in negligence--arises when the doctor performs a procedure without first adequately disclosing the risks and alternatives. In contrast, a battery is an intentional tort that occurs when a doctor performs a procedure without obtaining any consent." Saxena v. Goffney, 159 Cal.App.4th 316, 324 (2008). Courts typically apply a negligence theory in cases in which the defendant has "performed the identical operation to which plaintiff had consented" but is alleged to have failed to have informed the plaintiff of all the other options and inherent risks of the procedure. Cobbs, 8 Cal.3d at 241. "[A]s an integral part of the physician's overall obligation to the patient there is a duty of reasonable disclosure of the available choices with respect to proposed therapy and of the dangers inherently and potentially involved in each." Id. at 243.

> [W]hen the patient consents to certain treatment and the doctor performs that treatment but an undisclosed inherent complication with a low probability occurs, no intentional deviation from the consent given appears; rather, the doctor in obtaining consent may have failed to meet his due care duty to disclose pertinent information. In that situation the action should be pleaded in negligence.

Moran, 447 F.3d at 758 (quoting Cobbs, 8 Cal.3d at 239).

Here, there is a disputed issue of fact on whether Defendant preformed the surgery Plaintiff consented to. Plaintiff clearly consented to a bilateral ovarian cystectomy - the removal of Plaintiff's cysts. Taking the facts in the light most favorable to Plaintiff, Plaintiff did not

consent to the removal of her ovaries and a portion of her fallopian tubes.   At trial, the parties will dispute whether removing the ovaries and fallopian tube was necessary to the removal of the cysts, and whether Defendant's only failure, if there was one, was not adequately explaining this risk.   However, taking the facts in the light most favorable to Plaintiff, Defendant clamped and divided the IFP, destroying the ovaries, before even determining whether removal of the ovaries was necessary.   From this action, a jury could conclude that Defendant removed Plaintiff's ovaries and a portion of the fallopian tubes even though this procedure was never consented to and there was no emergency requiring it.   Thus, Defendant is not entitled to summary judgment on the battery cause of action.

**H.  Intentional Infliction of Emotional Distress**

***1.  Statue of Limitations***

A causes of action for intentional infliction of emotional distress is a type of personal injury claims, and is thus subject to the two-year limitations period for personal injury claims set forth in California Civil Procedure Code § 335.1. (effective Jan. 1, 2003);  <u>Unruh-Haxton v. Regents of University of California</u>, 162 Cal.App.4th 343, 357 (2008);   3D Miller and Starr, California Real Estate (2008) § 34:127.   "A cause of action for intentional infliction of emotional distress accrues, and the statute of limitations begins to run, once the plaintiff suffers severe emotional distress as a result of outrageous conduct on the part of the defendant"  <u>Cantu v. Resolution Trust Corp.</u>, 4 Cal.App.4th 857, 889 (1992).  Because the tort of intentional infliction of emotional distress is not complete until the effect of the defendants's conduct results in severe emotional distress, that is the time the cause of action accrues.  <u>Kiseskey v. Carpenters' Trust</u>, 144 Cal.App.3d 222, 232 (1983).

There is a disputed issue of fact on when Plaintiff's cause of action for emotional distress accrued.   Taking the facts in the light most favorable to Plaintiff, Plaintiff did not know after surgery that Defendant's actions during the surgery caused her unpleasant symptoms.   Plaintiff

also did not know that these symptoms were the result of a procedure she did not consent to or even know had occurred. Plaintiff did not begin to suffer severe emotional distress until she knew the entirety of Defendant's alleged outrageous conduct – Defendant never explained the risk to Plaintiff that she could be sterile and go into menopause after surgery, Defendant destroyed her ovaries without knowing that it was necessary, Defendant lied to her about being able to have children after surgery, and Defendant misled both Plaintiff and her treating doctors about what occurred during the surgery and the fact Plaintiff would most likely go into menopause. Plaintiff would not have known of the totality of Defendant's conduct until at least 2005, and most likely even later. Thus, summary judgment is not appropriate on the ground the intentional infliction of emotional distress claim is barred by the statute of limitations.

### *2. Extreme or Outrageous Conduct*

The elements of the tort of intentional infliction of emotional distress are: (1) extreme and outrageous conduct by the defendant; (2) the defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress; (3) the plaintiff's suffering severe or extreme emotional distress; and (4) actual and proximate causation of the emotional distress by the defendant's outrageous conduct. King v. AC & R Advertising, 65 F.3d 764, 770 (9th Cir. 1995); Potter v. Firestone Tire & Rubber Co., 6 Cal.4th 965, 1001 (1993); Christensen v. Superior Court, 54 Cal.3d 868, 903 (1991). To be outrageous, the conduct must be so extreme as to exceed all bounds of that usually tolerated in a civilized community. Potter, 6 Cal.4th at 1001; Christensen, 54 Cal.3d at 903. "The defendant must have engaged in conduct intended to inflict injury or engaged in with the realization that injury will result." Potter, 6 Cal.4th at 1001. "It is not enough that the conduct be intentional and outrageous. It must be conduct directed at the plaintiff, or occur in the presence of a plaintiff of whom the defendant is aware." Christensen, 54 Cal.3d at 903.

While the issue of outrageousness is normally an issue of fact to be determined by the trier of fact, the court may determine in the first instance whether the defendant's conduct may

reasonably be regarded as so extreme and outrageous as to permit recovery.  <u>Trerice v. Blue</u>
<u>Cross of California</u>, 209 Cal.App.3d 878, 883 (1989).  "Summary judgment is proper if a claim
cannot reasonably be regarded as so extreme and outrageous as to permit recovery." <u>King</u>, 65
F.3d at 770.

Taking the facts in the light most favorable to Plaintiff, Defendant unnecessarily removed
Plaintiff's ovaries without her knowledge or consent.   Taking the facts in the light most
favorable to Plaintiff, Defendant concealed from Plaintiff that she would not be able to become
pregnant and she would experience surgical menopause.  A reasonable jury could find that by
essentially sterilizing Plaintiff without her knowledge or consent and then hiding this fact from
Plaintiff is conduct that is so extreme as to exceed all bounds of that usually tolerated in a
civilized community.

While Defendant has submitted evidence that he had no intent to cause Plaintiff
emotional distress, a reasonable jury could conclude Defendant did intend such distress.   Taking
the facts in the light most favorable to Plaintiff, Defendant knew or should have known that this
25-year-old woman may wish to have children in the future and there would be medical
complications in having such a young woman go through surgical menopause.   Taking the facts
in the light most favorable to Plaintiff, Defendant never told her about the risk of being sterilized
during a cystectomy; Even worse, he never told her about this risk after surgery.  Taking the facts
in the light most favorable to Plaintiff, Defendant did not tell Plaintiff or the doctors who were to
treat Plaintiff after the surgery about the high risk of surgical menopause and the destruction of
the ovaries.   A reasonable jury could conclude Defendant's intentional conduct in hiding what
had happened from Plaintiff shows an intent to cause Plaintiff emotional distress.   Thus,
summary judgment is not appropriate.

//

//

## I. Intentional Deceit / Fraud

"The elements of fraud, which gives rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or non-disclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." <u>Small v. Fritz Companies, Inc.</u>, 30 Cal.4th 167, 173 (2003); <u>Lazar v. Superior Court</u>, 12 Cal.4th 631, 638 (1996); <u>Apollo Capital Fund, LLC v. Roth Capital Partners, LLC</u>, 158 Cal.App.4th 226, 243 (2007); <u>Anderson v. Deloitte & Touche, LLP</u>, 56 Cal.App.4th 1468, 1474 (1997). An intentional misrepresentation is "[t]he suggestion, as a fact, of that which is not true, by one who does not believe it to be true." <u>Masters v. San Bernardino County Employees Ret. Assn.</u>, 32 Cal.App.4th 30, 41-42 (1995).

### *1. Intent*

"Fraudulent intent may be established by inference from the circumstances and the acts of the parties." <u>Continental Airlines, Inc. v. McDonnell Douglas Corp.</u>, 216 Cal.App.3d 388, 428 (1989). Taking the facts in the light most favorable to Plaintiff, Defendant's intent to deceive can be inferred from the very information he failed to tell her. The most likely reason Defendant would have told Plaintiff she could still have children and not told her about the likelihood of surgical menopause would have been to "cover up" the fact Defendant never discussed these issues with Plaintiff pre-surgery in the context of cyst removal and Defendant committed malpractice during the surgery. Taking the facts in the light most favorable to Plaintiff, Defendant's intent can be shown by failing to give the operative report and the information in this report to Plaintiff. From these facts, a reasonable jury could conclude that Defendant intended Plaintiff to not discover what had really happened during the surgery.

### *2. Reliance*

Actual reliance occurs when a misrepresentation is an immediate cause of a plaintiff's conduct, which alters his legal relations, and when, absent such representation, he would not, in all reasonable probability, have entered into the contract or other transaction. <u>Engalla v.</u>

Permanente Medical Group, Inc., 15 Cal.4th 951, 976 (1997);  Conroy v. Regents of University of Cal., 91 Cal.Rptr.3d 532, 543 (2009).  It is not necessary that a plaintiff's reliance on the fraudulent misrepresentations be the sole or even the predominant or decisive factor in influencing his conduct.  Conroy, 91 Cal.Rptr.3d at 543-44.  "It is enough that the representation has played a substantial part, and so has been a substantial factor, in influencing his decision." Engalla, 15 Cal.4th at 977.

The test of reliance on a representation is the representation's actual effect on the plaintiff's mind, whether it is a strong and circumspect mind, or one weak and too relying. Brownlee v. Vang, 235 Cal.App.2d 465, 473 (1965).  "A plaintiff is not held to the standard of precaution or of minimum knowledge of a hypothetical, reasonable person."  HERSH & SMITH, California Civil Practice Torts (2008) § 22:32.  Exceptionally gullible or ignorant people have been permitted to recover from defendants who took advantage of them in circumstances where persons of normal intelligence would not have been misled.  Carroll v. Dungey, 223 Cal App 2d 247, 256 (1963).

In general, justifiable reliance exists when the misrepresentation or nondisclosure was an immediate cause of the plaintiff's conduct and when without the misrepresentation or nondisclosure she would not, in all reasonable, have taken further action.  Alliance Mortgage Co. v. Rothwell, 10 Cal.4th 1226, 1239 (1995); Manderville v. PCG & S Group, Inc.,  146 Cal.App.4th 1486, 1498 (2007).  A doctor / patient relationship may not excite suspicion and the same degree in diligence to determine if a doctor's statement is wrong.  Cf In re Kirsh, 973 F.2d 1454, 1459 (9th Cir. 1992); Seeger v. Odell, 18 Cal.2d 409, 414-15 (1941); Bowman v. McPheeters,77 Cal.App.2d 795, 801 (1947).  Except if reasonable minds could only one conclusion based on the facts, the question of whether a plaintiff justifiably relied is a question of fact.  Alliance Mortgage, 10 Cal.4th at 1239; Manderville,  146 Cal.App.4th at 1498-99.

Here, the court cannot find no reasonable jury could not find justifiable reliance. Defendant was Plaintiff's doctor.   Taking the facts in the light most favorable to Plaintiff,

Defendant told Plaintiff after the surgery that she could still have children and said nothing to her about going into surgical menopause.   Plaintiff had reason to believe Defendant because he was the doctor who performed her surgery.   Because Defendant did not tell Plaintiff about the probability she would go into surgical menopause, Plaintiff could not pass this information on to her later treating doctors who could have properly monitored and treated the surgical menopause. Plaintiff was left for years with doctors who foundered on what was wrong with Plaintiff.   A reasonable jury could find that Defendant's omissions played a substantial part in Plaintiff's anxiety, pain, and failure to obtain proper treatment.   Thus, summary judgment is not warranted.

**J.  Negligent Misrepresentation**

The tort of negligent misrepresentation is a species of the tort of deceit, but it does not require scienter or intent to defraud.  <u>Small</u>, 30 Cal. 4th at 173; <u>Gagne v. Bertran</u>, 43 Cal.2d 481, 174 (1954).  Negligent misrepresentation only requires the "assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true."  <u>Conroy</u>, 91 Cal.Rptr.3d at 543; <u>see also</u> Cal. Civ. Code § 1710 (2).   For the reasons that Defendant is not entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim, Defendant is also not entitled to summary judgment on Plaintiff's negligent misrepresentation claim.

Defendant's contentions concerning what statute of limitations applies to the negligent misrepresentation claim do not need to be addressed.   For the reasons discussed above, under any statute of limitations, Plaintiff's causes of action are timely.

//

//

//

**ORDER**

Based on the above memorandum opinion, the court ORDERS that:

      1.     Defendants' motion for summary judgement is DENIED;

      2.     Plaintiff's fourth cause of action, alleging a violation of Article 1, Section 7 of the California Constitution, is DISMISSED; and

      3.     Plaintiff is given leave to include a cause of action for Defendant's alleged forced sterilization based on a violation of Article 1, Section 1 of the California Constitution in the pretrial statement.

IT IS SO ORDERED.

**Dated:**   **May 4, 2009**                         **/s/ Anthony W. Ishii**
                                            CHIEF UNITED STATES DISTRICT JUDGE