UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

HON. OLIVER W. WANGER, JUDGE

```
KELLI THOMAS,                  )
                               )
            Plaintiff,         )   No. 06-CV-215-OWW
                               )
vs.                            )   JURY TRIAL - DAY 7
                               )        VERDICT
CHARLES OGWU-OJU, M.D.,        )
                               )
            Defendant.         )
_____)
```

Fresno, California                          Friday, September 14, 2009

REPORTER'S TRANSCRIPT OF PROCEEDINGS

KAREN HOOVEN, RMR-CRR
Official Court Reporter
CSR No. 5816

APPEARANCES OF COUNSEL:

| | |
|---|---|
| For the Plaintiff: | Bingham McCutchen<br>BY:  **KRISTEN HILTON**<br>and  **SUSAN J. WELCH**<br>1620 26th Street<br>North Tower, 4th Floor<br>Santa Monica, California 90404 |
| | Bingham McCutchen<br>BY:  **JENNIFER MIKOLEVINE**<br>355 South Grand Avenue<br>Suite 4400<br>Los Angeles, California 90071 |
| For the Defendant: | Baker, Manock & Jensen<br>BY:  **WILLIAM WHITE**<br>and  **SHERRIE FLYNN**<br>5260 North Palm Avenue<br>Fourth Floor<br>Fresno, California 93704 |

```
1   Friday, September 14, 2009                    Fresno, California
2   10:45 a.m.
3
4           THE COURT:  We're going to go to the civil case in
5   Thomas v Oju.
6           MS. MIKOLEVINE:  Good morning, Your Honor.
7           THE COURT:  Good morning.  The jury has asked the
8   following question.  "What does a yes and a no implicate on
9   question seven?"
10          Question seven is:  "Has Dr. Oju proved by
11  preponderance of the evidence that if Ms. Thomas began to
12  suffer severe emotional distress caused by Dr. Oju, that the
13  severe emotional distress commenced before February 24th,
14  2002?"
15          Now, this question is directly implicated with
16  questions number 21 through 24, which are the emotional
17  distress, intentional infliction of emotional distress claims.
18  And that question starts with, "Has Ms. Thomas proved by a
19  preponderance of the evidence that Dr. Oju's conduct was
20  outrageous?"
21          The legend above that, at line three -- this is on
22  verdict form 22, page 22, "The jury's instructed do not answer
23  questions 21 to 24 if you answered question seven yes."
24          And so my proposed response to the jury is that, "If
25  you answer question seven yes, that means that you have found
```

1  that Ms. Thomas had knowledge of her severe emotional distress
2  that was caused by Dr. Oju.  And that would mean that the
3  claim for intentional infliction of emotional distress is time
4  barred.  If you answer no, that she did not have such
5  knowledge at that time, it would not be time barred."
6          That's my proposed response to the jury.
7          MS. WELCH:  That's fine with us, Your Honor.
8          MR. WHITE:  I guess I'm less than clear on
9  what -- they answered both yes and no?
10         THE COURT:  No.  They have asked the following
11 question:  "What does a yes and a no implicate on question
12 seven?"  In other words, they're asking what is the
13 consequence of finding yes?
14         MR. WHITE:  All right.
15         THE COURT:  They probably should have put "or," but
16 they're not lawyers.
17         MR. WHITE:  I understand.  I just didn't --
18         THE COURT:  They said yes instead of no.
19         MR. WHITE:  -- "yes and no."
20         THE COURT:  All right.  Are we ready to bring them
21 in?
22         MR. WHITE:  Yes, Your Honor.
23         THE COURT:  All right.  Bring them in, please.
24    (The jury entered the courtroom.)
25         THE COURT:  Good morning, ladies and gentlemen.

1                THE JURY:  Good morning.
2                THE COURT:  We have the following question:  "What
3     does a yes and a no implicate on question seven?"
4                Question seven is a statute of limitations question
5     meaning time bar.  And it asks you whether Dr. Oju has proved
6     by a preponderance of the evidence that if she began to suffer
7     severe emotional distress that was caused by Dr. Oju, did her
8     severe emotional distress from that cause commence before
9     February the 24th of 2002?
10               Now, this makes a difference to the claim -- if you
11    write down page 22.  The claim on the -- the plaintiff has for
12    intentional infliction of emotional distress, which starts by
13    "has Ms. Thomas proved by a preponderance of the evidence that
14    Dr. Oju's conduct was outrageous."
15               If you answered "yes," that she was aware that her
16    emotional distress was caused by Dr. Oju and she knew that
17    before February 24th of 2002, that is a time bar and it
18    prevents her from going forward.
19               And so it says at the top, on line 3 on page 22,
20    under intentional infliction of emotional distress, "Do not
21    answer questions 21 to 24 if you answered question seven
22    'yes.'"  Because there's a time bar.  It's an affirmative
23    defense.
24               But if you answered "no," that she didn't know that
25    Dr. Oju had caused her emotional distress as of February 24th

1  of 2002, you go ahead and answer the intentional infliction of
2  emotional distress claims.
3         So the question doesn't have significance until you
4  get to questions 21 to 24 and they'll refer you back to
5  question seven to see whether you answered it yes or no,
6  depending upon how you answered it.  If you answered it yes,
7  you don't answer the questions because it's time barred.  If
8  you answered the question no, you do answer the questions
9  because it's not time barred.
10        We tried to make this easy and it sounds to me like
11 you're doing very well.  And so if there are no further
12 questions, then we'll excuse you to go back to your
13 deliberations.  Anything further?
14        THE JURY:  No.
15        THE COURT:  All right.  Well then you are excused to
16 resume your deliberations.  Thank you.
17    (The jury left the courtroom.)
18        THE COURT:  Within 15 minutes, please.
19        MR. WHITE:  Yes.
20        THE COURT:  Yeah.  I don't know if they're going to
21 have questions right away, but hopefully you'll be proximate
22 so we can get you back here.
23        MS. MIKOLEVINE:  We will, Your Honor.
24        THE COURT:  Okay.  Thank you.
25    (Jury deliberating from 10:51 to 11:59 a.m.)

1	THE CLERK: 06-CV-215. Kelli Thomas versus Charles
2	Ugwu-Oju, MD. Jury trial. Seventh day.
3	THE COURT: We're convened outside the presence of
4	the jury. We have received notification from the jury that
5	they have reached verdicts in this matter. Are counsel ready
6	for the jury?
7	MS. MIKOLEVINE: Yes, Your Honor.
8	MR. WHITE: Yes, Your Honor.
9	THE COURT: All right.
10	(The jury entered the courtroom.)
11	THE COURT: Good afternoon, ladies and gentlemen.
12	THE JURY: Good afternoon.
13	THE COURT: We understand that the jury has reached
14	verdicts in this matter.
15	JUROR SEAT NUMBER THREE: Yes.
16	THE COURT: Would you please hand the verdicts to the
17	courtroom deputy.
18	All right. Ladies and gentlemen, I'm going to
19	request that you return to the jury room. I'm going to review
20	the answers with counsel and then we'll get you back out here
21	within two or three minutes.
22	(The jury left the courtroom.)
23	THE COURT: We're convened outside the presence of
24	the jury. Question number five on medical battery asks the
25	following: "Has Dr. Oju proved by a preponderance of the

1  evidence that Ms. Thomas knew or should have known that a
2  substantially different medical procedure was performed on her
3  from that to which she consented, occurred before February
4  24th, 2002?"
5       The jury has not answered that question.  They have
6  answered all the other questions that they needed to answer to
7  reach the verdicts that they have.
8       They answered question number six regarding delayed
9  discovery.  "Has Ms. Thomas proved by a preponderance of the
10 evidence that she did not discover, and a reasonable and
11 diligent investigation would not have disclosed before
12 February 24, 2002, that Dr. Oju performed a substantially
13 different medical procedure from that to which she consented?"
14      And so I'm not sure that it is, in light of that
15 finding, germane whether they answered question five or not.
16 But if you wish, I will send the verdict form back and have
17 them answer question five.
18      MR. WHITE:  If the Court does not believe it's
19 necessary, we don't feel the need to have question five
20 answered.
21      THE COURT:  In other words, they found that the bar
22 of time, quite frankly, and so -- as to that particular claim.
23      MS. WELCH:  I think in light of them answering
24 question six, we don't really need to have question five
25 answered.

```
1            THE COURT:  You do not?  I'm happy to have them do
2   it.  No?
3            MS. WELCH:  I don't think it's necessary.
4            THE COURT:  All right.  Well then I'm going to ask
5   for our law clerk to bring the jury in.
6       (The jury entered the courtroom.)
7            THE COURT:  If you would just bear with us, ladies
8   and gentlemen, we're getting ready to publish the verdicts.
9   This will just take a couple more minutes.
10           At this time I'm going to ask that the courtroom
11  deputy publish the verdicts.
12           THE CLERK:  United States District Court, Eastern
13  District of California.  In the matter of Kelli Thomas,
14  plaintiff, versus Charles Oju, M.D., defendant.  Case number
15  1:06-CV-215.  Verdicts of trial jury.
16           We, the jury, in the above captioned case return the
17  following verdicts on the questions submitted to us.
18           Statute of limitations - medical negligence and lack
19  of informed consent.  Question number one:  Has Dr. Oju
20  provided by a preponderance of the evidence --
21           THE COURT:  Proved.
22           THE CLERK:  -- that Ms. Thomas knew or should have
23  known that her injury occurred, i.e., that all or most of her
24  ovaries were removed by Dr. Oju before February 24th, 2003?
25           Answer:  Yes.
```

1              Question two:  Has Ms. Thomas proved by a
2     preponderance of the evidence that her failure to discover the
3     loss of all or most of her ovaries prior to February 24th,
4     2003, was caused by fraud or intentional concealment on the
5     part of Dr. Oju?
6              Answer:  No.
7              Question three:  Has Dr. Oju proved by a
8     preponderance of the evidence that before February 24th, 2003,
9     Ms. Thomas knew of facts that would cause a reasonable person
10    to suspect that all or most of her ovaries had been removed by
11    Dr. Oju?
12             Answer:  Yes.
13             Statute of limitations - constitutional claims.
14             Question four:  Has Dr. Oju proved by a preponderance
15    of the evidence that Ms. Thomas knew or should have known
16    before February 24th, 2002, that all or most of her ovaries
17    were removed by Dr. Oju?
18             Answer:  Yes.
19             Question number five:  No answer.
20             Delayed discovery.
21             Question six:  Has Ms. Thomas proved by preponderance
22    of the evidence that she did not discover, and a reasonable
23    and diligent investigation would not have disclosed before
24    February 24th, 2002, that Dr. Oju performed a substantially
25    different medical procedure from that to which she consented?

```
1              Answer:  No.
2              Statute of limitations - intentional infliction of
3    emotional distress.
4              Question seven:  Has Dr. Oju proved by a
5    preponderance of the evidence that if Ms. Thomas began to
6    suffer severe emotional distress caused by Dr. Oju, that the
7    severe emotional distress commenced before February 24th,
8    2002?
9              Answer:  Yes.
10             Informed consent.
11             Question 15:  Did Ms. Thomas give had her informed
12   consent to Dr. Oju for the removal of her ovaries and portions
13   of her fallopian tubes?
14             No answer.
15             Intentional misrepresentation.
16             Question 25.  Did Dr. Oju intentionally misrepresent
17   an important fact to Ms. Thomas?
18             Answer:  No.
19             Concealment.
20             Question 31:  Did Dr. Oju intentionally fail to
21   disclose important facts to Ms. Thomas, making his disclosure
22   deceptive?
23             Answer:  No.
24             Negligent misrepresentation.
25             Question 37.  Did Dr. Oju misrepresent an important
```

1  fact to Ms. Thomas that was not true?
2           Answer:  No.
3           Question 43:  If you found for plaintiff on any of
4  her claims, and found that those claims were not barred by any
5  statute of limitations, what total damages do you award Ms.
6  Thomas?
7           Dollar amount:  Zero.
8           Of the total damages awarded, if you found in favor
9  of Ms. Thomas on her medical negligence and/or informed
10 consent claims, what amount of damages did you award her for
11 these claims?
12          Dollar amount:  Zero.
13          If you found for Ms. Thomas on her Federal Civil
14 Rights claims under the Eighth Amendment and/or the Fourteenth
15 Amendment, what amount of damages of the total damages
16 awarded, if any, did you award her for those claims?
17          Dollar amount:  Zero.
18          I certify that the foregoing answers to the questions
19 propounded to the jury are unanimous and that all jurors
20 agreed to each and every finding.
21          Dated September 14th, 2009 signed by the jury
22 foreperson.
23          THE COURT:  Does any party wish the jury polled?
24          MR. WHITE:  No, Your Honor.
25          MS. MIKOLEVINE:  Yes, Your Honor.

```
1        THE COURT:  All right.  Ladies and gentlemen, I'm now
2   going to ask each of you if the verdicts just published in
3   open court by the courtroom deputy are your true verdicts.
4   And that means each and every answer to every question that
5   was just read is your finding.  If all of those answers just
6   read are your findings, your answer to my question is "yes."
7   If any of those answers are not your answer, if you had a
8   different answer, but others prevailed or were in the
9   majority, then your answer to my question is "no" if you
10  didn't record the same answer as all the other jurors.
11       And so if every answer to every question is your true
12  answer, your answer to my question is "yes."  If any answer to
13  this or any other question that the jury considered is not
14  your true answer, then your answer to my question is "no."
15       We're going to start with -- bear with me -- ▇▇▇
16  ▇▇▇, having heard the reading in open court of all the
17  answers, are these your true verdicts?
18       JUROR SEAT NUMBER ONE:  Yes.
19       THE COURT:  ▇▇▇▇▇, as to all of the answers to
20  the verdict form questions that were just read, are those your
21  true verdicts?
22       JUROR SEAT NUMBER TWO:  Yes.
23       THE COURT:  ▇▇▇▇▇, as to every answer just
24  read in open court by the courtroom deputy, are those your
25  true verdicts?
```

```
1              JUROR SEAT NUMBER THREE:  Yes.
2              THE COURT:  ██████████, as to every answer just read
3    by the courtroom deputy in open court to all the questions,
4    are those your true verdicts?
5              JUROR SEAT NUMBER FOUR:  Yes.
6              THE COURT:  Thank you.  ██████████████, are the
7    answers just read in open court to all the questions in the
8    verdict form your true verdicts?
9              JUROR SEAT NUMBER FIVE:  Yes.
10             THE COURT:  ██████████, are the answers just read to
11   all the questions in the verdict form your true verdicts?
12             JUROR SEAT NUMBER SIX:  Yes.
13             THE COURT:  ██████████, are the answers just read by
14   the courtroom deputy, to those questions that were answered in
15   the verdict form, your true verdicts?
16             JUROR SEAT NUMBER SEVEN:  Yes.
17             THE COURT:  ██████████, are the answers read to the
18   questions by the courtroom deputy in open court your true
19   verdicts?
20             JUROR SEAT NUMBER EIGHT:  Yes.
21             THE COURT:  It appears to the Court that the verdicts
22   are unanimous as to each and every finding of the jury.  Let
23   me have counsel approach.
24         (The following proceedings were held at sidebar between
25            the Court and counsel:)
```

1         THE COURT:  Is there anything further for the jury?
2         MR. WHITE:  No, Your Honor.
3         MS. MIKOLEVINE:  No, Your Honor.
4         MS. HILTON:  No, Your Honor.
5         THE COURT:  It appears to me that they have found on
6  every claim or defense that they were required to find on.
7  And although that technically they didn't have to make the
8  findings just because they can't find for plaintiff, they
9  didn't even find those claims, they did that as well.  And so
10 if counsel agree that there's nothing further to do and that
11 these verdicts are complete and consistent, I will then excuse
12 the jurors.
13        MS. MIKOLEVINE:  Yes, Your Honor.
14        MR. WHITE:  That's acceptable.
15        MS. WELCH:  Yes, Your Honor.
16        THE COURT:  Everybody's in agreement?  All right.
17 Thank you.
18    (The following proceedings were held in open court:)
19        THE COURT:  Ladies and gentlemen, I have confirmed
20 with counsel that after reviewing your answers to the
21 questions propounded to you and the verdict forms, that your
22 answers are consistent and complete and that you have
23 discharged fully your responsibilities in returning verdicts
24 in the case.
25        With that said, that now ends your service in the

1  case because there is no further business for us to present to
2  you.
3         When we started two weeks ago, we promised we'd get
4  the case done within eight days.  We did.  We had some
5  extension to that time, not by choice or by plan, but I want
6  to start by saying to each of you personally and on behalf of
7  the United States Courts how much we appreciate your service
8  here.  These are good surroundings.  It's a beautiful
9  building.  It's a great environment in which for us and for
10 you to go about doing the work of the Court and attempting to
11 achieve justice.  We know that you get very little
12 compensation.  A lot of inconvenience for this effort.  And we
13 know how hard you have worked.  We watched you pay very close
14 attention as the evidence was received.  And we are truly,
15 truly grateful.
16        I promised you you would not be called again and that
17 is a slightly qualified term.  In the foreseeable future, I
18 can't promise you you'll never be called.  But it's unlikely
19 you'll be seeing us for a very long time.
20        Throughout the case, I've admonished you not to
21 discuss the case and not to in any way let yourself be exposed
22 to outside report for comment.  I'm now going to release you
23 from those admonitions.
24        Often attorneys may be interested in knowing what
25 your views about their performances or the case itself was.

1  I'm going to leave that entirely up to you.  If you wish to
2  talk about your service, you may.  If you don't, that's all
3  you need to say, that you don't wish to discuss your service.
4          And for those of you who are willing or interested,
5  we will let the jury room be used for that purpose after we
6  now discharge you from further service in the case.  Remember,
7  that if you decide to talk, you are a member of an eight
8  person jury that reached unanimous decisions on all these
9  questions.  And if you decide not to talk, that's all you say,
10 "I'm not going to discuss it."  And then if anybody should
11 persist, I'll ask that you notify me immediately.
12         With that said, I want to wish each of you the very
13 best in the future.  We now formally order that you are
14 discharged from further service as jurors in this case.  You
15 are now free to go.  Please have a good day.
16      (The jury left the courtroom.)
17         THE COURT:  Apparently the jurors have indicated that
18 they would be willing to talk with the lawyers.  And so that
19 will be in the jury room if you want to do it.
20         MS. MIKOLEVINE:  Thank you, Your Honor.
21         MR. WHITE:  Thank you, Your Honor.
22         THE COURT:  Anything further for the record?
23         MR. WHITE:  No, Your Honor.
24         MS. MIKOLEVINE:  No, Your Honor.
25         THE COURT:  Is there any legal cause why judgment

```
 1   should not be entered in favor of the defendant and against
 2   the plaintiff?
 3           MS. HILTON:  No, Your Honor.
 4           MS. MIKOLEVINE:  No, Your Honor.
 5           MR. WHITE:  No.
 6           THE COURT:  All right.  We will direct the courtroom
 7   deputy prepare a judgment in accordance with the requirements
 8   of law.
 9           MS. FLYNN:  Thank you, Your Honor.
10           MR. WHITE:  Thank you, Your Honor.
11           THE COURT:  And can we have a stipulation as to
12   exhibits, that each party who submitted exhibits, we will
13   release the exhibits.  We don't have any storage space in this
14   building for exhibits.  And so we'll release your exhibits
15   back to you to be held pending further proceedings in the
16   case.
17           MR. WHITE:  Yes, Your Honor.
18           MS. HILTON:  Yes.
19           THE COURT:  Is that so stipulated?
20           MS. HILTON:  Yes.
21           THE COURT:  All right.  We are in recess.
22           MR. WHITE:  Thank you, Your Honor.
23        (The proceedings were concluded at 12:23 p.m.)
24
25
```

                                                                    19

1          I, KAREN HOOVEN, Official Reporter, do hereby certify
2    that the foregoing transcript as true and correct.
3
4    DATED:   21st of November, 2018      /s/   Karen Hooven
                                          KAREN HOOVEN, RMR-CRR
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25